**No. 21-1005**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

B.R., *Plaintiff-Appellee*,

v.

F.C.S.B., S.T., A.F., P.A.H.,
T.B., B.H., M.P., M.C., F.T., J.F., C.K., J.O., *Defendants-Appellants.*

———————————————

On Interlocutory Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:19-cv-00917-RDA-TCB)

———————————————

## OPENING BRIEF OF APPELLANTS

———————————————

Michael E. Kinney
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Suite 120
Reston, VA 20191
703-956-9377
Fax: 703-956-9634
mk@kinneyesq.com

*Counsel for Defendants-Appellants S.T., A.F., P.A.H., T.B., B.H., M.P., M.C., F.T., and J.F.*

Stuart A. Raphael
Sona Rewari
Ryan M. Bates
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2021
Fax: 202-828-3728
sraphael@HuntonAK.com
srewari@HuntonAK.com
rbates@HuntonAK.com

*Counsel for Defendant-Appellant F.C.S.B.*

*(Additional counsel and parties on next page)*

February 16, 2021

Bruce M. Blanchard
James Paul Menzies Miller
ODIN, FELDMAN &
PITTLEMAN, PC
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
703-218-2100
Fax: 703-218-2160
bruce.blanchard@ofplaw.com
jim.miller@ofplaw.com

*Counsel for Defendant-Appellant
J.O.*

James F. Davis
JAMES F. DAVIS, P.C.
10513 Judicial Dr., Ste. 200
Fairfax, VA 22030
703-383-3110
Fax: 571-748-6564
jfd@jfdavislaw.com

*Counsel for Defendant-
Appellant C.K.*

## CORPORATE DISCLOSURE STATEMENTS

Defendant-Appellant Fairfax County School Board ("F.C.S.B." or "the School Board") is a local governmental "body corporate" established under Virginia law.  It is not a stock corporation, has no parent corporation, and has no shareholders.

The other Defendants-Appellants—S.T., A.F., P.A.H., T.B., B.H., M.P., M.C., F.T., J.F., C.K., and J.O.—are identified by their full names in the district court, J.A. 19–21, but they are using their initials here pursuant to the district court's pseudonymity order, J.A. 218.  Each is a natural person, not a stock corporation, and none has a parent corporation or shareholders.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENTS ....................................................... i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT ............................................................ 1

QUESTION PRESENTED ....................................................................... 2

STATEMENT OF THE CASE .................................................................. 3

     A.    In 2012, Plaintiff files a Title IX administrative complaint with OCR that is settled in 2014. ........................................................................... 3

     B.    In 2019, Plaintiff files her original complaint in the district court on the eve of the statute of limitations, without leave of court and without identifying herself to the court. ............................................................. 5

     C.    Defendants move to dismiss, including on jurisdictional grounds, prompting Plaintiff to file an amended complaint and motion for leave to proceed under a pseudonym. ............................................................ 7

     D.    The district court permits Plaintiff to proceed pseudonymously and finds that her previous failure to seek leave of court was not a jurisdictional defect. ............................................................................. 11

     E.    The district court certifies its jurisdictional ruling as a controlling question of law warranting interlocutory review here. ....................... 12

SUMMARY OF ARGUMENT .............................................................. 13

ARGUMENT ..................................................................................... 18

I.     Plaintiff bears the burden of establishing jurisdiction and the standard of review is de novo. ........................................................................... 18

II.    A district court does not acquire jurisdiction over a pseudonymous plaintiff unless and until the plaintiff's identity is disclosed to the court. ..................19

    A.    Pseudonymous complaints are a recent phenomenon unknown at common law. ......................................................................19

    B.    Three federal circuits have determined that district courts lack jurisdiction over pseudonymous complaints filed without leave of court. ..............................................................................23

    C.    Jurisdictional treatment is warranted to ensure Article III jurisdiction over the parties and the subject-matter. ..........................28

    D.    The jurisdictional rule is consistent with this Court's precedent and the non-waivable requirement to determine the propriety of a plaintiff's proceeding under a pseudonym. .........................................34

    E.    A per se rule is required that works in all cases. ................................37

III.    The two-year statute of limitations barred the federal claims. .....................41

CONCLUSION ...........................................................................43

STATEMENT ABOUT ORAL ARGUMENT .......................................44

CERTIFICATE OF COMPLIANCE ................................................45

CERTIFICATE OF SERVICE ........................................................45

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adam v. Saenger*,
    303 U.S. 59 (1938)...............................................................................30

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986)............................................................................29

*Buxton v. Ullman*,
    156 A.2d 508 (Conn. 1959),
    *appeal dismissed sub nom. Poe v. Ullman*,
    367 U.S. 497 (1961)......................................................... 14, 21, 39

*Capers v. Nat'l R.R. Passenger Corp.*,
    673 F. App'x 591 (8th Cir. 2016)........................................... passim

*Citizens for a Strong Ohio v. Marsh*,
    123 F. App'x 630 (6th Cir. 2005).............................. 14, 15, 25, 26

*CTH1 Caregiver v. Owens*,
    No. 8:11-2215-TMC, 2012 WL 2572044 (D.S.C. July 2, 2012) .................23

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)............................................................................29

*Davis v. Piper Aircraft Corp.*,
    615 F.2d 606 (4th Cir. 1980) ..........................................................28

*Doe I v. City of Alabaster*,
    No. 2:11-CV-3448-VEH, 2012 WL 13088882
    (N.D. Ala. Apr. 26, 2012)..............................................................23

*Doe v. Barrow Cty.*,
    219 F.R.D. 189 (N.D. Ga. 2003) ...................................................23

*Doe v. Husband*,
    No. 4:03cv166, 2004 U.S. Dist. LEXIS 28345
    (E.D. Va. Aug. 16, 2004)..............................................................23

*Doe v. Kansas State Univ.*,
    No. 2:20-cv-02258-HLT-TJJ, 2021 WL 84170 (D. Kan. Jan 11, 2021).......23

*Doe v. McDonald's Restaurants of N.C., Inc.*,
No. 3:15-cv-00037, 2015 WL 4389528 (W.D.N.C. July 17, 2015)..............23

*Doe v. N. Orange Cty. Cmty. Coll. Dist.*,
No. SACV 17-01776-CJC, 2018 WL 6137623 (C.D. Cal. Feb. 2, 2018).....23

*Doe v. Public Citizen*,
749 F.3d 246 (4th Cir. 2014) ........................................................... 16, 34, 35

*Ellis v. Dyson*,
421 U.S. 426 (1975).................................................................................37

*Estate of Rodriguez v. Drummond Co., Inc.*,
256 F. Supp. 2d 1250 (N.D. Ala. 2003) .......................................................23

*EW v. N.Y. Blood Ctr.*,
213 F.R.D. 108 (E.D.N.Y. 2003)..................................................................23

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...................................................................................29

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990)........................................................................... 30, 32

*Gonzalez v. Cuccinelli*,
No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) .............................18

*Gonzalez v. Thaler*,
565 U.S. 134 (2012)..................................................................................31

*Grace v. Am. Cent. Ins. Co.*,
109 U.S. 278 (1883)..................................................................................32

*Graham v. City of Manassas Sch. Bd.*,
390 F. Supp. 3d 702 (E.D. Va. 2019) ..........................................................42

*Hanna v. Plumer*,
380 U.S. 460 (1965)..................................................................................28

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010)......................................................................... 30, 33, 38

*House v. Mitra QSR KNE LLC*,
796 F. App'x 783 (4th Cir. 2019)......................................................... passim

*In re Engle Cases*,
    767 F.3d 1082 (11th Cir. 2014) ............................................................. 37, 38

*In re U.S. O.P.M. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) ......................................................... 21, 23, 41

*James v. Jacobson*,
    6 F.3d 233 (4th Cir. 1993) ............................................................ 16, 35, 39

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994)............................................................................................29

*Kontrick v. Ryan*,
    540 U.S. 443 (2004)................................................................................ 30, 35

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
    957 F.3d 943 (9th Cir. 2020) .........................................................................36

*LVNV Funding, LLC v. Harling*,
    852 F.3d 367 (4th Cir. 2017) .........................................................................31

*Mansfield C. & L.M. Ry. Co. v. Swan*,
    111 U.S. 379 (1884)...........................................................................................32

*Md. Shall Issue, Inc. v. Hogan*,
    963 F.3d 356 (4th Cir. 2020),
    *petition for cert. docketed* (U.S. Dec. 21, 2020) (No. 20-855) .....................18

*Mitchell v. Maurer*,
    293 U.S. 237 (1934)...........................................................................................29

*N.Y. Trust Co. v. Eisner*,
    256 U.S. 345 (1921)...........................................................................................19

*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989) ............................................................. passim

*Nat'l Viatical, Inc. v. Oxendine*,
    No. 1:05-CV-3059-TWT, 2006 WL 1071839 (N.D. Ga. Apr. 20, 2006),
    *aff'd*, 221 F. App'x 899 (11th Cir. 2007) ......................................................23

*Nutraceutical Corp. v. Lambert*,
    139 S. Ct. 710 (2019)........................................................................................26

*Owens v. Balt. City State's Attorneys Office*,
    767 F.3d 379 (4th Cir. 2014) .........................................................................43

*Owens v. Okure*,
        488 U.S. 235 (1989)..................................................................... 18, 42

*Plaintiff Doctor v. Hosp. Serv. Dist. #3*,
        No. 18-7945, 2019 WL 351492 (E.D. La. Jan. 29, 2019)............................23

*Poe v. Ullman*,
        367 U.S. 497 (1961)..................................................................... 14, 21

*Pollock v. Dunning*,
        54 Ind. 115 (1876) ...........................................................................20

*Raines v. Byrd*,
        521 U.S. 811 (1997)..........................................................................29

*Reed v. United Transp. Union*,
        488 U.S. 319 (1989)..........................................................................42

*Roe v. New York*,
        49 F.R.D. 279 (S.D.N.Y. 1970)..................................................... 22, 23

*Roe v. Wade*,
        410 U.S. 113 (1973)..................................................................... 14, 22

*Sierra Club v. U.S. Dep't of the Interior*,
        899 F.3d 260 (4th Cir. 2018) ............................................................42

*Torres v. Oakland Scavenger Co.*,
        487 U.S. 312 (1988)............................................................. 31, 38, 39

*Turner v. Bank of N. Am.*,
        4 U.S. (4 Dall.) 8 (1799).............................................................. 29, 32

*United States ex rel. Eisenstein v. City of New York*,
        556 U.S. 928 (2009)..........................................................................40

*United States ex rel. Little v. Triumph Gear Sys., Inc.*,
        870 F.3d 1242 (10th Cir. 2017),
        *cert. denied*, 138 S. Ct. 1298 (2018)............................................ 20, 25

*United States v. $95,945.18*,
        913 F.2d 1106 (4th Cir. 1990) ...........................................................30

*United States v. Hays*,
        515 U.S. 737 (1995)..........................................................................18

*W.N.J. v. Yocom*,
　　257 F.3d 1171 (10th Cir. 2001) ...................................................25

*Warth v. Seldin*,
　　422 U.S. 490 (1975)..................................................................32

*Weissenbach v. Tuscaloosa Cty. Sch. Sys.*,
　　No. 7:17-cv-01642-LSC, 2018 WL 9986741 (N.D. Ala. June 5, 2018).......23

*Wilmink v. Kanawha Cty. Bd. of Educ.*,
　　214 F. App'x 294 (4th Cir. 2007)........................................ 18, 42

*Wilson v. Garcia*,
　　471 U.S. 261 (1985)...................................................................41

*Zamora v. N. Salem Cent. Sch. Dist.*,
　　414 F. Supp. 2d 418 (S.D.N.Y. 2006) ..........................................33

**Statutes**

Judicial Improvements Act of 1990, Pub. L. No. 101–650, § 313,
　　104 Stat. 5089, 5114–15 (codified at 28 U.S.C. § 1658(a) ..........................42

Title IX of the Education Amendments of 1972, 86 Stat. 373,
　　20 U.S.C. §§ 1681–1688 ....................................................... passim

28 U.S.C. § 1292(b) ...........................................................................2, 44

28 U.S.C. § 1331 ......................................................................... 1, 6, 33

28 U.S.C. § 1332 ..............................................................................33

28 U.S.C. § 1367 ................................................................................2

42 U.S.C. § 1981 ..............................................................................42

42 U.S.C. § 1983 ..................................................................... passim

Va. Code Ann. § 8.01-229(A)(2)(a) (2015)....................................43

Va. Code Ann. § 8.01-243(A) (Supp. 2020)............................ 18, 42

Va. Code Ann. § 8.01-243(D) (Supp. 2020)...................................42

**Constitutional Provisions**

U.S. Const. art. III .............................................................. passim

U.S. Const. art. III, § 2, cl. 1 .......................................................29

U.S. Const. amend. XIV ...........................................................7, 12

**Rules**

Fed. R. Civ. P. 10(a)............................................................... 20, 24

Fed. R. Civ. P. 12(b)(1)...............................................................7, 18

Fed. R. Civ. P. 12(b)(6)...............................................................7, 18

Fed. R. Civ. P. 15........................................................................28

Fed. R. Civ. P. 17........................................................................37

Fed. R. Civ. P. 17(a).....................................................................26

Fed. R. Civ. P. 17(a)(3).................................................... 27, 37, 38

**Administrative Materials**

Report of the Advisory Committee on Rules for Civil Procedure (Apr. 1, 1937), https://tinyurl.com/y2oo6kss ........................................................20

**Secondary Sources**

1 Edwin E. Bryant, *Law of Pleading under the Codes of Civil Procedure* (1894), https://tinyurl.com/y3pcgfef .......................................................20

1 J. Chitty et al., *A Treatise on the Parties to Actions, and on Pleading* (8th Am. ed. 1840), https://tinyurl.com/yy4c6wve......................................................19

Scott Dodson, *Plaintiff Personal Jurisdiction and Venue Transfer*, 117 Mich. L. Rev. 1463 (2019) ....................................................................30

James Gould, *Treatise on the Principles of Pleading, In Civil Actions* (3d. ed. 1849), https://tinyurl.com/y3ajhp6k ............................................................20

Adam A. Milani, *Doe v. Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort*, 41 Wayne L. Rev. 1659 (1995)........................................................22

## INTRODUCTION

This case presents a controlling question of law and a matter of first impression for this Court: does a district court acquire jurisdiction over a case when the plaintiff files the complaint under a pseudonym, without seeking leave of court and without otherwise disclosing her identity to the court?  If the defect is jurisdictional, then later actions to cure it do not relate back to the original complaint for purposes of tolling the statute of limitations.  The Sixth, Eighth, and Tenth Circuits have held that the plaintiff's failure to disclose her identity to the district court deprives the court of jurisdiction; none has held to the contrary.

This Court should likewise hold that the identification requirement is jurisdictional.  Requiring a plaintiff to disclose her identity to the district court is necessary for the court to carry out its jurisdictional gatekeeping responsibilities.  For even when an opposing party fails to raise the issue, the district judge has an independent responsibility to ensure that the plaintiff has submitted herself to the court's adjudicatory authority, that the plaintiff is a real person with standing, and that the court has subject-matter jurisdiction.  Knowing the plaintiff's identity is essential to accomplishing each of those jurisdictional tasks.

## JURISDICTIONAL STATEMENT

Jurisdiction in the district court was based on 28 U.S.C. § 1331 because Plaintiff asserted federal-question claims arising under (1) Title IX of the

1

Education Amendments of 1972, 86 Stat. 373, 20 U.S.C. §§ 1681–1688, and

(2) 42 U.S.C. § 1983.  J.A. 17 (Compl. ¶ 24).  Jurisdiction over the supplemental

State-law claims was premised on 28 U.S.C. § 1367.  *Id*. (Compl. ¶ 25).

On March 10, 2020, the district court entered an order resolving various

pending motions, including granting in part and denying in part defendants'

motions to dismiss.  J.A. 173 (ECF 85).  On November 9, 2020, the district court

amended its March 10 order to certify it for interlocutory review under 28 U.S.C.

§ 1292(b), finding that the issue presented in this appeal is a controlling question of

law on which there is substantial ground for difference of opinion, the resolution of

which would materially advance the ultimate termination of the litigation.  J.A. 282

(ECF 114).  Defendants timely petitioned this Court for permission to take an

interlocutory appeal of that order.  On January 5, 2021, this Court granted its

permission.   JA 292.

## QUESTION PRESENTED

Is a plaintiff's failure to obtain leave of court to file a complaint

pseudonymously a jurisdictional defect such that a later order granting leave to

proceed pseudonymously does not relate back to the original filing for purposes of

the statute of limitations?

## STATEMENT OF THE CASE

The plaintiff is an adult who has proceeded in this case under a pseudonym (first "Jane Doe," then "B.R.") to conceal her identity. Plaintiff's claims arise out of her allegations of peer-on-peer sexual assault that occurred during the 2011–2012 school year, when she was a seventh-grade student at Rachel Carson Middle School, a public school operated by Defendant Fairfax County School Board.

### A.    In 2012, Plaintiff files a Title IX administrative complaint with OCR that is settled in 2014.

In August 2012, Plaintiff's previous counsel filed an administrative complaint with the U.S. Department of Education, Office of Civil Rights, alleging that, "[f]rom October 2011 to February 2012, [Plaintiff] was the target of peer-on-peer sexual harassment perpetrated primarily by two older students, which created a hostile educational environment." J.A. 230. Her most serious allegation was that, on November 9, 2011, when Plaintiff was walking home from the bus stop, another student—Defendant "C.K." here—chased her into a neighboring yard, "then forcibly held her down and sodomized her." J.A. 233. Her administrative complaint did not allege that she reported that allegation to school officials. But it did assert that she and her parents had reported other forms of verbal and physical harassment to an assistant principal. The assistant principal reportedly assured the family that "she would handle the situation." *Id*. The administrative complaint alleged that the subsequent investigation was incomplete and that the peer

3

harassment escalated.  It asserted that, in February 2012, as a result of the harassment, Plaintiff suffered depression and anxiety that led her to receive "Homebound Instruction" for the remainder of the school year.  J.A. 230.  In June 2012, an assistant superintendent reportedly told the family, however, that "the incidents of harassment, inappropriate touching, and other bullying could not be verified."  J.A. 236.

On November 1, 2012, Plaintiff's counsel sent a supplemental letter to OCR alleging that, as a result of additional information reported by Plaintiff in private therapy sessions, the previously reported rape was "one of multiple anal rapes occurring off-campus" during a 17-day period the previous November.  J.A. 247.  The family, however, did "not report[] this information to the police or to FCPS [Fairfax County Public Schools]."  *Id*.

In August 2014, following OCR's investigation, FCPS entered into a Voluntary Resolution Agreement.  J.A. 249.  The VRA recited that OCR had "made no determination that the Division has violated Title IX or any other law enforced by OCR," and the agreement did "not constitute an admission" of any violation.  *Id*.

Three-and-half years later, on January 16, 2018, Plaintiff's current counsel sent a notice-of-representation letter to FCPS advising that his law firm had been

retained to investigate the injuries Plaintiff allegedly suffered when she was a student at Rachel Carson.  J.A. 122.

Another 18 months passed by without any contact from Plaintiff or her counsel.

**B.  In 2019, Plaintiff files her original complaint in the district court on the eve of the statute of limitations, without leave of court and without identifying herself to the court.**

On Friday, July 12, 2019—just a few days before Plaintiff's 20th birthday— Plaintiff's counsel filed a pseudonymous complaint in the district court, referring to Plaintiff as "Jane Doe."  J.A. 14.  Plaintiff's counsel did not seek leave of court to proceed pseudonymously, did not ask to submit Plaintiff's identity under seal, and did not otherwise disclose her identity to the district court.

The allegations in the complaint went far beyond anything alleged in her administrative filing, now alleging that she was repeatedly raped at school: "[b]eginning in December 2011 and continuing through February 2012, [Defendant C.K.] *and other students raped* Jane Doe *on [the Rachel Carson Middle School] campus during* and *after* school hours."  J.A. 32 (Compl. ¶ 151) (emphasis adjusted).  Plaintiff added that 15 other male and female "unknown students"—named as "Mike/Mary Roes, Nos. 1–15"—also participated in the alleged "physical and sexual assaults, rapes, and/or gang rapes" of Plaintiff.  J.A. 23 (Compl. ¶ 56).

5

In addition to suing the School Board, Plaintiff sued two of her former schoolmates using their full names (but identified in this brief by their initials "C.K." and "J.O."). J.A. 19 (Compl. ¶¶ 33, 35). Plaintiff also sued nine current or former school administrators, teachers, or counselors using their full names as well, the home addresses for four of them, and the work addresses for the other five. J.A. 19–20 (Compl. ¶¶ 37–40). Those defendants are also identified in this brief by their initials—S.T., A.F., P.A.H., T.B., B.H., M.P., M.C., F.T., J.F.—and will be referred to as the "Individual School Defendants."

Plaintiff's accusations against these publicly named defendants were shocking. Plaintiff claimed that "[e]ach and every time Jane Doe was raped on RCMS property, an RCMS teacher, and/or staff member was located nearby." J.A. 32 (Compl. ¶¶ 151–52). Plaintiff did not allege, however, which if any of the Individual School Defendants stood by while she was attacked. She accused a female schoolmate—Defendant J.O.—of sexually assaulting her and assisting C.K. in doing so as well. J.A. 27, 47 (Compl. ¶¶ 101, 244). She accused Defendant C.K. of having "raped [her] nearly every day after school, at or near her bus stop," from November 9 to November 21, 2011. J.A. 28 (Compl. ¶ 110).

The complaint invoked the court's federal-question jurisdiction under 28 U.S.C. § 1331. J.A. 17 (Compl. ¶ 24). Plaintiff alleged that the School Board violated Title IX by failing to protect her from the alleged sexual harassment, J.A.

6

37–42, and that the School Board and Individual School Defendants violated

§ 1983 by denying Plaintiff's right to substantive-due-process under the Fourteenth

Amendment, J.A. 42–44, 48–50.  The complaint included supplemental claims

under Virginia law against the Individual School Defendants for gross negligence,

J.A. 51, and against her former schoolmates for assault and battery, J.A. 45–47.

### C. Defendants move to dismiss, including on jurisdictional grounds, prompting Plaintiff to file an amended complaint and motion for leave to proceed under a pseudonym.

In October 2019, at the parties' first meet-and-confer telephone conference,

defense counsel advised Plaintiff's counsel that Plaintiff needed leave of court to

proceed under a pseudonym.  J.A. 158:11–22.  Plaintiff took no immediate action

in response.

Three weeks later, on November 15, 2019, the School Board and Individual

School Defendants moved to dismiss the complaint on various grounds, including

that Plaintiff's failure to obtain leave of court to proceed under a pseudonym was a

jurisdictional defect that rendered Plaintiff's federal claims untimely.  Because of

the jurisdictional aspect of the challenge, they moved to dismiss under both Rules

12(b)(1) and 12(b)(6).  J.A. 54, 59, 61.

On November 27, 2019, Plaintiff's counsel filed an amended complaint.

J.A. 63.  The amended complaint added a startling new allegation: that on one day

in December 2011, when Plaintiff stayed after school for Spanish instruction, an

unnamed student first "accosted her in the hallway" and then led her into a "maintenance closet," where Plaintiff was allegedly "raped" by "three, unidentified, Spanish speaking adult males." J.A. 83 (Am. Compl. ¶¶ 191–93).

All defendants moved to dismiss the amended complaint, renewing their argument that the Title IX and § 1983 claims were time-barred because the pseudonymous complaint, filed without leave of court, had not tolled the two-year statute of limitations. *See* J.A. 109–16, 120. The School Board and Individual School Defendants argued that the amended complaint failed to state a substantive-due-process claim against them under § 1983. J.A. 109, 112, 113, 115, 120, 140:20–146:7. And all defendants argued that, if the two federal claims were dismissed, the supplemental State-law claims should be dismissed as well, without prejudice, to be pursued in Virginia State court. *E.g.*, J.A. 140:24–141:3.

Contemporaneously with the amended complaint, Plaintiff's counsel filed— for the first time—a motion for leave to proceed under a pseudonym. J.A. 104. That motion was accompanied by the affidavit of counsel and an affidavit of Plaintiff's mother, disclosing Plaintiff's name to the court for the first time. J.A. 227 (ECF 89). The affidavits were filed under seal (ECF 40), with copies filed in

the public record that redacted the names of Plaintiff and her mother. J.A. 227
(ECF 89).[1]

The School Board did not object to Plaintiff's proceeding under a
pseudonym but maintained that her federal claims were untimely on account of her
failure to seek leave of court or to identify herself to the court before the two-year
limitations period expired. J.A. 217. The School Board did not dispute that it
knew Plaintiff's true identity at the time she filed suit, as it previously received her
lawyer's notice-of-representation letter in January 2018. J.A. 137:8–12.

The individual defendants objected to Plaintiff's proceeding under a
pseudonym, arguing that she was an adult and had not demonstrated sufficient
need for anonymity. They added that it was fundamentally unfair for Plaintiff to
conceal her own identity while she publicly accused her former schoolmates of
serious crimes and the Individual School Defendants of gross professional
misconduct. J.A. 217–18. J.O.'s counsel informed the court that J.O. had already

---

[1] The redacted affidavits were filed in the public docket, *see* ECF Nos. 38-4
and 80-1, before the district court's ruling allowing the parties to proceed by their
initials. *See* J.A. 218. The Magistrate Judge noted that Plaintiff's filings
inadvertently disclosed Plaintiff's actual name and subsequently ordered that the
publicly filed affidavits be further redacted and refiled. J.A. 220–23. The revised
affidavits were refiled at ECF Nos. 89 and 90. The Magistrate Judge permanently
sealed the original, unredacted affidavits filed at ECF Nos. 40 and 79. *See* J.A.
223.

been approached by the Washington Post and Associated Press to comment on the "shocking allegations" against her. J.A. 161:13–25.

The district court heard argument on the various motions in January 2020. J.A. 124. The court expressed concern that Plaintiff's counsel did not follow the "typical process" to first request that the court allow her to proceed under a pseudonym. J.A. 128:12–18. Plaintiff's counsel responded that "we evaluated that before we filed [the complaint] and made the determination that it was not required at the initial pleading stage." J.A. 128:19–21. He added "[t]here are some cases that require it before you file. They're not in the Fourth Circuit . . . ." J.A. 128:22–23. The district court observed that it seemed contrary to "basic fairness" for Plaintiff to proceed under a pseudonym while naming the defendants in a case involving "terrible" and "serious allegations against individuals in their professional and private circumstances." J.A. 129:8–131:4.

With respect to whether Plaintiff's filing the pseudonymous complaint without leave of court was a jurisdictional defect, Defendants argued that it was essential for the court to know a plaintiff's identity in order to exercise personal jurisdiction over the plaintiff, to assure itself of subject-matter jurisdiction, and to ensure that the plaintiff was a real person with standing. J.A. 135:17–137:2; *see also* J.A. 172. The court asked for and received supplemental briefing on the

10

policy considerations surrounding the jurisdictional question.  *See* J.A. 147:10–16, 171–72.

###   D.   The district court permits Plaintiff to proceed pseudonymously and finds that her previous failure to seek leave of court was not a jurisdictional defect.

On March 10, 2020, the district court issued a 50-page memorandum opinion and order resolving eleven pending motions.  J.A. 173.  As relevant here, the court found that the amended complaint required leave of court, which it granted.  J.A. 191–98.  The court rejected defendants' argument that the original pseudonymous complaint was jurisdictionally defective for not seeking leave of court or otherwise disclosing Plaintiff's identity to the court.  Noting that defendants' position was supported by "out-of-circuit case law" but that other district courts had "adopted divergent views on this matter," the court declined to apply a jurisdictional rule.  J.A. 196–97.  The court found that Plaintiff met "her burden of establishing subject matter jurisdiction . . . despite her failure to adhere to the proper protocol."  J.A. 197.

Having found that the original complaint was not jurisdictionally defective, the court denied the School Board's motion to dismiss the Title IX and § 1983 claims on statute-of-limitations grounds.  J.A. 201.  Nonetheless, the court dismissed the § 1983 claims against the School Board and the Individual School

11

Defendants for failure to state a substantive-due-process claim under the Fourteenth Amendment.  J.A. 202–209.

Finally, the court granted Plaintiff leave to proceed under a pseudonym and permitted each party to use their initials going forward.  J.A. 218.  The court reasoned that it would be "fundamentally unfair" if Plaintiff were "permitted to use a pseudonym while the Defendants lie vulnerable to publicly litigating such a sensitive matter."  J.A. 221.  The court concluded that the "most appropriate remedy" was "to allow each party to use initials as this case proceeds."  *Id.*[2]

All defendants filed answers to the claims that remained in the amended complaint.  Each of them denied having engaged in any of the misconduct Plaintiff ascribed to them.  *See* ECF Nos. 87, 93–103 (answers by all 12 defendants).

### E.    The district court certifies its jurisdictional ruling as a controlling question of law warranting interlocutory review here.

The defendants jointly moved the district court to amend the March 10 order to certify the relation-back question for interlocutory review.  J.A. 280.  On November 9, 2020, the court granted that motion and amended its order, certifying an interlocutory appeal

---

[2] The district court's ruling permitted the School Board to be referred to as "F.C.S.B.," even though the opinion otherwise refers to "Defendant Fairfax County School Board" by name.  J.A. 173.  As a governmental body, the School Board did not seek anonymity in the district court and does not ask for it here.

> on the question of whether a plaintiff's failure to obtain
> leave of court to file a complaint pseudonymously is a
> jurisdictional defect such that a later order granting leave
> to proceed pseudonymously does not relate back to the
> original filing for purposes of the statute of limitations.

J.A. 289.  The court noted the absence of any "binding authority on the issue" and

concluded that interlocutory review "would allow the Fourth Circuit to definitively

settle the appropriate legal standards that should be applied."  J.A. 287–88.  The

court stayed further proceedings pending appeal, explaining that, "contingent upon

the Fourth Circuit's guidance, it may be that this Court lacks subject jurisdiction

over Plaintiff's only remaining federal claim."  J.A. 290–91.

## SUMMARY OF ARGUMENT

Plaintiff bore the burden of alleging facts sufficient to show that the district

court could properly exercise personal jurisdiction over her and subject-matter

jurisdiction over the controversy.  Because a district court must know a plaintiff's

true name and identity in order to carry out its jurisdictional gatekeeping

responsibilities, the district court here did not acquire jurisdiction at least until

Plaintiff's counsel moved for leave to proceed under a pseudonym, filing affidavits

under seal that, for the first time, revealed Plaintiff's identity to the court.  But by

that time, the two-year statute of limitations had elapsed, rendering the federal

claims time-barred.

13

This Court has not yet decided whether a plaintiff's failure to seek leave of court to proceed under a pseudonym or to otherwise disclose her identity to the district court is a jurisdictional defect. But history, persuasive precedent in other circuits, consistent precedent here, and the independent gatekeeping responsibilities imposed by Article III all point to the need to recognize the identification requirement as jurisdictional.

Pseudonymous complaints like the one at issue here are a relatively recent phenomenon unknown at common law. In the first of such cases to reach the United States Supreme Court, the Connecticut Supreme Court had earlier explained that plaintiffs seeking anonymity must secure the trial court's consent so that the trial court may be assured of its jurisdiction. *Buxton v. Ullman*, 156 A.2d 508, 515 (Conn. 1959), *appeal dismissed sub nom. Poe v. Ullman*, 367 U.S. 497 (1961). Although pseudonymous complaints in federal court increased dramatically after *Roe v. Wade*, 410 U.S. 113 (1973), only a few circuits have addressed whether the failure to seek leave of court is a jurisdictional defect.

But all three circuits to consider the question—the Sixth, Eighth and Tenth—have concluded that a plaintiff's failure to seek leave of court to proceed under a pseudonym is jurisdictional. *See Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 594–95 (8th Cir. 2016); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 637 (6th Cir. 2005); *Nat'l Commodity & Barter Ass'n, Nat'l*

14

*Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). *Capers*, in particular, found that, because the defect was jurisdictional, an order permitting the plaintiff to proceed under a pseudonym could not relate back to the original complaint for purposes of the statute of limitations. 673 F. App'x at 594–95. The same is true here.

Plaintiff cannot distinguish these cases on the ground that, in some of them (like *Gibbs* and *Marsh*), the defect was not raised until the case was on appeal. If the identification requirement were simply a non-jurisdictional claim-processing rule, then the defendant's failure to object would have waived the objection. Those courts held, to the contrary, that the defect could be raised for the first time on appeal—even by the appellate court itself—precisely because the requirement is jurisdictional.

Jurisdictional treatment is necessary to enable district courts to undertake their independent obligation under Article III to ensure that they can exercise jurisdiction over both the parties and the subject matter of the controversy. A plaintiff who has not revealed her identity to the court has not submitted herself to the court's adjudicatory authority. The exercise of personal jurisdiction over the plaintiff requires the court to know who the plaintiff is. Otherwise, the court could not enforce its judgment against the plaintiff, impose sanctions, or otherwise enforce a judgment's preclusive effects (whether a prior judgment's preclusive

15

effects on the present case, or the present case's preclusive effects on future cases).

In addition, a court must know the plaintiff's identity to ensure that the plaintiff is

a real person with Article III standing. Subject-matter jurisdiction can likewise

turn on the plaintiff's identity, such as whether the plaintiff is among the class of

persons entitled to the protection of the particular federal statute in question, or a

citizen of a particular state for diversity-jurisdiction purposes.

Jurisdictional treatment also comports with this Court's precedent, which

imposes an "independent obligation" on district courts to determine whether a

party is permitted to proceed under a pseudonym. *Doe v. Public Citizen*, 749 F.3d

246, 274 (4th Cir. 2014). That requirement cannot be squared with a *non*-

jurisdictional rule that would allow the opposing party's failure to raise the

objection to operate as a waiver. Moreover, in the seminal case in this Circuit

defining the standards to apply when considering pseudonymity requests, the

plaintiffs sought leave of court to proceed under a pseudonym at the outset of the

case. *James v. Jacobson*, 6 F.3d 233, 235 (4th Cir. 1993).

Most recently, this Court confronted a similar jurisdictional problem in

*House v. Mitra QSR KNE LLC*, 796 F. App'x 783 (4th Cir. 2019). *House* held that

filing a complaint in the name of a deceased person was a jurisdictional defect that

failed to toll the statute of limitations. *Id.* at 788–89. And that jurisdictional defect

precluded relation-back through any real-party-in-interest substitution under Rule 17. *Id*. at 791. The same is true in this case.

The rule identified by the Court in this case must work in *all* cases, not just this one. Even though the School Board in this case knew Plaintiff's identity when she filed suit, that fact cannot excuse Plaintiff from failing to disclose her identity to the district court at the outset. It is the responsibility of the court, not the defendant, to ensure its own jurisdiction. Knowing a plaintiff's identity is necessary for the court to perform that duty. The actual-identity requirement must therefore be treated as a non-waivable, jurisdictional rule.

Unlike in *House*, where the plaintiff's lawyer found out about the client's death on the same day that that lawsuit had to be filed to avoid the statute-of-limitations bar, there was no such exigency in this case. The same lawyers had been representing Plaintiff in this case for more than 18 months, waited until the eve of the statute of limitations to file the complaint, and consciously elected not to seek permission to do so under a pseudonym.

Because the original complaint here was jurisdictionally defective, the court's later order permitting Plaintiff to proceed under a pseudonym did not relate back. As a result, the Title IX and § 1983 claims are time-barred under the two-year statute of limitations that applies to these federal claims by reference to Virginia's general and residual statute of limitations for personal-injury actions.

17

*See Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per curiam); Va. Code Ann. § 8.01-243(A) (Supp. 2020).

## ARGUMENT

### I. Plaintiff bears the burden of establishing jurisdiction and the standard of review is de novo.

The burden is on Plaintiff as the "party who seeks the exercise of jurisdiction in [her] favor" to clearly "allege facts demonstrating that [she] is a proper party to invoke judicial resolution of the dispute." *United States v. Hays*, 515 U.S. 737, 743 (1995) (citations omitted). Defendants' motion to dismiss the federal claims was brought under both Rules 12(b)(1) and 12(b)(6). They argued under Rule 12(b)(1) that the pseudonymous complaint filed without leave of court was jurisdictionally defective and that any later order granting permission would not relate back to the original complaint. They argued under Rule 12(b)(6) that, as a result of the absence of relation-back, the federal claims were time-barred. *E.g.*, J.A. 109–16, 120. The district court's rulings under both Rules 12(b)(1) and 12(b)(6) are reviewed "de novo." *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196, at *4 (4th Cir. Jan. 14, 2021); *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 360–61 (4th Cir. 2020), *petition for cert. filed* (U.S. Dec. 21, 2020) (No. 20-855).

18

## II.    A district court does not acquire jurisdiction over a pseudonymous plaintiff unless and until the plaintiff's identity is disclosed to the court.

This Court has not yet considered whether a plaintiff who files a pseudonymous complaint without leave of court has properly invoked the court's jurisdiction. But the three other federal circuits to consider the question have determined that the plaintiff's failure to disclose her identity to the district court is a jurisdictional defect. Because that rule is consistent with centuries of legal history, with the nature and structure of Article III jurisdiction, and with Fourth Circuit precedent, this Court should join the Sixth, Eighth, and Tenth Circuits in clarifying that the identification requirement is, in fact, jurisdictional.

### A.    Pseudonymous complaints are a recent phenomenon unknown at common law.

Because "a page of history is worth a volume of logic," *N.Y. Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921) (opinion by Holmes, J.), it is worth beginning with the fact that anonymous or pseudonymous lawsuits like this one were unknown at common law. Nineteenth-century American practitioners followed the "general rule" that the initial pleading must identify "*the christian and surnames of the parties*." 1 J. Chitty et al., *A Treatise on the Parties to Actions, and on Pleading* 244–45 (8th Am. ed. 1840), https://tinyurl.com/yy4c6wve; *see also* 1 Edwin E. Bryant, *Law of Pleading under the Codes of Civil Procedure* 182 (1894 ("The full, true Christian and surnames of all the parties plaintiff and

19

defendant should be given."), https://tinyurl.com/y3pcgfef.  As one early treatise counseled, "[t]he parties should be described by their proper names: Such a description being necessary for the purpose of identifying them.  And no other form of description, it seems, can supply the omission of their proper names." 1 James Gould, *Treatise on the Principles of Pleading, In Civil Actions* 86 (3d. ed. 1849), https://tinyurl.com/y3ajhp6k.  The Supreme Court of Indiana found "no principle more certainly and satisfactorily settled" than this one, calling the identification requirement a "rule of law and practice . . . sustained by reason, justice, and the highest authorities."  *Pollock v. Dunning*, 54 Ind. 115, 117 (1876).

That historical tradition was embraced by the drafters of the Federal Rules of Civil Procedure.  The identification requirement was included in Rule 10 when the Rules were first promulgated in 1937.  *See* Report of the Advisory Committee on Rules for Civil Procedure 28 (Apr. 1, 1937), https://tinyurl.com/y2oo6kss.  It has remained relatively changed.  Rule 10(a) currently provides that "[t]he title of the complaint must name all the parties . . . ."  Fed. R. Civ. P. 10(a).  Thus, the Federal Rules "make no provision for suits by persons using fictitious names or for anonymous plaintiffs."  *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 (10th Cir. 2017) (quoting *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)), *cert. denied*, 138 S. Ct. 1298 (2018).

20

"[I]n the twenty-five-year period between 1945 and 1969, only a single district court decision—anywhere in the country—featured a 'John Doe'–like plaintiff as the lead or sole plaintiff (along with a single Supreme Court case reviewing a state court decision and three appellate rulings in administrative appeals)." *In re U.S. O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 83 (D.C. Cir. 2019) (Williams, J., concurring in part and dissenting in part). That "single" Supreme Court case was *Poe v. Ullman*, 367 U.S. 497 (1961), where the Court dismissed an appeal from the Supreme Court of Connecticut in which several plaintiffs had proceeded under fictitious names in the lower court. The Supreme Court noted, however, that the Connecticut Supreme Court had "approved" that procedure. *Id.* at 498 n.1. Notably, the Connecticut Supreme Court explained that pseudonymous filings were impermissible unless and until the plaintiffs had obtained leave of court at the time the suit was filed, as happened in that case:

> To obviate any possibility that the parties and the issues raised are fictitious and that the jurisdiction of the court is being invoked to decide moot questions, a plaintiff who desires to use a name other than his own should, before the case is presented in court, acquaint the court of his desires, establish the fact that the parties and issues are real although the names used are fictitious, and secure the court's consent, as was done in these cases.

*Buxton v. Ullman*, 156 A.2d 508, 515 (Conn. 1959), *appeal dismissed sub nom. Poe v. Ullman*, 367 U.S. 497 (1961).

One of the earliest federal courts to consider the issue after *Poe* concluded that a plaintiff's failure to obtain leave of court to proceed pseudonymously rendered the complaint "ineffective to commence an action." *Roe v. New York*, 49 F.R.D. 279, 281 (S.D.N.Y. 1970). The court explained that the naming requirement did not "put form before substance or . . . penalize litigants for minor or technical lapses of procedure." *Id*. at 282. Rather, it was

> a defect of substance. Sound public policy would appear to require that a complaint identify by true name at least one plaintiff if the filing is to commence an action; if the complaint fails to identify by true name at least one plaintiff then its filing is not effective to commence an action.

*Id*.

The Supreme Court's recognition in 1973 of a fundamental right to an abortion involved two cases in which the plaintiffs proceeded under pseudonyms. *See Roe v. Wade*, 410 U.S. 113, 120–21 & nn. 4–5 (1973). Although *Roe v. Wade* did not discuss whether plaintiffs must obtain leave of court to litigate under pseudonyms, the number of such filings increased dramatically afterwards, leading to a "virtual explosion not only in the number of cases brought by anonymous plaintiffs but also in the types of actions using the procedure."[3] Pseudonymous

---

[3] Adam A. Milani, *Doe v. Roe: An Argument for Defendant Anonymity When a Pseudonymous Plaintiff Alleges a Stigmatizing Intentional Tort*, 41 Wayne L. Rev. 1659, 1662 (1995).

filings are thus no longer the "rarity" they once were. *In re Data Breach Sec.*

*Litig.*, 928 F.3d at 81 (Williams, J., concurring in part and dissenting in part). But

the jurisdictional question has been tackled by only a few circuits to date. *Id.* at 84

(noting that the D.C. Circuit has not yet decided whether to adopt the jurisdictional

rule, followed by three sister circuits, that treats the "failure to *request* permission

as fatal to jurisdiction over such parties").

### B. Three federal circuits have determined that district courts lack jurisdiction over pseudonymous complaints filed without leave of court.

Although there is a decided split among federal district courts,[4] the three

---

[4] For cases holding that the failure is jurisdictional or probably jurisdictional, see *Doe v. Kansas State Univ.*, No. 2:20-cv-02258-HLT-TJJ, 2021 WL 84170, at *2 (D. Kan. Jan 11, 2021); *Nat'l Viatical, Inc. v. Oxendine*, No. 1:05-CV-3059-TWT, 2006 WL 1071839, *2 (N.D. Ga. Apr. 20, 2006), *aff'd*, 221 F. App'x 899 (11th Cir. 2007); *Doe v. Husband*, No. 4:03cv166, 2004 U.S. Dist. LEXIS 28345, at *20 (E.D. Va. Aug. 16, 2004); *Estate of Rodriguez v. Drummond Co., Inc.*, 256 F. Supp. 2d 1250, 1256 (N.D. Ala. 2003); *Roe v. New York*, 49 F.R.D. at 281–82 (S.D.N.Y.). For cases holding that the failure to obtain leave of court is not jurisdictional, at least where the plaintiff ultimately moves for leave to do so, see *Weissenbach v. Tuscaloosa Cty. Sch. Sys.*, No. 7:17-cv-01642-LSC, 2018 WL 9986741, at *3 (N.D. Ala. June 5, 2018); *Doe v. N. Orange Cty. Cmty. Coll. Dist.*, No. SACV 17-01776-CJC, 2018 WL 6137623, at *4 (C.D. Cal. Feb. 2, 2018) (collecting district court cases in the 9th Circuit); *Plaintiff Doctor v. Hosp. Serv. Dist. #3*, No. 18-7945, 2019 WL 351492, at *2 (E.D. La. Jan. 29, 2019); *Doe v. McDonald's Restaurants of N.C., Inc.*, No. 3:15-cv-00037, 2015 WL 4389528, at *4–5 (W.D.N.C. July 17, 2015); *CTH1 Caregiver v. Owens*, No. 8:11-2215-TMC, 2012 WL 2572044, at *3 (D.S.C. July 2, 2012); *Doe I v. City of Alabaster*, No. 2:11-CV-3448-VEH, 2012 WL 13088882, at *3–4 (N.D. Ala. Apr. 26, 2012); *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 109-10 (E.D.N.Y. 2003); *Doe v. Barrow Cty.*, 219 F.R.D. 189, 192 (N.D. Ga. 2003).

federal appeals courts to consider the question have all concluded that a plaintiff who files a complaint under a pseudonym, without leave of court, has failed to invoke the district court's jurisdiction.

The Tenth Circuit was the first to do so. In 1989, it dismissed several anonymous appellants as parties to the appeal because they failed to obtain permission from the district court to proceed anonymously. *Gibbs*, 886 F.2d at 1245. *Gibbs* began with Federal Rule of Civil Procedure 10(a), which requires that "the complaint . . . shall include the names of all the parties." *Id*. (quoting Fed. R. Civ. P. 10(a)). The court pointed out that "[t]he Federal Rules thus make no provision for suits by persons using fictitious names or for anonymous plaintiffs." *Id*. Nevertheless, the court accepted that in "limited circumstances . . . courts have permitted a plaintiff to proceed using a fictitious name where there are significant privacy interests or threats of physical harm implicated by the disclosure of the plaintiff's name." *Id*. But the court reasoned that the failure to seek leave of court to proceed anonymously was a fatal jurisdictional defect:

> Absent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.

*Id*. Because the problem was "jurisdictional," the court of appeals in *Gibbs* raised that defect "sua sponte." *Id*. at 1245 n.3.

24

The Tenth Circuit applied the jurisdictional rule again in 2001, dismissing the anonymous plaintiffs' appeal in *W.N.J. v. Yocom* for failing to obtain the district court's permission to proceed under a pseudonym. 257 F.3d 1171, 1172 (10th Cir. 2001). More recently, it held that *qui tam* relators could not evade the first-to-file bar by suing under "John Doe" pseudonyms because the otherwise anonymous complaints, having been filed without leave of court, had no legal effect under *Gibbs* and *W.N.J. See Triumph Gear Systems*, 870 F.3d at 1250.

The Sixth Circuit reached a similar conclusion in *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 637 (6th Cir. 2005). The plaintiffs there tried to avoid a *Younger* abstention problem by including an anonymous "John Doe" plaintiff to whom abstention would not apply. The court of appeals held that the anonymous plaintiff was properly disregarded and dismissed because the "[f]ailure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case." *Id.*

*Gibbs*, *W.N.J.*, and *Marsh* cannot be distinguished on the ground that the defect in those cases was not raised until the cases were on appeal. *See* ECF No. 71 at 18–19 (Plaintiff's opposition to motion to dismiss). If Plaintiff's view were correct that the failure to obtain leave of court is *not* jurisdictional, then that defect would have been waived in the district court by the opposing party's failure to raise it. A "nonjurisdictional claim-processing rule" can be "waived or forfeited by

an opposing party," whereas a jurisdictional rule cannot. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019). Yet *Gibbs*, *W.N.J.* and *Marsh* all treated the failure to seek leave of court as jurisdictional—and therefore not waivable— enabling each appellate court to raise the defect itself for the first time on appeal. As the court put it in *Gibbs*: "Although the defendants did not raise this issue in their brief, it is jurisdictional and the court may consider it sua sponte." *Gibbs*, 886 F.2d at 1245 n.3.

The Eighth Circuit followed *Gibbs* and *Marsh* in *Capers v. National Railroad Passenger Corp.*, 673 F. App'x 591 (8th Cir. 2016), a case with a procedural posture nearly identical to this one. *Capers* held that the filing of a pseudonymous complaint without leave of court was a nullity and that the district court could not permit an amendment to save it from the statute of limitations, which (as in this case) had expired in the interim. *Id.* at 596. The plaintiff had "failed to initiate a valid action at least until she sought to amend her complaint, by which time the statute of limitations had run, as she was not properly before the court until then, if at all." *Id.* at 594–95. Because of the jurisdictional defect, an amendment under Federal Rule of Civil Procedure 15 would not "relate back" to the original complaint. *Id.* at 594.

*Capers* also rejected the plaintiff's argument that she could revive her time-barred claim under Federal Rule 17(a). That rule provides that a "court may not

dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). *Capers* explained that Rule 17(a) applies only when a person *different* from the named plaintiff seeks to be substituted in as the real party in interest. 673 F. App'x at 595. In *Capers*—as in this case—"Jane Doe" was "not a separate person from" the real plaintiff. *Id*. They were (and are) one and the same. "Thus, substitution cannot operate to save her claim any more than relation-back doctrine." *Id*. at 596. Accordingly, the court affirmed the dismissal of the plaintiff's claim as time-barred. *Id*.

Plaintiff has also tried to distinguish *Capers*, unconvincingly, by insisting that the Eighth Circuit decided the relation-back question only under *State* law, not federal law. *See* ECF No. 71 at 2. To the contrary, *Capers* made clear that the plaintiff's failure to obtain leave of court to proceed pseudonymously was a fatal defect under *either* Arkansas law or the Federal Rules of Civil Procedure. 673 F. App'x at 594–95. Because the substantive claim in question was governed by Arkansas common law, the *Capers* court looked first to Arkansas law, which did not permit relation back. *Id*. at 594. But the court then looked independently at whether relation-back would be permitted under *federal* law, concluding that it

27

would not: "Thus, even under federal law, Capers's Rule 15 argument fails." *Id*. at

595. The same argument fails here.[5]

In short, if this Court applies the decisions of the Sixth, Eighth, or Tenth

Circuits, the pseudonymous complaint filed here without leave of court did not toll

the limitations period that expired a few days afterwards, and the subsequent order

granting leave to proceed pseudonymously did not relate-back to the date of the

original complaint.

### C.    Jurisdictional treatment is warranted to ensure Article III jurisdiction over the parties and the subject-matter.

The limitations on Article III jurisdiction support treating a plaintiff's failure

to disclose her identity to the district court as a jurisdictional defect. Knowing the

plaintiff's identity is essential for federal courts to carry out their jurisdictional

gatekeeping obligations.

---

[5] Plaintiff likewise cannot distinguish *Capers* on the ground that Virginia law would permit relation-back for a Virginia-law claim whereas Arkansas law did not. ECF No. 71 at 3. For one thing, only *federal* claims are at issue in this appeal: the Title IX claim against the School Board, and the § 1983 claim against the School Board and Individual School defendants. For another, federal procedural rules govern in federal court even when State substantive claims are involved. *See, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 473 (1965) ("*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules."); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611 (4th Cir. 1980) ("*Hanna* generally commands application of" federal procedural rules "in the face of a contrary state rule").

Article III limits a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to *actual* cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (emphasis added) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Because "[f]ederal courts are courts of limited jurisdiction," they apply a presumption that a case "lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799)). In other words, "the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction, until the contrary appears." *Turner*, 4 U.S. at 10.

As a consequence, every federal court has a "special obligation to 'satisfy itself'" of its own jurisdiction at the beginning of every case. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). That obligation includes making sure that the plaintiff is a real person who has "Article III standing *at the outset* of the litigation." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (emphasis added). The Court must likewise ensure that it has

29

subject-matter jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Federal courts have these independent gatekeeping responsibilities "even if the parties fail to raise the issue." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990).

A plaintiff's failure to disclose her true name to the district court disrupts the court's ability to assess its Article III jurisdiction in at least three ways. First, withholding the plaintiff's identity frustrates the court's acquisition of *personal* jurisdiction over the plaintiff. In order for a federal court to exercise "adjudicatory authority" over the persons before it, the court must have "personal jurisdiction" over the parties. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Questions of personal jurisdiction almost always arise in the context of whether an out-of-state *defendant* is susceptible to the court's adjudicatory authority.[6] Personal jurisdiction over *plaintiffs* in such cases is not in question because a plaintiff, "by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court." *Adam v. Saenger*, 303 U.S. 59, 67 (1938); *United States v. $95,945.18*, 913 F.2d 1106, 1109 (4th Cir. 1990) (quoting same language).

---

[6] *See generally* Scott Dodson, *Plaintiff Personal Jurisdiction and Venue Transfer*, 117 Mich. L. Rev. 1463, 1463 (2019) (noting that personal jurisdiction "usually focuses on the rights of the defendant" but setting forth personal-jurisdiction grounds for a plaintiff to object to compulsory venue transfer to a different State).

But where the district court does not know the plaintiff's identity, the plaintiff has not submitted herself to the district court's jurisdiction in a manner that enables the court to bind her. That prevents the court's exercise of adjudicatory authority over the anonymous party, as the court would be "unable to determine with certitude" that the plaintiff would "be bound by an adverse judgment." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988). Nor could the district court hold the unnamed plaintiff "liable for costs or sanctions." *Id.*

Similarly, principles of claim and issue preclusion require that "the parties to the second matter are identical to, or in privity with, the parties in the first action." *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017). Without knowing the plaintiff's identity, the court could not undertake that comparison. If the defect were merely waivable, the defendant's failure to complain about it would force the court to allow the anonymous plaintiff to "sit on the fence, await the outcome, and opt to participate [in the judgment] only if it [were] favorable." *Gonzalez v. Thaler*, 565 U.S. 134, 148 (2012). This problem could frustrate the ability to find that a prior judgment precludes the current case, or to ensure that the current case has preclusive effects on future cases.[7]

---

[7] A plaintiff's failure to identify herself to the court could have other adverse impacts on the administration of justice that may fall short of depriving the court of jurisdiction. For example, the disclosure of the plaintiff's "real name" is necessary

31

Second, a court must know the plaintiff's identity in order to discharge its obligation to ensure that the plaintiff has Article III standing. "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings.'" *FW/PBS*, 493 U.S. at 231 (quoting *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883)). Rather, standing "must affirmatively appear in the record." *Id.* (quoting *Mansfield C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). If a plaintiff fails to allege "facts essential to show jurisdiction," then she has "no standing" and the case must be dismissed. *Id.* (citation omitted); *see also Turner*, 4 U.S. at 10 (stating that a plaintiff must "set forth upon the record . . . the facts or circumstances which give jurisdiction").

Knowing a plaintiff's identity is essential for the district court to assure itself that the plaintiff is a real person with standing. Without knowing the plaintiff's identity, the court cannot fully assess that the plaintiff is the proper party to have filed suit. Unless and until the court knows who the plaintiff is, it cannot make the "threshold determina[tion]" that the plaintiff is who her lawyer says, that the plaintiff has standing, and, consequently, that a "case or controversy" actually exists. *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975).

---

"so that the district judge can determine whether to recuse himself," as well as to permit an appellate judge to make the same determination. *Coe v. Cty. of Cook*, 162 F.3d 491, 498 (7th Cir. 1998).

Third, the plaintiff's failure to disclose her identity to the district court prevents the court from fulfilling its "independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp.*, 559 U.S. at 94. Knowing the plaintiff's identity is essential regardless of whether subject-matter jurisdiction is based on a federal question under 28 U.S.C. § 1331, or on diversity of citizenship under § 1332. Jurisdiction in this case was founded on federal-question jurisdiction. J.A. 17, 66 (Compl. ¶ 24; Am. Compl. ¶ 33). But it is not enough to allege the violation of a federal statute, such as Title IX. A plaintiff must show that she is the correct person entitled to the relevant statute's protection. The parent of a student in an educational program that receives federal funding, for example, does not have standing to seek damages under the implied right of action to enforce Title IX. *See Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 427 (S.D.N.Y. 2006). Although the Title IX complaint in this case purports to have been filed by a 21-year old adult who claims to be the student-plaintiff in question, to date, her counsel has filed sealed affidavits signed by only Plaintiff's *mother*, not by Plaintiff. J.A. 268. Similarly, in cases where jurisdiction is founded on diversity of citizenship, a plaintiff's failure to disclose her identity impairs the court's ability to confirm that the plaintiff is a citizen of the State in which she claims to reside.

33

These multidimensional jurisdictional considerations show why it is necessary for the district court to know the plaintiff's identity at the outset. In short, the district court cannot assure itself that it has acquired jurisdiction over the plaintiff's person or over the subject matter of the controversy unless and until it knows who the plaintiff really is.

### D.    The jurisdictional rule is consistent with this Court's precedent and the non-waivable requirement to determine the propriety of a plaintiff's proceeding under a pseudonym.

Although this Court has not yet decided the question raised here, three prior opinions provide helpful guideposts that are consistent with treating the failure to obtain leave of court to proceed pseudonymously as a jurisdictional defect.

First, this Court has made clear that an opposing party's failure to object to the plaintiff's proceeding under a pseudonym does not absolve the district court itself from its duty to address the question, showing that the failure to seek leave of court is a non-waivable jurisdictional defect, rather than a waivable claim-processing rule. In *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), this Court held that "when a party seeks to litigate under a pseudonym, a district court has an *independent obligation* to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id*. at 274 (emphasis added). The Court grounded that duty in the

34

fundamental aspects of a court's function in a democratic republic:
"[p]seudonymous litigation undermines the public's right of access to judicial
proceedings"; the "public has an interest in knowing the names of the litigants";
"disclosing the parties' identities furthers openness of judicial proceedings"; and a
court must "balance[] a litigant's stated need for anonymity against the public's
countervailing interests in full disclosure and openness." *Id*. at 273–74.

The mandatory obligation to independently evaluate the propriety of a
litigant's proceeding under a pseudonym underscores the jurisdictional nature of
the identification requirement. If the requirement for the plaintiff to be identified
by name were simply a *non*-jurisdictional claim-processing rule, the objection
would be "forfeited if the party asserting the rule wait[ed] too long to raise the
point." *Kontrick*, 540 U.S. at 456. *Public Citizen* thus cannot be reconciled with
treating this requirement merely as a claim-processing rule, under which the failure
of a party to object waives the defect and binds the court.

Second, in the seminal case in which this Court set forth the factors that a
district court must consider when determining whether to permit a plaintiff to
proceed under a pseudonym, the plaintiffs properly applied for such permission
"*[b]efore* filing their complaint," obtaining "an ex parte protective order permitting
them" to use pseudonyms in their complaint. *James v. Jacobson*, 6 F.3d 233, 235
(4th Cir. 1993) (emphasis added). Although *James* did not address the

35

consequence of failing to seek such permission, the opinion modeled good practice, a practice consistent with treating the need for such permission as a jurisdictional requirement.

Finally, treating the issue here as jurisdictional comports with this Court's recent decision in *House v. Mitra QSR KNE LLC*, 796 F. App'x 783 (4th Cir. 2019). Although *House* is unpublished, the Ninth Circuit called it a "thorough" opinion that "gives a persuasive overview of the law in this area." *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 952 (9th Cir. 2020). *House* held that (1) suing in the name of a decedent, rather than the personal representative of the estate, was a jurisdictional defect, and (2) a later order permitting substitution would not relate back for purposes of saving the claim from the statute of limitations. 796 F. App'x at 788–89. The Court explained that, "[a]bsent a plaintiff with legal existence, there can be no Article III case or controversy." *Id*. at 787. "[A] plaintiff without legal existence is a poor fit for the Article III standing trifecta of injury, causation, and redressability; it is not clear, for example, how a favorable court ruling could offer redress to a deceased person, or a party otherwise lacking legal existence." *Id*. A court likewise could not be sure that a "real plaintiff" stands behind an anonymous or pseudonymous one unless and until the court knows who it is. "[I]t is elemental that there must be parties before there

36

is a case or controversy." *Ellis v. Dyson*, 421 U.S. 426, 434 (1975) (cited by *House*, 796 F. App'x at 787).

Similar to the Eighth Circuit in *Capers*, this Court in *House* rejected the use of Rule 17 to avoid the statute-of-limitations bar. The Court explained that a "procedural rule cannot revive a lawsuit that a federal court lacks power to adjudicate at the outset." *House*, 796 F. App'x at 788. "Rule 17 cannot operate to create jurisdiction where it does not otherwise exist . . . . And district courts have routinely rejected attempts to use Rule 17 to confer jurisdiction retroactively." *Id*. at 789 (citation omitted). *See also In re Engle Cases*, 767 F.3d 1082, 1113 (11th Cir. 2014) ("[A]s the Advisory Committee and courts applying the rule have made clear, Rule 17(a)(3) isn't a plenary license to fix 'pleadings errors' in all cases for all reasons."). So as in *Capers* and *House*, Rule 17 is likewise unavailable here to save Plaintiff's federal claims from the statute-of-limitations bar.

### E.    A per se rule is required that works in all cases.

In this particular case, the School Board has not disputed that it knew the plaintiff's identity when the original complaint was filed. J.A. 137:8–15. Her current counsel sent the School Board a notice-of-representation letter in January 2018, nineteen months before filing suit. J.A. 122 (ECF 74-1).

But jurisdictional rules must work in *all* scenarios, regardless of whether defendants know or don't know the pseudonymous plaintiff's identity. The point

of requiring a plaintiff to disclose her identity is "to provide notice *both* to the opposition *and to the court* of the identity" of the party bringing the case. *Torres*, 487 U.S. at 318 (emphasis added). Treating the identification requirement as a *non*-jurisdictional rule would allow that requirement to be waived altogether, binding the court to allow the anonymous plaintiff to proceed if the defendant simply fails to object. A lawyer could thus file a "John Doe" suit for a non-existent person, perhaps as a "placeholder" action "to keep a limitations period open while they investigate their claims and track down the proper parties." *In re Engle Cases*, 767 F.3d at 1113. Treating the defect as waivable would improperly "encourage" lawyers "to file complaints without proper authorization or investigation." *Id.*[8]

The fundamental requirement for a plaintiff to identify herself to the court calls for bright-line rules, not balancing tests. When dealing with issues like this one, "administrative simplicity is a major virtue." *Hertz Corp.*, 559 U.S. at 94.

---

[8] In the analogous context, the Rules Advisory Committee made clear that Rule 17 could not be used this way: "[Rule 17(a)(3) ] does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period." *In re Engle Cases*, 767 F.3d at 1113 (quoting Fed. R. Civ. P. 17, Advisory Comm. Notes, 1966 Amend.).

38

"Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate" jurisdictional issues, "not the merits of their claims." *Id*. "[C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case." *Id*.

The correct rule here is indeed straightforward and easy to administer: a plaintiff has not properly invoked the jurisdiction of a federal court unless and until She discloses her identity to the court, whether in the complaint itself, or in a motion, filed under seal, disclosing the plaintiff's identity but seeking leave of court to proceed under a pseudonym. That was the correct approach in 1959, when *Buxton v. Ullman* was decided. It was the correct approach in 1993, when this Court decided *James*. It remains the correct approach today.

To be sure, jurisdictional rules can sometimes lead to "harsh" results; that is a necessary byproduct of any "jurisdictional prerequisite." *Torres*, 487 U.S. at 318. The "sanction for failure to comply with [a mandatory rule] *always* prevents the court from deciding where justice lies in the particular case." *Id*. at 319 (Scalia, J., concurring) (emphasis added). But Article III courts accept that occasional harshness "on the theory that securing a fair and orderly process enables more justice to be done in the totality of cases." *Id*. "[T]o the extent that there are [harsh] cases, the Court must nonetheless decide the jurisdictional question before

39

it irrespective of the possibility of harsh consequences." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 937 n.4 (2009).

This Court modeled that teaching in *House*, where it enforced the jurisdictional rule that prohibits suing in the name of a deceased person. The plaintiff's lawyer there found out on the last day of a very short, 90-day statute-of-limitations period that his client had died two days before. Under pressure, the lawyer filed suit anyway in the decedent's name. 796 F. App'x at 784. Despite being "sympathetic to the unfortunate and hurried circumstances surrounding the filing of this action," this Court affirmed that the defect was "jurisdictional." *Id*. at 791.

The circumstances confronting Plaintiff's lawyers here did not present any such exigency. They have been representing her since at least January 2018, when they notified the School Board that she was their client. J.A. 122 (ECF 74-1). Inexplicably, they waited another 18 months, filing the complaint on the Friday before the Monday that the statute of limitations expired. *See supra* at 5. The district judge asked why they did not follow the "typical process" of seeking leave of court to proceed under a pseudonym. J.A. 128:12–18. Plaintiff's counsel answered that they knew that some federal circuits required leave of court to file pseudonymously, but they did not believe that the Fourth Circuit was among them. J.A. 128:19–24. Plaintiffs' counsel thus faced none of the time pressure confronted in *House*; they simply decided not to seek permission to file suit under

40

a pseudonym. What happened here echoes the recent warning by Judge Williams that permitting such lackadaisical treatment of the identification requirement risks going "yet further down the slope of anonymity." *In re Data Breach Sec. Litig.*, 928 F.3d at 84 (Williams, J., concurring in part and dissenting in part); *see also id.* (noting that "five 'Does' not only filed anonymously; they evidently never even bothered to *ask* the district court for permission to do so").

Whether the consequence of the jurisdictional requirement is harsh as applied in this case, compared to *House*, the rule is either jurisdictional or it is not. And because the defect is jurisdictional, Plaintiff's lawsuit is now time-barred, just as it was in *House*.

## III. The two-year statute of limitations barred the federal claims.

As the district court understood, J.A. 134:2–3, the statute of limitations for the Title IX and § 1983 claims is two years.[9] The statute of limitations for a § 1983 claim is borrowed from the State statute of limitations for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 271–76 (1985). Where "state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for

---

[9] As noted above, the district court dismissed Plaintiff's § 1983 claims against the School Board and the Individual School Defendants on the independent ground that it failed to state a substantive-due process claim. J.A. 202–09.

personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989).  In

Virginia, that "general or residual" personal-injury statute of limitations is two

years, as specified in Virginia Code § 8.01-243(A) (Supp. 2020).  Similarly, *every*

federal circuit to consider the question has held that the same statute of limitations

applies to Title IX claims.  *See Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F.

App'x 294, 296 n.3 (4th Cir. 2007) (per curiam); *Graham v. City of Manassas Sch.*

*Bd.*, 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (following *Wilmink*).[10]  Indeed,

other civil rights claims analogous to those brought under § 1983 (such as

discrimination claims under 42 U.S.C. § 1981) are likewise "governed by state

general or residual personal injury statutes of limitations."  *Reed v. United Transp.*

*Union*, 488 U.S. 319, 326 (1989).[11]  A § 1983 claim and a Title IX claim both

accrue "'when the plaintiff knows or has reason to know of his injury.'"  *Graham*,

390 F. Supp. 3d at 710 (quoting *Owens v. Balt. City State's Attorneys Office*, 767

---

[10] Notably, the statute of limitations for such *federal* claims is not extended by longer statute-of-limitations rules governing sexual abuse claims under Virginia State law.  *See, e.g.*, *Graham*, 390 F. Supp. 3d at 710; Va. Code Ann. § 8.01-243(D) (Supp. 2020) (providing 20-year limitations period for personal-injury claims "resulting from sexual abuse" during infancy).

[11] In 1990, Congress provided "a four-year default statute of limitations for any 'civil action arising under an Act of Congress enacted after' December 1, 1990."  *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 267 (4th Cir. 2018) (quoting Judicial Improvements Act of 1990, Pub. L. No. 101–650, § 313, 104 Stat. 5089, 5114–15 (codified at 28 U.S.C. § 1658(a))).  That provision is inapplicable to claims under § 1983 (enacted in 1871) and Title IX (enacted in 1972).

F.3d 379, 389 (4th Cir. 2014)).  But the limitations period is "tolled for any period before that plaintiff turned 18." *Id.* (citing Va. Code Ann. § 8.01-229(A)(2)(a) (2015)).

In this case, Plaintiff admits that she knew and complained about defendants' alleged wrongdoing in 2011 and 2012, during Plaintiff's seventh-grade year, *e.g.*, J.A. 41 (Compl. ¶ 213(l)), and she filed an administrative complaint with the Office of Civil Rights in August 2012, J.A. 227 ¶ 7.  Her federal claims had thus accrued but were tolled until July 2017, when she turned 18.  But the original complaint was not filed until July 12, 2019, J.A. 14, only a few days before her 20th birthday.  Plaintiff did not disclose her identity to the Court until November 7, 2019, when she moved for the first time for leave to proceed under a pseudonym, J.A. 6, 227 (ECF Nos. 38-4, 40, 89).  Because that was nearly four months after the limitations period expired, the Title IX and § 1983 claims are time-barred.

## CONCLUSION

The Court should reverse the district court's determination that its granting of leave to proceed pseudonymously relates back to the date of the original complaint and remand this case to the district court with instructions to dismiss the federal claims as time-barred.

Respectfully submitted,

**Defendants-Appellants**
**S.T., A.F., P.A.H., T.B., B.H.,**
**M.P., M.C., F.T., and J.F.**

By: *Michael E. Kinney*
Michael E. Kinney
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Suite 120
Reston, VA 20191
703-956-9377
Fax: 703-956-9634
mk@kinneyesq.com

**Defendant-Appellant J.O.**

By: *Jim Miller*
Bruce M. Blanchard
James Paul Menzies Miller
ODIN, FELDMAN & PITTLEMAN, PC
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
703-218-2100
Fax: 703-218-2160
bruce.blanchard@ofplaw.com
jim.miller@ofplaw.com

**Defendant-Appellant F.C.S.B.**
**(Fairfax County School Board)**

By: *Stuart A. Raphael*
Stuart A. Raphael
Sona Rewari
Ryan M. Bates
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2021
Fax: 202-828-3728
sraphael@HuntonAK.com
srewari@HuntonAK.com
rbates@HuntonAK.com

**Defendant-Appellant C.K.**

By: *James F. Davis*
JAMES F. DAVIS, P.C.
10513 Judicial Dr., Ste. 200
Fairfax, VA 22030
703-383-3110
Fax: 571-748-6564
jfd@jfdavislaw.com

## STATEMENT ABOUT ORAL ARGUMENT

Oral argument is warranted in this case because, as the district court certified

under 28 U.S.C. § 1292(b), *see* J.A. 282–89 (ECF No. 114), the order in question

presents a controlling question of law that is a matter of first impression in this

Court and on which there are substantial grounds for differences of opinion. Thus,

oral argument may materially aid the Court in resolving this appeal.

44

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Federal Rule of

Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in 14-point

Times New Roman, a proportionally spaced font, and that it complies with the

type-volume limitation of Rule 32(a)(7)(B), because it contains 10,557 [less than

13,000] words, excluding the items exempted by Rule 32(f), according to the count

of Microsoft Word.



/s/
Stuart A. Raphael

## CERTIFICATE OF SERVICE

I certify that on February 16, 2021, I electronically filed this document with

the Clerk of this Court by using the appellate CM/ECF system, which caused a

copy to be served electronically on all counsel of record.

/s/
Stuart A. Raphael

45