**No. 21-1005**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

B.R., PLAINTIFF-APPELLEE,

V.

F.C.S.B., S.T., A.F., P.A.H., T.B., B.H., M.P.,
M.C., F.T., J.F., C.K., J.O., DEFENDANTS-APPELLANTS.

On Interlocutory Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:19-cv-00917-RDA-TCB)

**APPELLEE'S RESPONSE BRIEF**

Thomas N. Sweeney
MESSA & ASSOCIATES, P.C.
123 S. 22nd Street
Philadelphia, PA 19103
215.568.3500
215.568.3501 (fax)
Tsweeney@messalaw.com

Tejinder Singh
Daniel H. Woofter
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
202.362.0636
866.574.2033 (fax)
tsingh@goldsteinrussell.com
dhwoofter@goldsteinrussell.com

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1005__     Caption: __B.R. v. F.C.S.B.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__B.R.__
(name of party/amicus)

_____

 who is _____Appellee-Plaintiff_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☐YES ☑NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Tejinder Singh                          Date:      April 15, 2021

Counsel for: Appellee-Plaintiff B.R.

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................ii

INTRODUCTION .................................................................. 1

STATEMENT OF THE CASE ...................................................... 3

   I.   Facts and Procedural Posture ......................................... 3

   II.  District Court Decision and Interlocutory Appeal......................... 7

SUMMARY OF ARGUMENT .................................................... 10

ARGUMENT .................................................................... 15

   I.   Dismissal Is Not Appropriate Even if the Complaint's
       Jurisdictional Allegations Were Defective .................................. 15

   II.  The Complaint Pleads Subject Matter Jurisdiction ..................... 19

      A. The Well Pled Facts in Plaintiff's Complaint Establish
         Subject Matter Jurisdiction Under Binding Precedent ........... 19

      B. Omission of Plaintiff's True Name Did Not Strip the District
         Court of Subject Matter Jurisdiction ......................... 21

      C. Defendants' Policy Arguments for a *Per Se* Jurisdictional
         Rule Are Unpersuasive ..................................... 46

   III. The Complaint Did Not Violate Any Rule, Jurisdictional or
       Otherwise.............................................................. 53

   IV. Relation Back Is Unnecessary Because the Correct
       Limitations Period Is Twenty Years ............................. 55

   V.  Defendants' Rule Is Wasteful and Unjust ..................... 58

CONCLUSION .................................................................. 62

# TABLE OF AUTHORITIES

## Cases

*A.W. v. Tuscaloosa City Schs. Bd. of Educ.*,
744 F. App'x 668 (11th Cir. 2018) ........................................ 34

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) .............................................. 16

*ACLU v. Holder*,
673 F.3d 245 (4th Cir. 2011) ............................................... 49

*Advani Enters., Inc. v. Underwriters at Lloyds*,
140 F.3d 157 (2d Cir. 1998) ................................................ 15

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .......................................................... 21

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ............................................. 43

*Beal v. Doe*,
432 U.S. 438 (1977) .......................................................... 24

*Berkshire Fashions, Inc. v. M.V. Hakusan II*,
954 F.2d 874 (3d Cir. 1992) ............................................... 43

*Blue v. Craig*,
505 F.2d 830 (4th Cir. 1974) ............................................... 16

*C.H. v. Sch. Bd. of Okaloosa Cnty.*,
2018 WL 11267720 (N.D. Fla. Dec. 7, 2018) ........................ 46

*Capers v. Nat'l R.R. Passenger Corp.*,
673 F. App'x 591 (8th Cir. 2016) ....................... 36, 41, 42, 44

*Chandler v. Miller*,
520 U.S. 305 (1997) ..................................................... 16, 18

*Citizens for a Strong Ohio v. Marsh*,
123 F. App'x 630 (6th Cir. 2005) ...................... 36, 39, 40, 41

*City of San Diego v. Roe*,
543 U.S. 77 (2004) ....................................................... 24, 26

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  657 F.3d 936 (9th Cir. 2011) .......................................................... 16, 18

*Conn. Dep't of Pub. Safety v. Doe*,
  538 U.S. 1 (2003) ...................................................................... 24

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) ................................................................... 27

*Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*,
  405 F. Supp. 3d 127 (D.D.C. 2019) ...................................................... 30

*D.E. v. John Doe*,
  834 F.3d 723 (6th Cir. 2016) ........................................................... 41

*Doe #1 v. Deja Vu Consulting Inc.*,
  2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017) ...................................... 45

*Doe v. Aberdeen Sch. Dist.*,
  2019 WL 4452136 (D.S.D. Sept. 17, 2019) .......................................... 45

*Doe v. Blair*,
  819 F.3d 64 (4th Cir. 2016) ............................................................. 16

*Doe v. Blue Cross & Blue Shield of R.I.*,
  794 F. Supp. 72 (D.R.I. 1992) ........................................................... 45

*Doe v. Bolton*,
  410 U.S. 179 (1973) ................................................................... 24, 25

*Doe v. Cabrera*,
  307 F.R.D. 1 (D.D.C. 2014) ............................................................. 59

*Doe v. Carson*,
  2020 WL 2611189 (6th Cir. May 6, 2020) .......................................... 41

*Doe v. Cath. Relief Servs.*,
  2020 WL 4582711 (D. Md. Aug. 10, 2020) .......................................... 28

*Doe v. Colgate Univ.*,
  2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016) ....................................... 45

*Doe v. Delaware*,
  450 U.S. 382 (1981) .................................................................... 24

*Doe v. Fowler*,
  2018 WL 3428150 (W.D.N.C. July 16, 2018) ....................................... 28

*Doe v. Hallock*,
119 F.R.D. 640 (S.D. Miss. 1987) .......................................... 45

*Doe v. Hebbard*,
2021 WL 1195828 (S.D. Cal. Mar. 30, 2021) ........................ 59

*Doe v. Kidd*,
501 F.3d 348 (4th Cir. 2007) ........................................... 27, 28

*Doe v. Lynch*,
2016 WL 10844617 (D.D.C. Apr. 28, 2016) ......................... 46

*Doe v. Meron*,
929 F.3d 153 (4th Cir. 2019) ................................................ 27

*Doe v. Mitchell*,
2020 WL 6882601 (S.D. Ohio Nov. 24, 2020) ................. 41, 44

*Doe v. Neverson*,
820 F. App'x 984 (11th Cir. 2020) ........................................ 34

*Doe v. NSA*,
165 F.3d 17 (4th Cir. 1998) .................................................. 27

*Doe v. Porter*,
370 F.3d 558 (6th Cir. 2004) ............................................... 41

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) ........................................... 27, 29

*Doe v. Purdue Univ.*,
2019 WL 1757899 (N.D. Ind. Apr. 18, 2019) ....................... 45

*Doe v. Rosa*,
795 F.3d 429 (4th Cir. 2015) ............................................... 27

*Doe v. Rutgers*,
2019 WL 1967021 (D.N.J. Apr. 30, 2019) ............................ 45

*Doe v. Shalala*,
139 F.3d 888 (4th Cir. 1998) ............................................... 27

*Doe v. Standard Ins. Co.*,
2015 WL 5778566 (D. Me. Oct. 2, 2015) .............................. 59

*Doe v. Stegall*,
653 F.2d 180 (5th Cir. Unit A Aug. 1981) ........................... 33

*Doe v. TC W./Greensview Co.*,
  808 F.2d 834 (4th Cir. 1986) ..............................................................27

*Doe v. The New Ritz, Inc.*,
  2016 WL 454940 (D. Md. Feb. 5, 2016) ............................................28

*Doe v. United Airlines, Inc.*,
  2018 WL 3997258 (D. Nev. Aug. 21, 2018) ......................................46

*Doe v. Univ. of S.C.*,
  2018 WL 1215045 (D.S.C. Feb. 12, 2018) ........................................28

*Doe v. UNUM Life Ins. Co. of Am.*,
  164 F. Supp. 3d 1140 (N.D. Cal. 2016) ......................................35, 44

*Doe v. Va. Polytechnic Inst. & State Univ.*,
  2018 WL 5929647 (W.D. Va. Nov. 13, 2018) ....................................28

*Doe v. Va. Polytechnic Inst. & State Univ.*,
  2020 WL 1287960 (W.D. Va. Mar. 18, 2020) ....................................28

*Does I Through XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) ............................................................34

*In re Engle Cases*,
  767 F.3d 1082 (11th Cir. 2014) ..........................................................52

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ..............................................................29

*EW v. N.Y. Blood Ctr.*,
  213 F.R.D. 108 (E.D.N.Y. 2003) ..................................................45, 61

*Exxon Chem. Pats., Inc. v. Lubrizol Corp.*,
  64 F.3d 1553 (Fed. Cir. 1995) ............................................................29

*Fawzy v. Wauquiez Boats SNC*,
  873 F.3d 451 (4th Cir. 2017) ..............................................................43

*Feldman v. Law Enf't Assocs. Corp.*,
  752 F.3d 339 (4th Cir. 2014) ..............................................................44

*Femedeer v. Haun*,
  227 F.3d 1244 (10th Cir. 2000) ..........................................................39

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ..............................................................47

*Fort Bend County v. Davis*,
139 S. Ct. 1843 (2019) ........................................................ 21

*Freedom from Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*,
109 F. Supp. 3d 1353 (S.D. Ga. 2015) ................................. 60

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
991 F.3d 370, 2021 WL 1010596 (2d Cir. 2021) ............... 31, 32, 43, 52

*G.E.G. v. Shinseki*,
2012 WL 381589 (W.D. Mich. Feb. 6, 2012) ....................... 41

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ............................................................ 48

*Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*,
799 F. App'x 205 (4th Cir. 2020) ........................................ 16

*Graham Cnty. Soil & Water Conservation Dist. v. United States
ex rel. Wilson*,
545 U.S. 409 (2005) ............................................................ 55

*Graham v. City of Manassas Sch. Bd.*,
390 F. Supp. 3d 702 (E.D. Va. 2019) .............................. 57, 58

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
138 S. Ct. 13 (2017) ....................................................... 22, 38

*Higbee v. Billington*,
293 F. Supp. 2d 132 (D.D.C. 2003) ..................................... 30

*House v. Mitra QSR KNE LLC*,
796 F. App'x 783 (4th Cir. 2019) ............................. 17, 31, 32

*Howard v. Port Auth. of N.Y. & N.J.*,
771 F. App'x 130 (2d Cir. 2019) .......................................... 33

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ............................................................ 47

*J.W. v. District of Columbia*,
318 F.R.D. 196 (D.D.C. 2016) ............................................ 59

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005) ............................................................ 58

*Jaffe-Spindler Co. v. Genesco, Inc.*,
747 F.2d 253 (4th Cir. 1984) ......................................... 16, 18

*James v. Jacobson,*
  6 F.3d 233 (4th Cir. 1993) ............................................................ *passim*

*John Doe Agency v. John Doe Corp.,*
  493 U.S. 146 (1989) ................................................................. 24

*John Doe No. 1 v. Reed,*
  561 U.S. 186 (2010) ................................................................. 24

*June Med. Servs. L.L.C. v. Russo,*
  140 S. Ct. 2103 (2020) ............................................................ 24

*June Med. Servs., LLC v. Phillips,*
  2021 WL 292441 (M.D. La. Jan. 28, 2021) ......................................... 59

*Klugh v. United States,*
  818 F.2d 294 (4th Cir. 1987) ....................................................... 16, 18

*Kobe v. Buscemi,*
  821 F. App'x 180 (4th Cir. 2020) .................................................. 27

*Kontrick v. Ryan,*
  540 U.S. 443 (2004) ................................................................. 37

*Link v. Wabash R.R.,*
  370 U.S. 626 (1962) ................................................................. 51

*Lucas v. White,*
  63 F. Supp. 2d 1046 (N.D. Cal. 1999) ............................................. 30

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................. 19

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ................................................................. 20

*Maher v. Doe,*
  432 U.S. 526 (1977) ................................................................. 24

*McKesson v. Doe,*
  141 S. Ct. 48 (2020) ................................................................. 24

*Moore v. Greenwood Sch. Dist. No. 52,*
  195 F. App'x 140 (4th Cir. 2006) ............................................. 56, 57, 58

*N.S. v. City of Alexandria,*
  2014 WL 4274108 (W.D. La. Aug. 28, 2014) ....................................... 45

*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*,
   886 F.2d 1240 (10th Cir. 1989) ..................................................... *passim*

*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989) ....................................................... 15, 17

*Nutter v. New Rents, Inc.*,
   945 F.2d 398 (4th Cir. 1991) .............................................. 16

*Oliver v. Ralphs Grocery Co.*,
   654 F.3d 903 (9th Cir. 2011) ......................................... 16, 18

*Owen Equip. & Erection Co. v. Kroger*,
   437 U.S. 365 (1978) ........................................................ 22

*Plyler v. Doe*,
   457 U.S. 202 (1982) ........................................................ 24

*Poe v. Gerstein*,
   417 U.S. 281 (1974) ........................................................ 24

*Poelker v. Doe*,
   432 U.S. 519 (1977) ........................................................ 24

*Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*,
   931 F.3d 59 (2d Cir. 2019) ............................................... 55

*Regents of the Univ. of Cal. v. Doe*,
   519 U.S. 425 (1997) ........................................................ 24

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
   993 F.2d 800 (11th Cir. 1993) ........................................... 16

*In re Request from the U.K.*,
   718 F.3d 13 (1st Cir. 2013) ............................................... 43

*Roe v. Bernabei & Wachtel PLLC*,
   85 F. Supp. 3d 89 (D.D.C. 2015) ....................................... 44

*Roe v. City of San Diego*,
   2001 WL 35936313 (S.D. Cal. Dec. 21, 2001) ................... 26, 34

*Roe v. City of San Diego*,
   356 F.3d 1108 (9th Cir. 2004) ........................................... 26

*Roe v. New York*,
   49 F.R.D. 279 (S.D.N.Y. 1970) ......................................... 22

*Roe v. Wade*,
 410 U.S. 113 (1973) ................................................................ 22, 24, 25

*S.S. ex rel. L.S. v. Napolitano*,
 2019 WL 316747 (D. Kan. Jan. 24, 2019) ............................................ 46

*Santa Fe Indep. Sch. Dist. v. Doe*,
 530 U.S. 290 (2000) .................................................................... 24

*Sealed Plaintiff v. Sealed Defendant*,
 537 F.3d 185 (2d Cir. 2008) ............................................................ 33

*Shafer v. Army & Air Force Exch. Serv.*,
 277 F.3d 788 (5th Cir. 2002) ........................................................... 29

*Smith v. Doe*,
 538 U.S. 84 (2003) ..................................................................... 24

*Stahle v. CTS Corp.*,
 817 F.3d 96 (4th Cir. 2016) ......................................................... 16, 18

*Tenet v. Doe*,
 544 U.S. 1 (2005) ...................................................................... 24

*Torres v. Oakland Scavenger Co.*,
 487 U.S. 312 (1988) .................................................................... 48

*Trans Energy, Inc. v. EQT Prod. Co.*,
 743 F.3d 895 (4th Cir. 2014) ....................................................... 16, 18

*Travelers Indem. Co. of Am. v. Portal Healthcare Sols., L.L.C.*,
 644 F. App'x 245 (4th Cir. 2016) ...................................................... 16

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
 928 F.3d 42 (D.C. Cir. 2019) ........................................................... 35

*Union Pac. R.R. v. Brotherhood of Locomotive Eng'rs*,
 558 U.S. 67 (2009) ..................................................................... 21

*United States v. Aguilar-Ibarra*,
 740 F.3d 587 (11th Cir. 2014) .......................................................... 30

*United States v. Doe*,
 962 F.3d 139 (4th Cir. 2020) ........................................................... 27

*United States v. Muhanad Mahmoud Al-Farekh*,
 956 F.3d 99 (2d Cir. 2020) ............................................................. 29

*W.N.J. v. Yocom,*
  257 F.3d 1171 (10th Cir. 2001) ........................................................... 39

*Webster v. Doe,*
  486 U.S. 592 (1988) ............................................................................ 24

*Whalen v. Ford Motor Credit Co.,*
  684 F.2d 272 (4th Cir. 1982) .............................................................. 54

*Wilmink v. Kanawha Cnty. Bd. of Educ.,*
  214 F. App'x 294 (4th Cir. 2007) ....................................................... 57

*Wilson v. Westinghouse Elec. Corp.,*
  838 F.2d 286 (8th Cir. 1988) .............................................................. 44

*Wolsky v. Med. Coll. of Hampton Roads,*
  1 F.3d 222 (4th Cir. 1993) ............................................................ 57, 58

*Wrenn v. Wasserman,*
  914 F.2d 1493 (4th Cir. 1990) ............................................................ 17

*Yacovelli v. Moeser,*
  2004 WL 1144183 (M.D.N.C. May 20, 2004) ..................................... 28

## Constitutional Provisions

U.S. Const. art. III ................................................................... *passim*

## Statutes

Education Amendments of 1972, Pub. L. No. 92-318, tit. IX,
  86 Stat. 235 ..................................................................... *passim*

20 U.S.C. § 1681(a) ................................................................................ 1

28 U.S.C. § 1331 .................................................................................. 20

28 U.S.C. § 1367 .................................................................................. 20

28 U.S.C. § 1653 ........................................................................ *passim*

29 U.S.C. § 794 .................................................................................... 57

42 U.S.C. § 1983 .................................................................................... 5

Va. Code Ann. § 8.01-243(D) ................................................ 10, 13, 56, 58

## Rules

Fed. R. Civ. P. 5.2(a)(3) ................................................................ 48

Fed. R. Civ. P. 10 ..................................................... 22, 23, 53

Fed. R. Civ. P. 10(a) ........................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................ 53

Fed. R. Civ. P. 15 ................................................................... 42

Fed. R. Civ. P. 15(a) ................................................................ 43

Fed. R. Civ. P. 15(d) ............................................................... 44

Fed. R. Civ. P. 17 ............................................................ 31, 42

Fed. R. Civ. P. 17(a) ................................................................ 43

Fed. R. Civ. P. 23 ................................................................... 29

Fed. R. Civ. P. 41(b) ................................................................ 51

Fed. R. Civ. P. 82 ................................................................... 23

Fed. R. Civ. P. 83(b) ................................................................ 54

## Other Authorities

Charles A. Wright & Arthur R. Miller, *Federal Practice and
   Procedure* (4th ed.) ....................................................... 23, 43

# INTRODUCTION

When Plaintiff was only 12 years old, her classmates raped, assaulted, harassed, terrorized, and threatened her repeatedly over a period of many months. But Plaintiff's school did nothing in response. After she came of age, Plaintiff sued the school board, school administrators and employees, and the individual perpetrators of the assaults for various torts including violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Plaintiff used a pseudonym because litigating under her true name would have subjected her to renewed trauma.

Plaintiff did not request leave to file pseudonymously at the outset, but did so shortly thereafter when she filed an amended complaint. After considering the factors set forth in *James v. Jacobson*, 6 F.3d 233, 238-39 (4th Cir. 1993), the district court granted Plaintiff's request. At Defendants' urging, the court certified for interlocutory appeal the question "whether a plaintiff's failure to obtain leave of court to file a complaint pseudonymously is a jurisdictional defect such that a later order granting leave to proceed pseudonymously does not relate back to the original filing for purposes of the statute of limitations." JA289.

As the question's wording suggests, Defendants have no substantive objection to Plaintiff litigating pseudonymously. They know who she is. They have suffered no prejudice from her use of a pseudonym. They do not argue that the district court abused its discretion in weighing the *James* factors. And they do not argue that Plaintiff actually lacks Article III standing. Instead, their argument turns entirely on the timing of Plaintiff's request to use a pseudonym. Had Plaintiff requested leave when she filed her original complaint, Defendants would have no gripe. Instead, because Plaintiff waited a few months, Defendants argue that the case *must* be dismissed for lack of jurisdiction—and the Title IX claim cannot be refiled because it is now time-barred.

Defendants' position is wrong to the core. The timing rule they urge is not codified anywhere, let alone designated jurisdictional, and its application in this case would do nothing but allow them to escape their responsibilities under federal law. This Court should reject Defendants' attempt to use fancy legal footwork to transform a meaningless technicality into a case-dispositive weapon, and should affirm the district court's order granting Plaintiff leave to amend her complaint and proceed under a pseudonym.

## STATEMENT OF THE CASE

### I.    Facts and Procedural Posture

Plaintiff is "a former honor roll student in the Fairfax County Public Schools ('FCPS')," and "brings this civil rights case because she was raped, sexually assaulted, sexually harassed, terrorized, extorted, bullied, and threatened with death by other students at the Rachel Carson Middle School from October 2011 until February 2012," when she was "only 12." JA14. Plaintiff "made specific and repeated complaints to FCPS administrators about the horrific environment and discrimination she suffered." *Ibid.* "She begged them for help." *Ibid.* They "did nothing." *Ibid.*

Actually, FCPS administrators "deflected, minimized, and ignored [Plaintiff's] serious complaints," and even "blamed her for her mistreatment." JA15. For example, one administrator "brushed off her complaint as a 'boy-girl thing'" and admonished Plaintiff "not to 'ruin a young man's life.'" *Ibid.* When Plaintiff reported death threats, officials responded that these "were 'just something kids say.'" *Ibid.* And when she "reported being raped at a bus stop by another middle school student, the FCPS did not do anything at all." *Ibid.*

3

The school's failure "to take meaningful steps to address [Plaintiff's] sexual assault, sexual harassment, rape, and extortion" forced her "to endure one of the most hostile educational environments imaginable." JA15. She suffered "permanent physical, neurological, emotional, and psychological injuries for which she requires ongoing medical and psychiatric care." *Ibid.* Plaintiff claims that the school's "failure to respond adequately to [Plaintiff]'s complaints of sexual assault, sexual harassment, rape, and extortion by other FCPS students constitutes sex discrimination in violation of Title IX of the Education Amendments of 1972." *Ibid.*

In 2012, Plaintiff filed an administrative complaint with the United States Department of Education, Office for Civil Rights, detailing the "physical assault and bullying she endured." JA16. She supplemented those allegations later that year with further "instances of rape, anal rape, and physical assault with weapons she endured, as well as death threats directed to her and her entire family." *Ibid.*

In 2014, the school agreed with the Department of Education "to make a series of significant changes to its policies, procedures, and practices to comply with Title IX," and acknowledged Plaintiff's "right to file a private suit in federal court." JA16.

In July 2019, shortly before Plaintiff's 20th birthday, she brought suit under federal and state law against the School Board (FCSB), several school administrators and employees in their individual and official capacities, and the then-student, now-adult perpetrators of the heinous acts she suffered. *See* JA18-23. The complaint details Plaintiff's injuries, and the many reports she and her parents made. *See* JA24-JA36. It seeks relief against FCSB pursuant to Title IX and 42 U.S.C. § 1983; against school administrators and employees pursuant to Section 1983 and state law; and against the student perpetrators of the attacks pursuant to state law—providing additional details about each claim. *See* JA37-JA52.

In identifying herself as "Jane Doe," Plaintiff alleged that she is "an adult individual and citizen of the United States of America," and that her "name and address is not contained in this Complaint to protect" her "privacy and identity." JA18. "Good cause exists for Plaintiff to use a pseudonym," she alleged, "due to the harmful effect of the public disclosure of her identity and the harm inflicted by defendants to Jane Doe." *Ibid.* "All Defendants are or should be aware of Plaintiff's identity and suffer no prejudice by reason of concealing Plaintiff's identity in the Complaint and public records filed with the Court." *Ibid.*

5

FCSB moved to dismiss the complaint, arguing that "Plaintiff's failure to seek permission to proceed pseudonymously is a jurisdictional defect that requires dismissal." JA58. In response, Plaintiff filed an amended complaint, JA63-103, and a motion for leave to proceed under a pseudonym, *see* JA104-105. The motion was accompanied by supporting letters from Plaintiff's physicians and therapist confirming her critical need for anonymity. JA264; JA275; JA277; JA279.

FCSB moved to strike and dismiss the amended complaint, and the other Defendants joined FCSB's motions. FCSB maintained that the original complaint was jurisdictionally defective and that Plaintiff's request for leave to proceed pseudonymously did not relate back, such that her federal claims are time-barred. JA112, *see also* JA113; JA115. Aside from its jurisdictional argument, FCSB did "not oppose Plaintiff's proceeding under a pseudonym." JA118. The other defendants did oppose Plaintiff's use of a pseudonym.

The district court held a hearing, and the parties filed supplemental briefs on the jurisdictional question. *See* JA10-11; JA171.

6

## II.    District Court Decision and Interlocutory Appeal

The district court granted in part and denied in part the motions to dismiss, and granted Plaintiff's motion to proceed pseudonymously. JA175-176. Under the district court's decision, Plaintiff's Title IX claim remains live, as do various state law claims.

Regarding Plaintiff's use of a pseudonym, the district court concluded that the highly sensitive and personal nature of the allegations supported the use of initials instead of names for all parties under the test this Court set forth in *James*. JA218-221.

On jurisdiction, the district court held that "Plaintiff's failure to include her name in her Original Complaint does not divest this Court of subject matter jurisdiction." JA197. Instead, the court found that "for purposes of determining whether Plaintiff has met her burden of establishing subject matter jurisdiction, Plaintiff has provided the Court with sufficient information, despite her failure to adhere to the proper protocol." *Ibid.*

Specifically, the district court noted that "Plaintiff has averred that at the time of the relevant incidents, Plaintiff was a 12-year-old, seventh grade, student at a certain middle school in Fairfax County during the

2011-2012 school year." JA198. "Plaintiff's name," the court found, "would not establish her standing beyond the facts already articulated in Plaintiff's complaint." *Ibid.* And the court highlighted that none of the Defendants "attack Plaintiff's standing to bring a claim beyond that fact that [she] failed to include her name in her Original and Amended Complaints." JA198 n.21.

The court also held that the amended complaint and motion to proceed under a pseudonym related back to the date of the original filing. In the absence of clear language or controlling authority compelling jurisdictional treatment, the court declined to read Federal Rule of Civil Procedure 10(a), which requires the title of a complaint to name all parties, "as prohibiting relation back where a plaintiff asks to amend to adhere to the Rule." JA200. No "mischief" would result from its decision, the court held, because "Defendants are aware of Plaintiff's true identity" and "it appears that [] Plaintiff simply did not adhere to the rules attendant to use of a pseudonym." JA198. It would not be "in the interest of justice," the court concluded, "to dispose of the matter based on a nuanced circumstance, of which reasonable jurists have established divergent views." *Ibid.*

The district court certified its decision for interlocutory review based on the jurisdictional question, JA289, and stayed all deadlines pending this Court's resolution of the appeal, JA291. This Court granted defendants permission to appeal, and this appeal followed. JA292.[1]

Defendants filed a single appellate brief, arguing that a district court does not acquire jurisdiction over a pseudonymous plaintiff unless and until the plaintiff's true name is disclosed to the court. *See* Opening Brief (OB) 19. Defendants thus contend that the original complaint was ineffective to start this case, and dismissal is required. Defendants do not, however, dispute Plaintiff's Article III standing as a matter of fact, nor assert any substantive objection to Plaintiff proceeding pseudonymously. Thus, they do not argue that the district court misapplied *James*. And they do not argue that they suffered any prejudice from the pseudonymous filing. Indeed, FCSB admits that it has long known who Plaintiff is. OB37. Nevertheless, Defendants argue that a mandatory dismissal rule is necessary for administrability reasons. *See* OB38-39.

---

[1] Some courts use "anonymously," while others use "pseudonymously." We treat these terms as interchangeable, and for consistency use "pseudonymously" except for quoted material.

9

Defendants also argue that Plaintiff's Title IX claim borrows Virginia's two-year statute of limitations for personal injury, rather than the twenty-year statute of limitations that Virginia applies to claims involving injuries caused by childhood sexual abuse, Va. Code Ann. § 8.01-243(D). *See* OB41-42. Defendants thus demand the admittedly "harsh" result that Plaintiff's Title IX claim is time-barred. OB41.

## SUMMARY OF ARGUMENT

To win this appeal, Defendants must show that: (1) Plaintiff was required to seek leave to proceed pseudonymously and disclose her true name to the district court at the time she filed her original complaint; (2) Plaintiff's failure to do so constituted a jurisdictional defect; and (3) the district court had no power to cure the defect by granting Plaintiff's later request to proceed pseudonymously.

Defendants cannot establish even one of these key propositions. The first is dubious, the second is at odds with the overwhelming weight of authority, and the third is foreclosed by the plain text of a statute. Because Defendants' argument strays farther from the law as it goes along, we address the propositions in reverse order—starting with the easiest ground for affirmance.

I.    Even if Defendants are right that Plaintiff's jurisdictional allegations were defective because she failed to provide her true name, they lose. It is black-letter law, codified in a federal statute, that when facts supporting subject matter jurisdiction exist, but the complaint fails to plead them, courts can cure the defect. *See* 28 U.S.C. § 1653.

Here, facts supporting subject matter jurisdiction existed when this case began. Defendants have never argued that Plaintiff actually lacks Article III standing. Nor could they. She is a real, living person who suffered horrific injuries, which are traceable to Defendants' conduct and redressable in federal court. The problem Defendants identify is not one of substance, but form. According to them, Plaintiff's complaint did not identify her in the correct way. Assuming Defendants are right that this is a jurisdictional defect, Section 1653 allows courts to fix it. The judgment below can be affirmed on this basis alone.

II.    The Court can just as easily hold that there was no jurisdictional defect. The complaint pleads the facts necessary to establish Plaintiff's Article III standing, as well as the district court's statutory jurisdiction. The omission of Plaintiff's name has nothing to do with jurisdiction.

The Supreme Court has established bright line rules to distinguish jurisdictional requirements from non-jurisdictional ones in an effort to curb overuse of the label "jurisdictional." Under these rules, a matter is jurisdictional if Congress clearly says so or if a long line of Supreme Court precedents establishes that it is.

The only arguable source of a requirement for plaintiffs to provide true names is Federal Rule of Civil Procedure 10(a). But controlling precedent holds that the Federal Rules of Civil Procedure are *never* jurisdictional. Moreover, both the Supreme Court and this Court have repeatedly reached the merits in cases in which plaintiffs filed pseudonymously without contemporaneously seeking leave—never even suggesting that this posture undermined jurisdiction. The overwhelming weight of persuasive authority likewise holds that the issue in this case falls on the non-jurisdictional side of the Supreme Court's bright line rules. The few cases Defendants cite are unpublished, distinguishable, and/or wrong. Defendants' policy arguments are likewise insufficient to transform this garden-variety procedural issue into a jurisdictional defect. Indeed, the better policy, by far, is to treat the plaintiff's name as non-jurisdictional.

III.   The Court could also hold that Defendants have failed to iden-
tify a pleading defect at all. Suing under a pseudonym is a common prac-
tice. Neither precedent nor rule provides that plaintiffs in the Eastern
District of Virginia can only do so if they contemporaneously seek the
district court's leave. Defendants made that timing requirement up, but
this Court need not—and should not—accept it. The better rule, from
both a legal and practical standpoint, is that district courts should assess
pseudonymous complaints on a case-by-case basis.

IV.   Defendants argue that a two-year statute of limitations ap-
plies to Plaintiff's federal claims. But Title IX borrows the most closely
analogous state limitations period. Virginia has a longer period for torts
involving childhood sexual assault. Va. Code Ann. § 8.01-243(D). This pe-
riod governs Plaintiff's Title IX claim, rendering the relation-back issue
irrelevant.

V.   Finally, it is important to recognize the effect this case is
likely to have on real people. Defendants' rule is not only legally merit-
less, but also shockingly unjust. They demand dismissal every time a
plaintiff files pseudonymously without first seeking leave—even when,
as here, the plaintiff has Article III standing, the defendants know who

13

the plaintiff is and have no substantive objection to her proceeding pseudonymously, and the district court would grant leave to do so. In every dismissed case, Defendants' rule will be wasteful. When the dismissed claims are deemed time-barred, defendants will unjustly escape all accountability.

Defendants' rule thus transforms a meaningless technicality into a dispositive issue, setting a trap for the unwary. The people who suffer will be vulnerable plaintiffs whose identities need protection, *e.g.*, victims of sexual assault, people suffering discrimination because of mental illness, people challenging popular laws or seeking accountability from famous defendants, and others. *Pro se* litigants, who are unlikely to learn of Defendants' rule, will be especially disadvantaged. For reasons we cannot fathom, Defendants have gone out of their way to make it harder for these people to access the courthouse. That is wrong, and this Court should say so.

# ARGUMENT

## I.    Dismissal Is Not Appropriate Even if the Complaint's Jurisdictional Allegations Were Defective.

Assuming *arguendo* that Plaintiff's complaint failed adequately to plead jurisdiction under Article III of the Constitution, Defendants still lose—and lose handily—because dismissal is not required. Instead, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The Supreme Court has held that this statute grants district and appellate courts "the power to cure defective allegations of jurisdiction" in "all cases," as long as jurisdiction "actually exists" as a matter of fact. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831-32 (1989).

Section 1653 "should be construed liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998) (quotation marks omitted). Accordingly, this Court has held that Section 1653 should be used to prevent the "inequitable and unjust" dismissal of complaints when facts

supporting jurisdiction exist, but the complaint fails to plead them. *Blue v. Craig*, 505 F.2d 830, 844 (4th Cir. 1974).[2]

This Court has consistently held that Section 1653 permits parties to cure defective allegations of jurisdiction—even on appeal. *See, e.g.*, *Doe v. Blair*, 819 F.3d 64, 69 (4th Cir. 2016); *Stahle v. CTS Corp.*, 817 F.3d 96, 100 n.1 (4th Cir. 2016); *Trans Energy, Inc. v. EQT Prod. Co.*, 743 F.3d 895, 901 (4th Cir. 2014); *Klugh v. United States*, 818 F.2d 294, 299 (4th Cir. 1987); *Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253, 255 n.1 (4th Cir. 1984). Indeed, the issue is sufficiently well-settled that plaintiffs often obtain relief in unpublished opinions. *See, e.g.*, *Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, 799 F. App'x 205, 205 (4th Cir. 2020) (per curiam); *Travelers Indem. Co. of Am. v. Portal Healthcare Sols., L.L.C.*, 644 F. App'x 245, 247 (4th Cir. 2016) (per curiam); *Nutter v. New Rents,*

---

[2]  Section 1653 is not limited to allegations regarding statutory jurisdiction; it applies to Article III, too. *See Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011); *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 n.6 (11th Cir. 1993).

*Inc.*, 945 F.2d 398, at *2 (4th Cir. 1991) (table); *Wrenn v. Wasserman*, 914 F.2d 1493, at *1 (4th Cir. 1990) (per curiam) (table).

At a minimum, these cases refute Defendants' argument that dismissal is mandatory whenever a complaint fails to establish jurisdiction. Were it so, Section 1653 would be a nullity, because the statute *only* applies when the complaint's jurisdictional allegations are defective.

Assuming (but certainly not conceding) that Plaintiff's complaint did not adequately plead jurisdiction, Section 1653 authorizes the remedy afforded here, *i.e.*, permitting Plaintiff retroactively to proceed pseudonymously. The only predicate to applying Section 1653 is that facts supporting jurisdiction must "actually exist[]" when the case commences. *Newman-Green*, 490 U.S. at 831. That condition was not met in *House v. Mitra QSR KNE LLC*, 796 F. App'x 783 (4th Cir. 2019), because the plaintiff there was dead, and therefore lacked standing as a matter of fact. But the condition is plainly met here. As the district court found, Plaintiff meets all the requirements for Article III standing: She is a live person, who suffered injury in fact, traceable to Defendants' conduct, and redressable in court. *See supra* pp.3-4. Nobody has ever argued otherwise,

nor could they. Section 1653 therefore applies to any defect in Plaintiff's allegations.

Once the jurisdiction-in-fact predicate is met, courts have permitted a wide range of cures to pleading defects. Although the statute speaks of amending complaints, no formal amendment is necessary. Instead, courts have found that they have jurisdiction based on record evidence, *e.g.*, *Trans Energy, Inc.*, 743 F.3d at 901; *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011), or even a plaintiff's statements in an appellate brief or at oral argument, *e.g.*, *Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997); *Stahle*, 817 F.3d at 100 n.1; *Klugh*, 818 F.2d at 299; *Jaffe-Spindler Co.*, 747 F.2d at 255 n.1. Under these precedents, the district court had the power to grant permission to proceed pseudonymously at any time. It did so, and Defendants do not dispute that the decision was a proper application of this Court's decision in *James v. Jacobson*, 6 F.3d 233, 238-39 (4th Cir. 1993). The district court therefore acted within the scope of its powers.

Defendants never even mention Section 1653. That is a glaring omission because this statute compels affirmance even if Defendants are

right that the complaint's jurisdictional allegations are defective. The Court can affirm on this basis alone.

## II.    The Complaint Pleads Subject Matter Jurisdiction.

Defendants are also wrong to argue that the complaint failed to plead subject matter jurisdiction merely because it omitted Plaintiff's true name. Actually, the complaint alleges all the facts necessary to establish federal courts' power to adjudicate this case.

### A. The Well Pled Facts in Plaintiff's Complaint Establish Subject Matter Jurisdiction Under Binding Precedent.

The two components of subject matter jurisdiction are Article III standing and statutory jurisdiction. As set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), to show that she has Article III standing at the pleading stage, Plaintiff must allege sufficient facts, taken as true, to establish that she has suffered a legal injury, that the injury is fairly traceable to the challenged actions of the Defendants, and that it is likely that the injury will be redressed by a favorable judicial decision.

Plaintiff identified herself as an adult citizen and "former honor roll student" in the FCPS school system, bringing "this civil rights case" because its administrators did nothing as she "made specific and repeated

19

complaints" to them and "begged them for help" when fellow students raped, harassed, and terrorized her. JA14-15; *see supra* pp.3-4. The complaint expounds on her claims. *See* JA14-36. It has two pages enumerating her injuries. JA36-37. It goes into detail regarding the Title IX violations. JA39-42. And it seeks damages and other relief under federal law. JA42; JA52. It also asserts "arising-under" jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. JA17.

That is enough to plead jurisdiction. Even if Defendants were correct that—for some reason—Plaintiff's name is an essential part of establishing that she is who she says she is, the district court was required to "presume[]" that her general allegations "embrace those specific facts"—like her name—"that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Thus, the district court correctly held that "Plaintiff's name alone would not establish her standing beyond the facts already articulated in Plaintiff's complaint." JA198.

## B. Omission of Plaintiff's True Name Did Not Strip the District Court of Subject Matter Jurisdiction.

### 1. Supreme Court and Fourth Circuit Precedent Supports Plaintiff.

Defendants argue that Plaintiff's failure to reveal her true name renders her standing-in-fact irrelevant and strips the district court of jurisdiction. In making this argument, Defendants have a tough hill to climb. The Supreme Court has "undertaken to ward off profligate use of the term" "jurisdictional." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848 (2019) (quotation marks and brackets omitted). To simplify the inquiry, the Court has identified two circumstances in which a requirement limits the courts' subject matter jurisdiction. First, Congress may "clearly state[]" that a requirement is jurisdictional; absent that, "courts should treat the restriction as nonjurisdictional in character." *Id.* at 1850 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)). Second, a requirement may be deemed jurisdictional if "'a long line of Supreme Court decisions left undisturbed by Congress' attached a jurisdictional label to the prescription." *Id.* at 1849 (quoting *Union Pac. R.R. v. Brotherhood of Locomotive Eng'rs*, 558 U.S. 67, 82 (2009)) (brackets omitted). Defendants have not shown that either of these tests is met. Indeed, they don't even

21

try. Their brief never recites or even cites the Supreme Court's test, let alone frames the argument in terms the Supreme Court has accepted.

Instead, Defendants start with a history lesson, arguing that at common law (*e.g.*, in Indiana state court in 1876) parties were required to name themselves, and that Federal Rules of Civil Procedure embraced that principle by requiring that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a); OB19-20. Defendants also cite a case, *Roe v. New York*, 49 F.R.D. 279, 282 (S.D.N.Y. 1970), which held that failure to name the plaintiffs violated Rule 10(a) and dismissed the complaint for failure to properly commence an action. OB22. Defendants argue further that pseudonymous filings were uncommon at the time, but that their popularity exploded after *Roe v. Wade*, 410 U.S. 113 (1973). OB21-23.

This discussion only hurts Defendants. Rule 10 plainly does not limit subject matter jurisdiction, because "[i]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978)). That is clear for two reasons. First, the Rules are not enacted by

Congress, but instead promulgated by the courts themselves. Second, the Rules are not explicitly jurisdictional. On the contrary, they expressly disclaim any jurisdictional effect, stating that they "do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82.

Indeed, treating Rule 10 as jurisdictional would be bizarre. As a leading treatise explains, "a defective caption or even its complete absence is merely a formal error and never should be viewed as a fatal defect." Charles A. Wright & Arthur R. Miller, 5A *Federal Practice and Procedure* § 1321, Westlaw (4th ed., database updated Oct. 2020). Moreover, in addition to requiring the title of a pleading to name all parties, Rule 10 requires complaints to use numbered paragraphs and separate counts for different claims. Nobody seriously thinks that a district court lacks the power to adjudicate a case if the complaint fails to use numbered paragraphs, but there is no principled way to say that some parts of Rule 10 are jurisdictional and others are not. Treating Rule 10 as a jurisdictional requirement also makes no sense vis-à-vis complaints that do not comply with Rule 10 because they were filed in state court and then removed to federal court.

Defendants also do not identify any long line of Supreme Court cases treating failure to seek leave to proceed under a pseudonym as a jurisdictional defect. On the contrary, they acknowledge that since the Court decided *Roe v. Wade* (almost 50 years ago), it has been common practice for plaintiffs to proceed pseudonymously. In fact, over these last several decades, the Supreme Court has heard at least 20 such cases.[3] Not once did the Court suggest, let alone hold, that proceeding under a pseudonym is a jurisdictional issue, despite federal courts' constitutional duty to assure themselves of Article III jurisdiction.

*Roe v. Wade* is instructive. There, the Supreme Court spent Part IV of the analysis discussing standing and justiciability without once suggesting that the use of a pseudonym was cause for concern. *See* 410 U.S.

---

[3] *McKesson v. Doe*, 141 S. Ct. 48 (2020) (per curiam); *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020); *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010); *Tenet v. Doe*, 544 U.S. 1 (2005); *City of San Diego v. Roe*, 543 U.S. 77 (2004) (per curiam); *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003); *Smith v. Doe*, 538 U.S. 84 (2003); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989); *Webster v. Doe*, 486 U.S. 592 (1988); *Plyler v. Doe*, 457 U.S. 202 (1982); *Doe v. Delaware*, 450 U.S. 382 (1981) (per curiam); *Maher v. Doe*, 432 U.S. 526 (1977) (per curiam); *Poelker v. Doe*, 432 U.S. 519 (1977) (per curiam); *Beal v. Doe*, 432 U.S. 438 (1977); *Poe v. Gerstein*, 417 U.S. 281 (1974) (per curiam); *Doe v. Bolton*, 410 U.S. 179 (1973); *Roe v. Wade*, *supra*.

at 123-29. Rather than seek leave to proceed pseudonymously, the plaintiff in *Roe* filed her complaint in March 1970, and an "alias affidavit" two months later asserting that at the inception of her suit, she was pregnant, wanted an abortion in Texas, and could not get one. *See id.* at 124. This affidavit, filed on May 21, 1970 in support of Roe's motion for summary judgment, does not appear to have identified her by her true name, either.[4] But "no suggestion [wa]s made that Roe [wa]s a fictitious person," "[d]espite the use of the pseudonym." *Ibid.* And that was enough for the Court to proceed: "Viewing Roe's case as of the time of its filing," the Court held, "there can be little dispute that it then presented a case or controversy and that . . . she, as a pregnant single woman thwarted by the Texas criminal abortion laws, had standing to challenge those statutes." *Ibid.*; *see also Doe v. Bolton*, 410 U.S. 179, 187 (1973) (relying on *Roe v. Wade* for proposition that, "despite her pseudonym," the Court could accept the Doe plaintiff's jurisdictional allegations). *Roe* thus stands clearly for two propositions. First, that the plaintiff's use of a

---

[4] The affidavit is available online through DocsTeach, a service run by the National Archives, at https://www.docsteach.org/documents/document/affidavit-jane-roe. The website reports that the affidavit was sourced from the Supreme Court's records.

pseudonym does not undermine a district court's subject matter jurisdiction; and second, that the plaintiff need not provide her true name at the time the complaint is filed (if ever).

More recently, the Supreme Court reached the merits in a case that is procedurally indistinguishable from this one. *See City of San Diego v. Roe*, 543 U.S. 77 (2004) (per curiam). The plaintiff "filed his initial complaint under the pseudonym John Roe, without first seeking permission from the court to do so," and later "filed a separate motion . . . requesting permission to proceed under a pseudonym." *Roe v. City of San Diego*, 2001 WL 35936313, at *4 (S.D. Cal. Dec. 21, 2001), *rev'd and remanded*, 356 F.3d 1108 (9th Cir. 2004), *rev'd*, 543 U.S. 77. The defendants asserted "that Plaintiff's complaint must be dismissed because Plaintiff cannot proceed under a pseudonym in this matter until after a court has given him permission to do so," relying on Rule 10(a). *Ibid.* The district court rejected the argument, finding it "to be without merit and disingenuous." *Ibid*.

Later, both the Ninth Circuit and the Supreme Court adjudicated the case on the merits. No court took issue with the fact that the plaintiff was "proceeding under a pseudonym," *Roe v. City of San Diego*, 356 F.3d

26

at 1109 n.1, even though the motion to proceed pseudonymously was filed long after the complaint. In light of federal courts' affirmative duty to assure themselves of jurisdiction at all stages of a case, this is not a situation in which the issue "merely lurk[ed] in the record." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation marks omitted). The Supreme Court's decision accordingly confirms that the federal courts' jurisdiction does not turn on whether plaintiffs seek leave to proceed under a pseudonym at the time they file their complaints.

This Court's cases also implicitly reject Defendants' argument. Since the mid-'80s, this Court has reached the merits in cases where the plaintiff proceeded pseudonymously at least 10 times.[5] It has never found that filing a case under a pseudonym without first receiving permission to do so is jurisdictional. To the contrary, for example, a panel of this Court in *Doe v. Kidd* vacated and remanded in relevant part a "district

---

[5]   *United States v. Doe*, 962 F.3d 139 (4th Cir. 2020); *Kobe v. Buscemi*, 821 F. App'x 180 (4th Cir. 2020) (per curiam), *petition for cert. pending*, No. 20-948 (filed Jan. 7, 2021); *Doe v. Meron*, 929 F.3d 153 (4th Cir. 2019); *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015); *Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014); *Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007); *Doe v. NSA*, 165 F.3d 17 (4th Cir. 1998) (per curiam); *Doe v. Shalala*, 139 F.3d 888 (4th Cir. 1998) (per curiam); *James*, 6 F.3d at 238-39; *Doe v. TC W./Greensview Co.*, 808 F.2d 834 (4th Cir. 1986) (per curiam).

court's decision to dismiss as moot [the plaintiff's] § 1983 claim that Appellees violated the Medicaid Act," 501 F.3d 348, 353-54, 360 (4th Cir. 2007), even though the district and appellate court dockets reveal that the adult plaintiff in the case never sought permission to proceed pseudonymously. District courts in this Circuit have also allowed plaintiffs to proceed pseudonymously, even though they sought leave belatedly or not at all.[6] Under Defendants' rule, many of these decisions would be subject to collateral attack.

---

[6]  *See, e.g.*, *Doe v. Cath. Relief Servs.*, 2020 WL 4582711, at *2 (D. Md. Aug. 10, 2020) (granting pseudonym motion filed three days after the complaint); *Doe v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5929647, at *1 (W.D. Va. Nov. 13, 2018) (granting motion filed in response to defendants' motion to dismiss for failure to comply with Rule 10(a)); *Doe v. Va. Polytechnic Inst. & State Univ.*, 2020 WL 1287960, at *2 (W.D. Va. Mar. 18, 2020) (same); *Doe v. Fowler*, 2018 WL 3428150, at *1 (W.D.N.C. July 16, 2018) (granting motion filed a "few months" after complaint); *Doe v. Univ. of S.C.*, 2018 WL 1215045, at *1 n.1 (D.S.C. Feb. 12, 2018) (*sua sponte* granting *pro se* plaintiff leave to proceed under a pseudonym), *report and recommendation adopted*, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. The New Ritz, Inc.*, 2016 WL 454940, at *1 (D. Md. Feb. 5, 2016) (noting that defendant's motion to dismiss for failure to name the plaintiff had previously been denied even though the plaintiff did not seek leave at the outset); *Yacovelli v. Moeser*, 2004 WL 1144183, at *6-9 (M.D.N.C. May 20, 2004) (granting motions filed in response to defendants' motion to dismiss for failure to comply with Rule 10(a)).

Defendants argue that this Court's precedents favor the contrary result. OB34-37. They argue first that in *Doe v. Public Citizen*, the Court held that the district court has an "independent obligation" to ensure that it is appropriate for parties seeking to proceed under a pseudonym to do so. OB34 (citing 749 F.3d 246, 274 (4th Cir. 2014)). According to Defendants, the phrase "independent obligation" connotes jurisdictional treatment. OB34-35. That is demonstrably wrong. Here are just a few obviously non-jurisdictional requirements that courts have an "independent obligation" to perform: promptly determine whether a class action meets the prerequisites for class treatment set forth in Fed. R. Civ. P. 23[7]; determine whether evidence in a criminal trial is admissible[8]; construe the meaning of patent claims[9]; review a Special Master's findings for clear error[10]; determine whether the Government has met its obligations under

---

[7]  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

[8]  *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 115 n.64 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1108 (2021).

[9]  *Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995).

[10]  *Shafer v. Army & Air Force Exch. Serv.*, 277 F.3d 788, 790 (5th Cir. 2002).

29

the Freedom of Information Act[11]; decide whether an administrative agency's findings are trustworthy for purposes of applying the hearsay rule[12]; calculate the sentencing range in a criminal case[13]; and determine whether a requested attorney's fee award is reasonable.[14] These "independent obligations" come from non-jurisdictional sources, like the Federal Rules of Civil Procedure. So there is no inconsistency between this Court saying that courts have an independent obligation to ensure that litigants attempting to use pseudonyms are entitled to do so, and also saying that this inquiry has no bearing on subject matter jurisdiction.

Defendants also argue that in *James*, 6 F.3d at 235, the plaintiffs sought leave to use a pseudonym before filing their complaint, demonstrating best practices. OB35-36. But there is a wide gulf between best practices and constitutional minima—and as Defendants concede, *James* never said that this issue is jurisdictional. Instead, the Court rooted the

---

[11] *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, 405 F. Supp. 3d 127, 142 (D.D.C. 2019).

[12] *Higbee v. Billington*, 293 F. Supp. 2d 132, 134 (D.D.C. 2003).

[13] *United States v. Aguilar-Ibarra*, 740 F.3d 587, 591 (11th Cir. 2014) (per curiam).

[14] *Lucas v. White*, 63 F. Supp. 2d 1046, 1060 (N.D. Cal. 1999).

anonymity inquiry in a balance between "the general presumption of openness of judicial proceedings" versus "privacy or confidentiality concerns" of the parties, *i.e.*, non-jurisdictional equities. 6 F.3d at 238. This Court also described anonymity as "one of many [issues] involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion"—a description that is inconsistent with holding that anonymity considerations limit a district court's jurisdiction to decide a case. *Ibid*.

Defendants also point to this Court's unpublished decision in *House*, which held that when a complaint was filed in the name of a dead person, the action was a nullity and could not be rescued through a substitution under Federal Rule of Civil Procedure 17. OB36-37 (citing *House*, 796 F. App'x at 787-89). This case is obviously different because Plaintiff is alive and meets all the Article III requirements.

Moreover, *House* has been persuasively criticized in a recent decision from the Second Circuit. *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 2021 WL 1010596 (2d Cir. 2021). There, the court held that when the named corporate plaintiff did not exist at the commencement of the action (and therefore lacked standing), the real

31

party in interest could be substituted in, consistent with Article III. *See id.* at \*12. The court reasoned that "failing to initially name the correct party is not itself a constitutional problem." *Ibid.* Instead, the court held that, regardless of how the plaintiff is identified in the caption, the action may continue as long as "there is a real party in interest ready and willing to join the action." *Id.* at \*14. The Second Circuit specifically rejected *House*'s determination that no "action" exists when a court later finds that the plaintiff lacks standing, reasoning that "what the Federal Rules call an 'action' is something that exists independent of subject-matter jurisdiction." *Ibid.*

This Court need not disavow *House* in this case because Plaintiff is alive—a compelling distinction. But, at a minimum, the persuasive analysis in *Fund Liquidation Holdings* cautions strongly against extending the unpublished decision in *House* to this case.

### 2. Precedent from Other Circuits Supports Plaintiff.

Decisions in five other circuits explicitly or implicitly reject Defendants' argument that Plaintiff's failure to reveal her true name is a jurisdictional defect.

In *Doe v. Stegall*, 653 F.2d 180, 182-83 (5th Cir. Unit A Aug. 1981), the plaintiffs sued under fictitious names but did not disclose their identities to the court until a month later. The district court "determined that it had no jurisdiction over the lawsuit," *id.* at 183, and the Fifth Circuit reversed, holding that the plaintiffs "should have been permitted to proceed under fictitious names," *id.* at 186. That holding would have been impossible under Defendants' rule.

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 187 (2d Cir. 2008), the plaintiff filed under a pseudonym without seeking leave to do so, and the district court ordered the plaintiff to file an amended complaint identifying herself, among other things. When the plaintiff failed to use her "real name and not a pseudonym," the district court dismissed the complaint without prejudice. *Id.* at 188 (emphasis omitted). The Second Circuit vacated the dismissal and remanded the case for further proceedings. *Id.* at 193; *see also Howard v. Port Auth. of N.Y. & N.J.*, 771 F. App'x 130, 130 n.1 (2d Cir. 2019) (noting that the plaintiff had filed under a pseudonym without leave and thus directing the clerk of court to amend the caption with the plaintiff's real name). If Defendants were right, the dismissal would have been affirmed.

In *Doe v. Neverson*, 820 F. App'x 984, 985 (11th Cir. 2020) (per curiam), the plaintiff sued pseudonymously without requesting leave. The district court ordered the plaintiff "to show cause as to why the complaint should not be dismissed because it was impermissibly filed under a fictitious name," and the plaintiff then "moved for leave to proceed pseudonymously." *Ibid.* The district court denied the motion and dismissed the complaint without prejudice. *Id.* at 986. The Eleventh Circuit reversed and remanded, holding that the court had abused its discretion in denying the motion. *See id.* at 987-88. It was not as though the Eleventh Circuit was unaware of the possible jurisdictional issue—it had previously faced the specific argument Defendants press here. *See A.W. v. Tuscaloosa City Schs. Bd. of Educ.*, 744 F. App'x 668, 671 (11th Cir. 2018) (per curiam) (noting that the court had "never suggested that plaintiff anonymity affects the court's jurisdiction over the case or the parties").

The Ninth Circuit has "implicitly ratified the notion that an application to proceed under a pseudonym is properly filed just after the complaint is filed on behalf of plaintiffs proceeding under a pseudonym." *Roe v. City of San Diego*, 2001 WL 35936313, at *4 (citing *Does I Through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000),

34

which permitted plaintiffs to proceed pseudonymously even though they only moved for leave to do so in response to defendants' motion to dismiss). Accordingly, "district courts within the Ninth Circuit have concluded that dismissal for lack of jurisdiction is not warranted when the plaintiff files a motion to proceed under a pseudonym, even if that motion is filed after the defendant filed a motion to dismiss." *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016) (collecting cases; quotation marks omitted).

Finally, the D.C. Circuit held that plaintiffs, including pseudonymous plaintiffs who never sought leave to proceed pseudonymously, had standing to sue. *See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 75 (D.C. Cir. 2019) (per curiam). The pseudonymous plaintiffs were discussed explicitly in a concurring opinion, which noted that the D.C. Circuit had not adopted the rule that failure to request permission to proceed anonymously was jurisdictional, and also noted that the plaintiffs had never asked the district court for permission to use pseudonyms. *See id.* at 81, 84 (Williams, J., concurring). The majority never even suggested that such use of a pseudonym could create a standing problem.

In support of the contrary proposition, Defendants argue that three circuits have determined that district courts lack jurisdiction over pseudonymous complaints filed without leave of court. OB23-28 (relying on *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989) (per curiam); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630 (6th Cir. 2005); and *Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591 (8th Cir. 2016) (per curiam)). These cases, only one of which is published, do not come close to getting Defendants home.

In *Gibbs*, which is Defendants' sole published decision, the plaintiffs included two named associations and multiple unnamed association members, and their complaint alleged that certain federal agencies and employees had violated the Constitution and engaged in racketeering. The court of appeals found that the complaint was "vague, disorganized, and rambling," and provided "little identification, if any, of the persons targeted by [the alleged misconduct]." 886 F.2d at 1244. The use of pseudonymous plaintiffs was problematic because the plaintiffs sought "to remain anonymous not only to the general public but to the defendants as well"—a posture that "would deny the defendants any ability to defend

against the claims against them, as it is virtually impossible to determine the precise activities of which the plaintiffs complain." *Id*. at 1245 n.2.

Against this backdrop, the Tenth Circuit cited Rule 10(a)'s requirement that complaints must name all the parties, noting that "the unnamed plaintiffs have made no request to the district court for permission to proceed anonymously, nor have they otherwise disclosed their identities to the court or to the defendants." *Gibbs*, 886 F.2d at 1245. The court then held that "[a]bsent permission by the district court to proceed anonymously . . . the federal courts lack jurisdiction over the unnamed parties." *Ibid*. It dismissed the individual members' claims, and considered the merits only with respect to the association.

*Gibbs* is very weak precedent. First, it was decided in 1989, long before the Supreme Court began to strictly delineate what counts as "jurisdictional." *See Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (describing decisions that "have been less than meticulous" in articulating what is "jurisdictional"). It is not clear whether *Gibbs* used the word "jurisdiction" to mean "subject matter jurisdiction," or instead used it in the more colloquial, imprecise way that courts often used it in the 1980s. But whatever the court meant, *Gibbs* did not apply the Supreme Court's bright

line test for determining whether a rule affects subject matter jurisdiction, and the sole legal requirement it cited (Rule 10(a)) flunks that test because the Rules "do not create or withdraw federal jurisdiction." *Hamer*, 138 S. Ct. at 17 (quotation marks omitted). Accordingly, *Gibbs* may not have been a true jurisdictional holding at all—and if it was, it is no longer good law.

Second, although *Gibbs* said that the district court's permission was a prerequisite to proceeding pseudonymously, it never said permission had to be sought at the time the complaint was filed. The individual plaintiffs in *Gibbs* never sought leave to proceed pseudonymously (not even belatedly), and it is clear from the facts that no such leave would have been granted. Here, by contrast, Plaintiff obtained leave from the district court. This provides a clean way to reconcile the district court's holding in this case with Tenth Circuit precedent. Indeed, in a published decision after *Gibbs*, the Tenth Circuit ordered a plaintiff—who had filed under a pseudonym without seeking leave—to "file a sworn affidavit in this court under seal revealing his true identity," and ordered that the caption would bear the plaintiff's name prospectively "unless this court has first granted either a motion to seal the caption or to authorize the

matter to proceed by way of a pseudonym." *Femedeer v. Haun*, 227 F.3d 1244, 1246-47 (10th Cir. 2000). Thus, the Tenth Circuit itself has recognized that courts have jurisdiction to grant leave to proceed pseudonymously even if the motion is made after the complaint is filed.[15]

*Gibbs* is distinguishable in other ways, too. In *Gibbs*, the complaint did not plead the basis for the individual plaintiffs' standing. Here, the allegations are clear. And the defendants in *Gibbs* did not know who the individual plaintiffs were, nor have any ability to defend against claims by those individuals. Here, Defendants have long known who Plaintiff is, as well as the basis for her claims against them.

In the unpublished decision *Citizens for a Strong Ohio v. Marsh*, the plaintiffs were two political organizations and various anonymous individuals. 123 F. App'x at 631. The court held that the claims were mostly precluded under *Younger* abstention because parallel state proceedings were pending against many of the plaintiffs. *See id.* at 633-34. One

---

[15] Defendants also cite *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001). *See* OB25. But there, the plaintiffs did not move to proceed pseudonymously in the district court until the court lost jurisdiction because the case was on appeal. *See* 257 F.3d at 1173. If anything, the case implies that if the plaintiffs had sought leave prior to the appeal commencing, that would have been fine.

individual plaintiff argued that *Younger* did not apply to him because he was not a party to the state proceedings. *See id.* at 636. The Sixth Circuit was concerned that if it allowed this plaintiff's claim, it would "create an incentive to find 'straw men' in future actions that seek to interfere with pending state court proceedings," which would be "an easy way to circumvent *Younger.*" *Ibid.* The court then held that the plaintiff had "not alleged sufficient facts to be permitted to proceed with his claim." *Ibid.* Again, the court cited Rule 10(a) for the proposition that complaints must identify the parties unless an exception was granted. *Ibid.* But the individual plaintiff had not sought leave to proceed pseudonymously, and this failure to seek permission was "fatal" because the district court lacked jurisdiction over him. *Id.* at 637. The sole case cited for that proposition was *Gibbs.*

In addition to being unpublished, *Marsh* is weak for all the reasons *Gibbs* is weak. The case does not cite or apply the Supreme Court's test for determining when requirements are jurisdictional. Moreover, the plaintiff in *Marsh* was trying to sidestep *Younger*, and had never sought leave to proceed pseudonymously (two conditions that do not apply here).

Like *Gibbs*, *Marsh* also does not say that a plaintiff must seek leave to proceed pseudonymously at the time she files the complaint. Multiple Sixth Circuit cases (including precedential ones) demonstrate otherwise. *See, e.g.*, *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004) (affirming district court's grant of plaintiffs' motion to proceed pseudonymously, which was filed almost five months after the complaint); *Doe v. Carson*, 2020 WL 2611189, at *1-3 (6th Cir. May 6, 2020) (addressing merits of plaintiff's request to proceed under a pseudonym, even though she filed the motion for leave to do so long after initiating her case), *cert. denied*, 2021 WL 666596 (U.S. Feb. 22, 2021); *D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016) (same). District courts in the Sixth Circuit have held that *Marsh* does not impose a "jurisdictional bar" unless the plaintiff has "not filed a motion seeking to proceed anonymously" at *any* point. *Doe v. Mitchell*, 2020 WL 6882601, at *4 (S.D. Ohio Nov. 24, 2020); *see also* *G.E.G. v. Shinseki*, 2012 WL 381589, at *4 (W.D. Mich. Feb. 6, 2012) (similarly distinguishing *Marsh* and *Gibbs*).

Defendants also rely on the Eighth Circuit's unpublished decision in *Capers*. There, the plaintiff sued pseudonymously, and then filed an amended complaint under her real name after the statute of limitations

41

had run. 673 F. App'x at 593. The Eighth Circuit held that the amended complaint did not relate back because the original complaint had not commenced a valid action as to the unnamed plaintiff (because it violated Rule 10(a)). *Id.* at 594-95. In support, the court cited *Gibbs. Id.* at 595-96. There are a few problems with *Capers.*

First, contrary to Defendants' description, the court did not find a "jurisdictional defect." OB26. On the contrary, the court stated expressly that the plaintiff's "failure to seek leave to proceed anonymously . . . *did not affect subject matter jurisdiction.*" *Capers*, 673 F. App'x at 593 n.3 (emphasis added). Instead, the court understood "jurisdiction" to be a shorthand for whether the plaintiff named in the amended complaint was properly before the court for limitations purposes. *See ibid.* Thus, when the Eighth Circuit cited *Gibbs*, it clearly understood *Gibbs* not to be about subject matter jurisdiction, but instead about "jurisdiction" in a more colloquial sense.

Putting aside whether it is a jurisdictional holding or not, *Capers* was wrong to hold that because the original complaint violated Rule 10(a), there was no "valid action," such that Federal Rules of Civil Procedure 15 and 17 did not permit amendment. This Court has never held

42

that a defective caption renders an entire civil action a nullity, and other authorities explicitly reject the proposition. *See Fund Liquidation Holdings LLC*, 2021 WL 1010596, at *14-15 (permitting amendment under Rule 17(a) when complaint named wrong plaintiff); *In re Request from the U.K.*, 718 F.3d 13, 19 (1st Cir. 2013) ("[A] defective caption (or even its absence) presents an issue of form that is not deemed fatal to an otherwise valid action."); *Federal Practice and Procedure*, *supra*, § 1321.

Courts—including this one—also hold that amendments are permitted even when the district court lacks subject matter jurisdiction over the original complaint (a far more serious problem than a defective caption). *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (recognizing validity of amendment under Rule 15(a) even though original complaint failed to plead jurisdiction); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017) (contemplating that when the district court dismisses a case for lack of jurisdiction, it may give the plaintiff leave to amend to cure the defect); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 887 (3d Cir. 1992) (permitting amendment to assert additional bases for jurisdiction not asserted in original complaint). Indeed, that is also the clear import of Section 1653, discussed *supra*.

43

Finally, *Capers* is at odds with published Eighth Circuit cases applying Rule 15(d), which hold that "[e]ven when the District Court lacks jurisdiction over a claim at the time of its original filing, a supplemental complaint may cure the defect." *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 290 (8th Cir. 1988). This Court agreed in *Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339, 347 (4th Cir. 2014). These holdings cannot be reconciled with the notion that an original complaint is a nullity that fails to commence a valid action.

In sum, none of the cases Defendants cite clearly supports their proposed rule. And those are the best cases Defendants could find. The cases going the other way are much stronger.

Defendants' proposed rule has also been rejected by the vast majority of district courts across the country. Some have done so explicitly.[16]

---

[16] *See, e.g.*, *Mitchell*, 2020 WL 6882601, at *4 (holding that jurisdiction exists where the plaintiff seeks leave to proceed pseudonymously, even if the request is filed after complaint); *UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d at 1144 (collecting cases for the proposition that "dismissal for lack of jurisdiction is not warranted when the plaintiff files a motion to proceed under a pseudonym, even if that motion is filed after the defendant filed a motion to dismiss") (quotation marks omitted); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 95, 97 n.6 (D.D.C. 2015) (denying the "belated[]" motion to proceed under a pseudonym but

But in every circuit—including the three that Defendants argue have adopted a jurisdictional rule—courts have considered cases even when the plaintiff did not seek leave to file under a pseudonym at the time the complaint was filed.[17] The results in all of these cases—and many, many others—will suddenly be in doubt if this Court adopts Defendants' rule.

_____

rejecting the jurisdictional argument, because "Defendants and the Court know who the Plaintiff is and can adequately address the existence of subject matter jurisdiction which, other than the issue of the Plaintiff's name, is not in doubt"); *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 109-10 (E.D.N.Y. 2003) (holding that defendant's argument "that the Court lacks jurisdiction over the matter . . . is obviously wrong"); *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D. Miss. 1987) (jurisdictional argument is "not well taken").

[17] To conserve space, only one case from each sister circuit is provided; there are many more. First Circuit: *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 72 (D.R.I. 1992) (granting pseudonym motion filed in response to defendant's motion to strike). Second Circuit: *Doe v. Colgate Univ.*, 2016 WL 1448829, at *1 (N.D.N.Y. Apr. 12, 2016) (granting pseudonym motion filed after magistrate judge instructed plaintiff to file an amended complaint). Third Circuit: *Doe v. Rutgers*, 2019 WL 1967021, at *1 (D.N.J. Apr. 30, 2019) (allowing plaintiff who never sought leave to use pseudonym to do so). Fifth Circuit: *N.S. v. City of Alexandria*, 2014 WL 4274108, at *1 n.1 (W.D. La. Aug. 28, 2014) (permitting amendment to name plaintiff in response to defense motion to dismiss for lack of jurisdiction). Sixth Circuit: *Doe #1 v. Deja Vu Consulting Inc.*, 2017 WL 3837730, at *5 (M.D. Tenn. Sept. 1, 2017) (granting pseudonym motion filed six months after the complaint). Seventh Circuit: *Doe v. Purdue Univ.*, 2019 WL 1757899, at *3 (N.D. Ind. Apr. 18, 2019) (granting pseudonym motion filed five months after the complaint). Eighth Circuit: *Doe v. Aberdeen Sch. Dist.*, 2019 WL 4452136, at *2 (D.S.D. Sept. 17, 2019)

### C. Defendants' Policy Arguments for a *Per Se* Jurisdictional Rule Are Unpersuasive.

Defendants argue that the only way for the district court to perform its Article III gatekeeping function is for this Court to hold that the plaintiff's failure to disclose her identity to the district court is a jurisdictional defect. OB28. They offer three justifications for this position. First, without knowing the plaintiff's identity, the district court cannot acquire personal jurisdiction over her, or determine whether her complaint is barred by preclusion doctrines. OB30-31. Second, the court cannot determine whether the plaintiff has Article III standing without knowing who she is. OB32. Third, the court cannot determine whether statutory jurisdiction exists. OB33. These arguments make no sense because they

---

(granting pseudonym motion filed in response to defendants' motion to compel their identities or dismiss the case). Ninth Circuit: *Doe v. United Airlines, Inc.*, 2018 WL 3997258, at *1 (D. Nev. Aug. 21, 2018) (granting pseudonym motion filed months after the complaint). Tenth Circuit: *S.S. ex rel. L.S. v. Napolitano*, 2019 WL 316747, at *3 (D. Kan. Jan. 24, 2019) (granting leave to proceed pseudonymously after *sua sponte* ordering plaintiff to show cause because plaintiff had not sought leave to do so). Eleventh Circuit: *C.H. v. Sch. Bd. of Okaloosa Cnty.*, 2018 WL 11267720, at *1 (N.D. Fla. Dec. 7, 2018) (granting pseudonym motion filed after district court issued a deficiency order for failing to seek permission to proceed anonymously). D.C. Circuit: *Doe v. Lynch*, 2016 WL 10844617, at *2 (D.D.C. Apr. 28, 2016) (granting pseudonym motion filed one week after the complaint).

establish, at most, that the district court must have the power to learn the plaintiff's identity *at some point in the litigation*. They do not establish, or even logically support, the proposition that federal courts' power to adjudicate a case requires them, in all situations, to know the plaintiff's true name at the outset.

Defendants' first point—regarding personal jurisdiction and preclusion—does not relate to Article III standing at all, and therefore cannot support Defendants' plea for jurisdictional treatment. *See, e.g.*, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause."); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (same). The entire concept of the district court needing personal jurisdiction over a plaintiff is therefore bizarre, because of course the plaintiff is not asserting some liberty interest against the court's adjudication of her dispute. All Defendants can cite is a law review article arguing that when defendants attempt to transfer venue, plaintiffs can assert a personal jurisdiction defense to that request. *See* OB30 n.6. Even if that's true, it has no bearing on this case, or on pseudonymous filings generally.

Defendants' broader point, *i.e.*, that the district court cannot bind a party if it does not know who the party is, is equally without merit. For example, when minor children are plaintiffs, identified using only their initials as required by Federal Rule of Civil Procedure 5.2(a)(3), nobody thinks that the district court lacks jurisdiction to enter an adverse judgment against them, or to find their claims precluded. The case Defendants cite, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988), does not hold otherwise. Instead, the Supreme Court held that a notice of appeal that named only one appellant, followed by "et al.," was too vague to create appellate jurisdiction for the unnamed appellants because neither the opposition nor the courts would be able to tell who was actually appealing, and who was not. *See ibid*.[18] But in pseudonym cases, there is no vagueness issue. For example, the pseudonym in Plaintiff's complaint refers to one specific person, whose characteristics are described in detail.

---

[18] Defendants rightly do not rely much on *Torres* because there are important differences between the Federal Rules of Appellate Procedure (which are at least arguably jurisdictional) and the Federal Rules of Civil Procedure (which are plainly not under controlling law). And in *Gonzalez v. Thaler*, 565 U.S. 134 (2012), the Supreme Court effectively cabined *Torres* to its facts. *Compare id.* at 147-48, *with id.* at 166 (Scalia, J., dissenting) ("The Court is not willing to say that *Torres* is no longer good law, but I doubt whether future litigants will be so coy.").

There is no doubt that Plaintiff would be bound by an adverse judgment, that she can be held liable for costs or other sanctions, and that her claims can be barred by preclusion principles.

To the extent Defendants are making a practical point—that without knowing the plaintiff's name, a court cannot easily enter an order binding her, or evaluate whether her claims are precluded—that still does not support their blanket dismissal rule. Instead, practical problems have practical solutions. Most obviously, the district court has the inherent power to require the plaintiff to identify herself to the court and to defendants. *See ACLU v. Holder*, 673 F.3d 245, 256 (4th Cir. 2011) (explaining that district courts have all powers "necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority," as well as powers that are "reasonably useful to achieve justice") (quotation marks omitted).

Defendants also argue that without knowing the plaintiff's identity, the court cannot be sure that the plaintiff has standing. OB32-33. But why would that be the case? At the pleading stage, complaints will allege facts about the plaintiff's injury and cause of action. The court will

analyze those facts to determine whether they establish standing. And the result of that analysis would be the same whether the plaintiff provides her true name, an alias, her initials, or a generic pseudonym. Indeed, knowing what name the plaintiff goes by has no obvious bearing on standing at all, because plaintiffs may legally change their names, or sue as assignees of third parties. What matters is whether the plaintiff alleges facts supporting standing.

At most, Defendants have shown that there may be hypothetical cases in which the plaintiff's failure to identify herself raises a question about subject matter jurisdiction. But that hypothetical possibility does not support a *per se* rule requiring dismissal of every unidentified pseudonymous plaintiff's claim. By analogy: An unscrupulous lawyer might file an unauthorized lawsuit on behalf of a non-client. But we do not guard against that possibility by dismissing cases for lack of jurisdiction unless the complaint is accompanied by a notarized engagement letter. Instead, we rely on the adversarial process and the district court's fact-finding powers to reveal the truth in due course. The same rule applies to pseudonymous complaints: If there is a question about the court's

jurisdiction, the court should undertake a proper inquiry and resolve the question. It should not adopt a wildly over-inclusive *per se* rule.

In support of the contrary proposition, Defendants make three arguments. First, they argue that "[t]reating the identification requirement as a *non*-jurisdictional rule would allow that requirement to be waived altogether" if the defendant does not object. OB38. This would encourage lawyers to file "John Doe" lawsuits "for a non-existent person, perhaps as a placeholder action to keep a limitations period open while they investigate their claims and track down the proper parties." *Ibid.* (quotation marks omitted). That is wrong because, as explained above, district courts have inherent power to protect the integrity of judicial proceedings, and can exercise that power *sua sponte* even absent a jurisdictional rule. District courts can also dismiss cases in which the plaintiff does not comply with the Federal Rules, even though those rules are not jurisdictional. Fed. R. Civ. P. 41(b); *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962) (explaining that Rule 41(b) permits district courts to act *sua sponte*). If lawyers misbehave by filing placeholder actions, courts do not need a jurisdictional rule to check that behavior. And Defendants provide no evidence that pseudonyms actually promote this sort of misconduct.

Indeed, in the only case they cite, the lawyer filed unauthorized complaints on behalf of people *who were named*. *See* OB38 (citing *In re Engle Cases*, 767 F.3d 1082, 1113 (11th Cir. 2014)).

Second, Defendants argue that a jurisdictional rule is simple and cheap to administer. OB38-39. But a rule saying that providing a true name is *never jurisdictional* is just as simple, and even better from a cost-saving perspective. Under Defendants' rule, any time a plaintiff does not disclose her identity at the time she sues, the case must always be dismissed for lack of subject matter jurisdiction because the original complaint is a nullity. That would either result in "the needless formality and expense of instituting a new action," or in a loss on the merits if the claim is time-barred. *Fund Liquidation Holdings*, 2021 WL 1010596, at *15. Both outcomes are wasteful; the latter is unjust. On the other hand, eschewing a jurisdictional rule still allows the district court to inquire into the plaintiff's identity as necessary, and allows defendants to object to pseudonyms, too—while avoiding wasteful re-filing and unjust loss of claims because defects can be cured in existing civil actions.

Defendants' rule is also less simple than it sounds. What if a plaintiff sues under her maiden name instead of her legal one? Or if the

52

caption includes a typo? Or omits a middle name? Or uses a nickname like "Bob" instead of "Robert"? Under Plaintiff's rule, this is no big deal; the caption can always be corrected. But under Defendants' rule, the complaint might be a nullity because it did not correctly identify the plaintiff. And what about complaints against John Doe defendants? Do all of those fail for lack of jurisdiction, too? At a minimum, every defect in a caption would produce a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) until these matters were resolved.

Defendants' rule treating the plaintiff's name as a dispositive jurisdictional fact would also muddy the Supreme Court's bright-line rule that a requirement is only jurisdictional if established by Congress or by a long line of Supreme Court cases. Far from clarifying the jurisdictional rules of the road, it would invite follow-on litigation about whether compliance with other aspects of Rule 10, or other Rules, is also jurisdictional.

## III. The Complaint Did Not Violate Any Rule, Jurisdictional or Otherwise.

Defendants are also wrong to argue that a plaintiff must seek the district court's leave to use a pseudonym at the time of suit. In fact, plaintiffs often seek such leave after the complaint is filed, *see supra* nn.6, 16-17 (collecting cases), and no precedent or rule requires otherwise.

53

The only time Defendants even attempt to identify a legal rule requiring their approach is their citation to Rule 10(a). But although this Rule requires the titles of pleadings to name all the parties, it does not expressly say *how* those parties must be named (*e.g.*, using their full legal names, as opposed to pseudonyms), and nobody disputes that Rule 10(a) allows district courts to permit pseudonymous complaints. Moreover, neither Rule 10(a) nor any other rule says anything about the *timing* for requests to use a pseudonym.

Absent any clear timing rule, this Court should not create one out of whole cloth. Instead, the Court should leave it to district courts to adjudicate the appropriate procedure on a case-by-case basis. Indeed, this is the ordinary procedure in the absence of a clear rule. *See* Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules."); *Whalen v. Ford Motor Credit Co.*, 684 F.2d 272, 282 (4th Cir. 1982) (en banc) ("In the absence of any provision governing the procedure that should be followed . . . , there exists a gap in the rules" that "must be filled by conforming to the mandate of rule 83 and committing the decision . . . to the sound discretion of the district court."). As a

practical matter, the way this would work is that plaintiffs will need to seek the district court's leave to use a pseudonym either when the district court says so, or when a defendant objects to the plaintiff's use of a pseudonym. This approach ensures that district courts have the discretion they need to control the proceedings in front of them, appropriately protects defendants, avoids ensnaring unsuspecting plaintiffs in unnecessary procedural traps, and therefore produces fair outcomes while minimizing wasted effort and expense.

## IV.    Relation Back Is Unnecessary Because the Correct Limitations Period Is Twenty Years.

Defendants' relation-back point is also predicated on the notion that the applicable statute of limitations for Plaintiff's Title IX claim is two years. OB41-43. Actually, the correct limitations period is twenty years.

The parties agree that Title IX borrows "the most closely analogous" limitations period from Virginia law, because no federal statute "expressly supplies a limitations period." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005); *see also Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 62-63 (2d Cir. 2019) (because "Title IX [does not include] an express

55

statute of limitations," the court "must apply the most appropriate or analogous state statute of limitations") (quotation marks omitted).

Here, the most closely analogous limitations period is the one Virginia provides to plaintiffs in an action for injury resulting from sexual abuse that occurred during childhood. Under Virginia law:

> Every action for injury to the person, *whatever the theory of recovery*, resulting from sexual abuse occurring during the infancy or incapacity of the person as set forth in subdivision 6 of § 8.01-249 shall be brought within 20 years after the cause of action accrues.

Va. Code Ann. § 8.01-243(D) (emphasis added).

Defendants argue that the less analogous, two-year statute of limitations for personal injuries in general applies. *See* OB41-43. But they ignore precedent from this Court rejecting that argument when the type of claim has a closer state analog.

In *Moore v. Greenwood School District No. 52*, 195 F. App'x 140, 141-42 (4th Cir. 2006) (per curiam), the plaintiff brought a Title IX retaliation claim, alleging that he was fired by a South Carolina high school for supporting discrimination complaints. The district court dismissed the claim as time-barred under the one-year statute of limitations provided by the South Carolina Human Affairs Law. *Id.* at 142. On appeal,

the plaintiff argued "that the applicable statute of limitations in Title IX cases should be the general state statute of limitations for personal injury actions, which is two years in South Carolina." *Id.* at 143. This Court rejected the argument, agreeing with the district court that "the State Human Affairs Law [wa]s the more analogous law." *Ibid.*

Similarly, this Court "b[roke] with the conclusions of the other circuits to apply a personal injury statute of limitations" to a Federal Rehabilitation Act claim under 29 U.S.C. § 794 in *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993). Because the Court found the Virginia Rights of Persons with Disabilities Act was the more analogous statute, it held that the one-year statute of limitations under that act applied to the federal claim. *Ibid.*

Defendants cite *Wilmink v. Kanawha County Board of Education*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per curiam), to argue that the "general or residual" personal injury statute of limitations applies to Plaintiff's Title IX claims. OB42. But the plaintiff there "never argued" otherwise. 214 F. App'x at 296 & n.3. The same goes for *Graham v. City of Manassas School Board*, *see* OB42 & n.10, in which the parties "*agree[d]* that the relevant limitations period for plaintiffs' [Title IX]

claim[] [wa]s two years," 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (emphasis added).

The "more analogous law in this case," *Moore*, 195 F. App'x at 143, is the one governing actions for "injury to the person, *whatever the theory of recovery*, resulting from sexual abuse occurring during the infancy or incapacity of the person," Va. Code Ann. § 8.01-243(D) (emphasis added). It would be unfair to apply the more analogous state limitations periods when they are shorter than the general personal injury limitations periods for state claims, as this Court did in *Moore* and *Wolsky*, but then apply the general limitations period when, as here, the more analogous state limitations period is longer. And it would contravene the Supreme Court's "repeated holdings construing" the remedial reach of "Title IX broadly." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).

## V.  Defendants' Rule Is Wasteful and Unjust.

Finally, the equities are one-sided in Plaintiff's favor. Here, Defendants are trying to prevent a survivor of childhood sexual assault and harassment from having her day in court against a school system that was supposed to protect her, but instead looked the other way. And for what? The only mistake Defendants assert is that Plaintiff violated an

58

unwritten rule requiring her to reveal her identity when she filed her original complaint, and not a few months later. Defendants do not argue that Plaintiff actually lacks standing. They concededly know who she is. They do not assert any prejudice from her pseudonymous filing. Nor do they contend that Plaintiff should not have been granted leave to use a pseudonym under this Court's *James* decision. At the *very most*, they have identified a technicality. The district court quite rightly refused to dismiss this case on this basis.

Defendants' rule would sow mischief in other cases, too. As Defendants acknowledge, pseudonymous filings are common. Such claims are often brought by survivors of sexual assault. *See, e.g.*, *Doe v. Hebbard*, 2021 WL 1195828, at *2 (S.D. Cal. Mar. 30, 2021); *Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014). They are brought by people with disabilities or mental health conditions, the revelation of which might lead to stigma. *See, e.g.*, *J.W. v. District of Columbia*, 318 F.R.D. 196, 197, 200-01 (D.D.C. 2016); *Doe v. Standard Ins. Co.*, 2015 WL 5778566, at *2 (D. Me. Oct. 2, 2015). They are brought by plaintiffs attempting to vindicate controversial constitutional rights, who fear violent retaliation. *See, e.g.*, *June Med. Servs., LLC v. Phillips*, 2021 WL 292441, at *5-7 (M.D. La. Jan. 28,

2021) (challenge to abortion restriction); Reply Brief of the National Rifle Association, Jane Doe, and John Doe, *Nat'l Rifle Ass'n v. Att'y Gen., Fla.*, 2018 WL 5310106, at \*1-2 (11th Cir. Oct. 19, 2018) (challenge to gun-ownership restriction); *Freedom from Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1361 (S.D. Ga. 2015) (challenge to school prayer). And these are just a sampling.

Of course, the plaintiffs who suffer the most will be the least sophisticated, *i.e.*, *pro se* parties, who are not likely to know of the unwritten jurisdictional rule Defendants urge. That outcome would only exacerbate existing inequality vis-à-vis access to justice.

Moreover, as shown above, Defendants' fretting about possible gamesmanship by plaintiffs is overblown because district courts have the power to ensure the integrity of proceedings. The greater risk is that under Defendants' rule, sophisticated defendants will wait until after the statute of limitations has run to challenge the court's jurisdiction whenever a plaintiff proceeds pseudonymously without first seeking leave.[19]

---

[19] For example, FCSB—represented by the same lawyers as here—recently consented to the plaintiff's use of a pseudonym when an alleged *perpetrator* of sexual harassment sued FCSB pseudonymously, but did

Under Defendants' rule, district courts' hands will be tied, and meritorious claims will be thrown out.

This is not justice. Pleading rules are designed to provide the opposing party with notice of a claim, and to establish minimum thresholds that cases must meet to go forward. They are not supposed to hide traps for unsuspecting litigants. Victims of sexual abuse deserve their day in court, and this Court should not thwart them by accepting a rule that turns trivial technicalities into dispositive issues.

------

not seek leave for months after filing the complaint. *See* Order, *Doe v. FCSB*, No. 19-cv-65, ECF 39, at 1 (E.D. Va. Apr. 18, 2019). FCSB never suggested a jurisdictional problem—perhaps because there was no limitations issue, or perhaps FCSB believes that perpetrators of harassment deserve greater solicitude than victims. Whatever the motivation, the inconsistency highlights the equitable shortcomings of Defendants' rule. This case is also not the only illustration. In *New York Blood Center*, the defendant allowed multiple pseudonymous complaints, but then moved for dismissal when a plaintiff's claim would have been time-barred if refiled. *See* 213 F.R.D. at 110. After holding that the issue was not jurisdictional, the district court held that the defendant was estopped from objecting to the pseudonymous filing. *Ibid*.

## CONCLUSION

The decision below should be affirmed. We believe this appeal isn't close, and so oral argument is unnecessary—but we are more than happy to appear and answer questions if the Court would like us to.

Respectfully submitted,

*s/ Tejinder Singh*

| | |
|---|---|
| Thomas N. Sweeney | Tejinder Singh |
| MESSA & ASSOCIATES, P.C. | Daniel H. Woofter |
| 123 S. 22nd Street | GOLDSTEIN & RUSSELL, P.C. |
| Philadelphia, PA 19103 | 7475 Wisconsin Ave., Suite 850 |
| 215.568.3500 | Bethesda, MD 20814 |
| 215.568.3501 (fax) | 202.362.0636 |
| Tsweeney@messalaw.com | 866.574.2033 (fax) |
| | tsingh@goldsteinrussell.com |
| | dhwoofter@goldsteinrussell.com |

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,989 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook font.