No. 21-01005

# In The United States Court of Appeals for the Fourth Circuit

B.R.,

Plaintiff-Appellee,

v.

F.C.S.B., *et al.*

Defendants-Appellants.

On Appeal from the United States District Court for the
Eastern District of Virginia, No. 1:19-cv-00917-RDA-TCB
Hon. Rossie D. Alston, Jr.

## BRIEF OF AMICI CURIAE
## NATIONAL WOMEN'S LAW CENTER AND 51 ADDITIONAL
## ORGANIZATIONS IN SUPPORT OF APPELLEE

Emily Martin
Sunu P. Chandy
Neena Chaudhry
Shiwali Patel
Elizabeth Tang
NATIONAL WOMEN'S LAW
CENTER
11 Dupont Circle N.W.,
Suite 800
Washington, DC 20036
(202) 588-5180

Emily P. Mallen
Kimberly Leaman
Elizabeth T. MacGill
Katy (Yin Yee) Ho
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Amici Curiae*

*Additional Amici Listed on Next Page*

## ADDITIONAL AMICI CURIAE

Amara Legal Center

American Sexual Health Association

Autistic Self Advocacy Network

Black Women's Health Imperative

Bold Futures NM

California Women Lawyers

Champion Women

Civil Liberties & Public Policy

Clearinghouse on Women's Issues

Coalition of Labor Union Women

Desiree Alliance

Disability Rights Advocates

Equality California

Family Equality

Gender Justice

Girls Inc.

GLSEN

Jobs With Justice

Kentucky Association of Sexual Assault Programs

KWH Law Center for Social Justice and Change

Legal Aid at Work

Legal Momentum, the Women's Legal Defense and Education Fund

Legal Voice

National Alliance to End Sexual Violence

National Asian Pacific American Women's Forum

National Association of Social Workers (NASW)

National Association of Women Lawyers

National Center for Law and Economic Justice

National Coalition Against Domestic Violence

National Crime Victim Law Institute

National Crittenton

National Organization for Women Foundation

National Women's Political Caucus

North Carolina Coalition Against Domestic Violence

North Carolina Coalition Against Sexual Assault

Religious Coalition for Reproductive Choice

Reproaction Education Fund

Sexual Violence Law Center

Sikh Coalition

SisterLove

SisterReach

Stop Sexual Assault in Schools

The National Network to End Domestic Violence

The Women's Law Center of Maryland

Washington Lawyers' Committee for Civil Rights and Urban Affairs

Women Lawyers On Guard Inc.

Women's Bar Association of the District of Columbia

Women's Bar Association of the State of New York

Women's Institute for Freedom of the Press

Women's Law Project

Women's Media Center

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST

Under Federal Rule of Appellate Procedure 26.1 and Local Rules 26.1(a)(2)(A) and (a)(2)(C), the National Women's Law Center ("NWLC") and the additional *amicus curiae* parties make the following disclosures:

1. The proposed *amicus curiae* parties, individually and collectively, have no parent corporation(s); and

2. There is no publicly held corporation that owns more than 10 percent of stock in the proposed *amicus curiae* parties, either individually or collectively.

3. The *amicus curiae* parties certify that they are unaware of any publicly held corporation or similarly situated legal entity that has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit-sharing agreement, insurance, or indemnity agreement.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.........................................................................ii

AMICI CURIAE'S IDENTITY, INTEREST, AND AUTHORITY TO
     FILE...................................................................................................1

INTRODUCTION......................................................................................3

BACKGROUND .......................................................................................5

SUMMARY OF ARGUMENT ..................................................................7

ARGUMENT ............................................................................................9

I.     FEDERAL RULE OF CIVIL PROCEDURE 10 IS NOT
     JURISDICTIONAL AND DOES NOT STRIP SURVIVORS OF
     ACCESS TO THE COURTS. .........................................................9

     A.     Rule 10's requirement to "name all the parties" does not
          include a jurisdictional component, and the Court should not
          read one into the Rule.........................................................10

     B.     Plaintiff's legal name has no bearing on jurisdiction...........13

     C.     Defendants' attempt to write a jurisdictional requirement
          into Rule 10 where none exists is an evasion of their Title IX
          obligations. .........................................................................15

II.    DEFENDANTS' PREFERRED STATUTE OF LIMITATIONS IS
     UNDULY NARROW AND WOULD CURTAIL THE BROAD
     PROTECTIONS OF TITLE IX. ...................................................17

III.   COURTS SHOULD NOT NEEDLESSLY COMPLICATE THE
     USE OF PSEUDONYMS FOR SURVIVORS OF SEXUAL
     ASSAULT, A VULNERABLE POPULATION THAT FACES
     MULTIPLE BARRIERS TO REPORTING THEIR CLAIMS AND
     OFTEN RELY ON PSEUDONYMS TO DO SO...........................19

     A.     Survivors of sexual assault, including those who were minors
          at the time of their assault, already face multiple barriers to
          bringing legal claims and should not be further prejudiced by
          unwritten procedural technicalities. ....................................20

     B.     The privacy protection offered by pseudonyms is crucial in
          encouraging survivors of sexual assault to come forward. ..32

CONCLUSION ........................................................................................36

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broughman v. Carver,*
   624 F.3d 670 (4th Cir. 2010) ............................................................ 19

*Constantine v. Rectors & Visitors of George Mason Univ.,*
   411 F.3d 474 (4th Cir. 2005) ............................................................ 14

*Davis v. Monroe Cnty. Bd. of Educ.,*
   526 U.S. 629 (1999) .......................................................................... 15

*DelCostello v. Int'l Brotherhood of Teamsters,*
   462 U.S. 151 (1983) .......................................................................... 18

*Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.,*
   No. 1:20-CV-01695, 2021 WL 1334199 (N.D. Ohio Apr. 9,
   2021) ................................................................................................. 19

*Florida Star v. B. J. F.,*
   491 U.S. 524 (1989) .......................................................................... 29

*Graham v. City of Manassas Sch. Bd.,*
   390 F. Supp. 3d 702 (E.D. Va. 2019) ............................................... 19

*James v. Jacobson,*
   6 F.3d 233 (4th Cir. 1993) ................................................................ 12

*Kontrick v. Ryan,*
   540 U.S. 443 (2004) .......................................................................... 11

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .......................................................................... 13

*Moore v. Greenwood Sch. Dist. No. 52,*
   195 F. App'x 140 (4th Cir. 2006) ..................................................... 19

*N. Haven Bd. of Educ. v. Bell,*
   456 U.S. 512 (1982) ............................................................................ 9

*Owens v. Okure,*
  488 U.S. 235 (1989)............................................................... 17

*Plaintiff B v. Francis,*
  631 F.3d 1310 (11th Cir. 2011) ........................................... 34

*Reed Elsevier, Inc. v. Muchnick,*
  559 U.S. 154 (2010)............................................................... 11

*Wilmink v. Kanawha Cnty. Bd. of Educ.,*
  214 F. App'x 294 (4th Cir. 2007)................................... 18, 19

**Statutes & Rules**

Va. Code Ann. § 8.01-243(D) (Supp. 2020) ...................... 17, 18

W. Va. Code § 55-2-15(a) (amended 2020) ............................. 18

Fed. R. Civ. P. 5.2(a).................................................................. 11

Fed. R. Civ. P. 10(a).................................................................. 10

Fed. R. Civ. P. 82...................................................................... 10, 11

**Other Authorities**

Am. Ass'n of Univ. Women, *Crossing the Line: Sexual
  Harassment at School* (2011),
  https://www.aauw.org/app/uploads/2020/03/Crossing-the-
  Line-Sexual-Harassment-at-School.pdf ...................... 20, 23

The Arc, *People with Intellectual Disabilities and Sexual
  Violence* (Mar. 2011),
  https://www.thearc.org/document.doc?id=3657 .................. 28

Ass'n of Am. Univs., *Report on the AAU Campus Climate
  Survey on Sexual Assault and Misconduct* (Oct. 15, 2019),
  https://www.aau.edu/key-issues/campus-climate-and-
  safety/aau-campus-climate-survey-2019.......................... 22, 23, 24, 25

iii

Dave Bangert, *Lawsuit: Pursue accused of 'chilling' retaliation on women who reported sexual assaults*, J. & COURIER (Nov. 15, 2018), https://www.jconline.com/story/news/2018/11/14/purdue-accused-chilling-retaliation-sexual-assault-reports/2003101002 ........................................................................ 26

Rebecca Campbell, *The Psychological Impact of Rape Victims' Experiences With the Legal, Medical, and Mental Health Systems*, 63 AM. PSYCHOLOGIST 702 (2008) ............................ 31

Nancy Chi Cantalupo, *And Even More of Us Are Brave: Intersectionality & Sexual Harassment of Women Students of Color*, 42 HARVARD J.L. & GENDER (May 1, 2018), https://ssrn.com/abstract=3168909 ......................................... 28

Nora Caplan-Bricker, *"My School Punished Me"*, SLATE (Sept. 19, 2016), https://slate.com/human-interest/2016/09/title-ix-sexual-assault-allegations-in-k-12-schools.html .................................................................. 26

Andrea A. Curcio, *Rule 412 Laid Bare: A Procedural Rule That Cannot Adequately Protect Sexual Harassment Plaintiffs From Embarrassing Exposure*, 67 U. CIN. L. REV. 125 (1998) .................................................................... 34

John Eligon, *High School Sexual Assault Case Is Revisited, Haunting Missouri Town*, N.Y. TIMES (Oct. 19, 2013), https://www.nytimes.com/2013/10/20/us/high-school-sexual-assault-case-is-reopened-haunting-missouri-town.html ........................................................................... 30

Brian Entin, *Miami Gardens 9th-grader says she was raped by 3 boys in school bathroom*, WSVN-TV (Feb. 8, 2018), https://wsvn.com/news/local/miami-gardens-9th-grader-says-she-was-raped-by-3-boys-in-school-bathroom ............................ 26

Meg Garvin, Alison Wilkinson, & Sarah LeClair, *Protecting Victim's Privacy Rights: The Use of Pseudonyms in Civil Law Suits*, NCVLI Violence Against Women Bulletin (July 2011), https://law.lclark.edu/live/files/11778-protecting-victims-privacy-rights-the-use-of......................................33

Alicia Sanchez Gill, A. Warren, Lucane LaFortune & Shiwali Patel, *Women and Girls of Color Need Justice Too*, Rewire.News (Jan. 14, 2019), https://rewire.news/article/2019/01/14/women-and-girls-of-color-need-justice-too;..........................................22

GLSEN, *The 2019 National School Climate Survey* (2020), https://www.glsen.org/research/2019-national-school-climate-survey............................................21, 25

Lisa Gutierrez, *Daisy Coleman's mom grieved for 4 months. Then, like her daughter, she died by suicide*, THE KANSAS CITY STAR (Dec. 7, 2020) https://www.kansascity.com/news/local/article247669465.html..........................................................30

Catherine Hill & Elena Silva, *Drawing the Line: Sexual Harassment on Campus*, AAUW (2005), https://www.aauw.org/app/uploads/2020/02/AAUW-Drawing-the-line.pdf..........................................22

Alyssa Hyman, *Teen who says she was expelled after reporting sexual assault now suing district*, WSB-TV (Aug. 27, 2019), https://www.wsbtv.com/news/local/teen-sexually-assaulted-by-another-student-now-suing-district-over-expulsion/979639347 ..........................................26

v

Tyler Kingkade, *Schools Keep Punishing Girls—Especially Students of Color—Who Report Sexual Assaults, and the Trump Administration's Title IX Reforms Won't Stop It*, THE74MILLION (Aug. 6, 2019), https://www.the74million.org/article/schools-keep-punishing-girls-especially-students-of-color-who-report-sexual-assaults-and-the-trump-administrations-title-ix-reforms-wont-stop-it/ ........................................................... 28

Tyler Kingkade, *When Colleges Threaten To Punish Students Who Report Sexual Violence*, HUFFINGTON POST (Sept. 9, 2015), https://www.huffingtonpost.com/entry/sexual-assault-victims-punishment_us_55ada33de4b0caf721b3b61c .................................... 27

Letter from 903 Mental Health Professionals and Trauma Specialists to Ass't Sec'y Kenneth L. Marcus (Jan. 30, 2019), https://nwlc.org/wp-content/uploads/2019/01/Title-IX-Comment-from-Mental-Health-Professionals.pdf ........................ 24

Kimberly J. Mitchell, Michele Ybarra & David Finkelhor, *The relative importance of online victimization in understanding depression, delinquency, and substance use*, CHILD MALTREAT. 12(4): 314–24 (Nov. 2007), https://pubmed.ncbi.nlm.nih.gov/17954938/ ...................................... 35

Mark Mulholland & Elizabeth Sy, *Victim Defamation Claims in the Era of #MeToo*, 260 NYLJ 23, Aug. 2 2018 .............................. 29

NAACP Legal Defense and Educ. Fund, Inc. & Nat'l Women's Law Ctr., *Unlocking Opportunity for African American Girls: A Call to Action for Educational Equity* (2014), https://nwlc.org/wp-content/uploads/2015/08/unlocking_opportunity_for_african_american_girls_report.pdf ...................................................... 27, 28

Nat'l Women's Law Ctr., *100 School Districts: A Call to Action for School Districts Across the Country to Address Sexual Harassment Through Inclusive Policies and Practices* (Apr. 2021), https://nwlc.org/resources/100-school-districts-a-call-to-action-for-school-districts-across-the-country-to-address-sexual-harassment-through-inclusive-policies-and-practices .........................................................25

Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for Girls Who Are Pregnant or Parenting* (2017), https://nwlc.org/resources/stopping-school-pushout-for-girls-who-are-pregnant-or-parenting .................................................21

Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for Girls Who Have Suffered Harassment and Sexual Violence* (2017), https://nwlc.org/resources/stopping-school-pushout-for-girls-who-have-suffered-harassment-and-sexual-violence .... 21, 22, 23

Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for Girls with Disabilities* (2017), https://nwlc.org/resources/stopping-school-pushout-for-girls-with-disabilities...........................................................21

Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for LGBTQ Girls* (2017), https://nwlc.org/resources/stopping-school-pushout-for-lgbtq-girls ...............................................................21

Patrick Noaker, *Using Pseudonyms in Sexual Abuse Cases*, 69 BENCH & B. MINN. 16 (2012).........................................................34

Uli Orth, *Secondary Victimization of Crime Victims by Criminal Proceedings,* SOC. JUST. RES. 15(4) (Dec. 2002), https://www.ojp.gov/library/abstracts/secondary-victimization-crime-victims-criminal-proceedings............................30

Madison Pauly, *She Said, He Sued*, Mother Jones (Mar. 2020), https://www.motherjones.com/crime-justice/2020/02/metoo-me-too-defamation-libel-accuser-sexual-assault ................................................................ 29

RAINN, *Campus Sexual Violence: Statistics*, https://www.rainn.org/statistics/campus-sexual-violence ................. 25

Lynn H. Schafran & Claudia Bayliff, *Judges Tell: What I Wish I Had Known Before I Presided in an Adult Victim Sexual Assault Case*, National Judicial Education Program (2011), https://www.legalmomentum.org/library/judges-tell-what-i-wish-i-had-known-i-presided-adult-victim-sexual-assault-case ...................................................................... 25

Chelsea Spencer, et al., *Why Sexual Assault Survivors Do Not Report to Universities: A Feminist Analysis,* FAM. REL.: INTERDISC. J. APPLIED FAM. STUD. (Feb. 2017) .......................... 31

Margaret Stafford, *Daisy Coleman, advocate featured in Netflix documentary on sexual assault, dies at 23*, ASSOCIATED PRESS (Aug. 7, 2020), https://www.post-gazette.com/news/obituaries/2020/08/06/Daisy-Coleman-dies-suicide-23-subject-Netflix-documentary-sexual-assault-Audrie/stories/202008060179 ................................ 30

Aviva Stahl, *'This Is an Epidemic': How NYC Public Schools Punish Girls for Being Raped*, VICE (June 8, 2016), https://broadly.vice.com/en_us/article/59mz3x/this-is-an-epidemic-how-nyc-public-schools-punish-girls-for-being-raped ..................................................................... 26

viii

## AMICI CURIAE'S IDENTITY, INTEREST,
## AND AUTHORITY TO FILE

The National Women's Law Center ("NWLC") is a nonprofit legal advocacy organization dedicated to the advancement and protection of women's legal rights and the rights of all people to be free from sex discrimination.  Since its founding in 1972, NWLC has focused on issues of importance to women and girls, including education, income security, child care, workplace justice, and reproductive rights and health, with an emphasis on the needs of low-income women, women of color, and others who face multiple and intersecting forms of discrimination.  NWLC has specifically worked to secure equal opportunity in education for women and girls through enforcement of Title IX of the Education Amendments of 1972 ("Title IX") and other laws prohibiting sex discrimination.  NWLC is committed to eradicating sexual harassment, which includes sexual assault, as a barrier to educational access.

Additional *Amici* include public interest organizations committed to gender justice, including for women and girls in schools.  *Amici* therefore have an interest in assisting this Court to understand the

1

imperative of preventing and addressing sexual harassment in schools and protecting students including through the enforcement of Title IX.[1]

---

[1] All parties have consented to the filing of this brief. No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and no person other than NWLC or its counsel contributed money that was intended to fund the preparation or submission of this brief.

## **INTRODUCTION**

Enacted in 1972, Title IX broadly protects individuals from sex discrimination, including sexual harassment, in schools that receive federal funds. Nearly fifty years later, sexual assault survivors—and student survivors in particular—continue to face tremendous barriers to justice. In this case, Defendants seek to create yet another barrier by transforming the naming requirement of Federal Rule of Civil Procedure 10 ("Rule 10") into a jurisdictional issue. Defendants seek to preclude survivors who file a complaint using a pseudonym, without first seeking permission to do so from court, from re-filing an amended complaint after obtaining that permission, and having that amended complaint relate back to the date of the original filing. This, together with Defendants' attempts to impose a two-year statute of limitations, instead of the twenty-year one that is more appropriate here,[2] would strip Plaintiff—

---

[2] The lower court mistakenly assumed that a two-year limitations period applied. J.A. 134:8–9. Although the limitations period was not directly presented to this Court, Defendants have since raised the issue, Appellants' Br. at 41–43, and *Amici* describe *infra* why this Court, if it takes up the limitations question, should hold that the appropriate statute of limitations in this context of sexual assault experienced by a minor is twenty years.

3

who was a minor when she experienced repeated peer sexual assault—of access to the courts entirely, as more than two years have passed since she reached the age of majority.

As *Amici* detail herein, the Court should decline Defendants' invitation for several reasons. *First*, Title IX is a civil rights statute that must be interpreted to permit its broadest reach. Defendants ask the Court to do just the opposite—to constrict Title IX by erecting a new jurisdictional requirement and ignoring Virginia's twenty-year limitations period for sexual assault experienced as a minor. *Second*, the Federal Rules of Civil Procedure offer no basis for reading a jurisdictional component into Rule 10; nor is a plaintiff's legal name needed to assess jurisdiction. *Third*, there are significant challenges already facing sexual assault survivors, including determining whether, when, and how to report their abuse, as borne out in data on the prevalence of sexual harassment and assaults among students, the long-term trauma of sexual assault, and the credible fears of retaliation. Given these dynamics, it is essential that courts do not unnecessarily constrain survivors from proceeding by pseudonym due to unwritten procedural technicalities, so that survivors may enforce their rights in federal courts.

4

The Court, therefore, should affirm the lower court's decision to allow Plaintiff to proceed with her lawsuit; insofar as it takes up the question of the appropriate statute of limitations in this context, the Court should hold that Virginia's twenty-year limitations period applies to Title IX claims for sexual assault experienced by minors in that state.

## **BACKGROUND**

While a 12-year-old student at her local public middle school, Plaintiff suffered repeated sexual abuse and harassment at the hands of her classmates.  From October 2011 through February 2012, she was routinely raped, tortured, physically assaulted, and threatened with death.  The terror, humiliation, and bullying Plaintiff experienced was exacerbated when she pleaded with school officials for protection, only for those officials to deflect, minimize, and ignore her repeated requests, even going so far as to blame Plaintiff for the horrifying acts committed against her.

On July 12, 2019, just before turning twenty, Plaintiff courageously filed a lawsuit against F.C.S.B., individual school administrators, and her former classmates alleging Title IX violations, among other causes of action.  She filed her complaint under the pseudonym "Jane Doe" in order

5

to protect her privacy upon revealing painful and intimate details of her adolescent years. Defendants thereafter moved to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction, claiming she improperly commenced her action under a pseudonym without first obtaining leave of the court. Citing no relevant case law, Defendants argued that any attempt by Plaintiff to amend her complaint and seek leave to proceed pseudonymously would be futile. According to Defendants, the statute of limitations had since expired, and failure to seek the court's permission was a jurisdictional defect that would not relate back to her original date of filing. In light of Defendants' position, Plaintiff ultimately did seek, and was granted, the court's permission to proceed under a pseudonym.

The district court ruled in favor of Plaintiff, holding that not obtaining the court's permission before filing under a pseudonym was not a jurisdictional defect and that her amended complaint related back to the date of her original complaint for purpose of the statute of limitations. Defendants then requested and received leave to appeal "whether a plaintiff's failure to obtain leave of court to file a complaint pseudonymously is a jurisdictional defect such that a later order granting

leave to proceed pseudonymously does not relate back to the original filing for purposes of the statute of limitations." J.A. 289.

## SUMMARY OF ARGUMENT

Title IX is a landmark civil rights law that should be interpreted broadly. Defendants would have otherwise. They ask the Court to prevent Plaintiff from pursuing her Title IX claim by reading a nonexistent jurisdictional component into the caption requirement of Federal Rule of Civil Procedure 10. Procedures for filing lawsuits under pseudonym, however, are not written into the Rules. Nor are the consequences of failing to adhere to those procedures. Undeterred, Defendants persist in trying to impose a blanket jurisdictional rule on civil rights plaintiffs, while simultaneously invoking a two-year statute of limitations against Plaintiff's claims notwithstanding Virginia's applicable twenty-year limitations period for claims involving sexual assault experienced as a minor.

As Plaintiff's case demonstrates, the real-world consequences of attaching unwritten jurisdictional requirements to a procedural Rule could mean the end of the case. Despite that reality, Defendants offer theoretical arguments, claiming that not identifying oneself at the outset

will prevent courts from performing essential gatekeeping functions. But Plaintiff's use of a pseudonym here had no such effect; nor did it pose any prejudice to Defendants, as they themselves concede. *See* Appellants' Br. at 37.

Rather than acknowledge the unduly severe consequences of their proposed rule, Defendants instead question why Plaintiff and her lawyers "inexplicably" waited so long to file suit. *See* Appellants' Br. at 40. This self-proclaimed surprise only underscores Defendants' failure to appreciate the significant obstacles student survivors of sexual violence must overcome to file a Title IX lawsuit in the first place. As government actors required to abide by Title IX, Defendants' failure to understand these realities is troubling. Fearing revictimization, retaliation, social stigma, and being disbelieved or blamed, survivors are often hesitant to make their claims known, which can result in a court filing near the close of a limitations period. Also, when survivors do choose to come forward, the option to use a pseudonym is critical. Pseudonyms allow survivors to pursue their Title IX claims while protecting their privacy, which can mitigate some factors that may deter survivors from pursuing their claims in court. Punishing survivors for unwritten procedural

8

technicalities in bringing a case by pseudonym undermines the protections of Title IX for those who need it most.

*Amici* thus urge the Court to affirm that Plaintiff's filing of a pseudonymous complaint prior to obtaining leave of court is not a jurisdictional defect, thereby allowing Plaintiff to move forward with her Title IX claims. To the extent the Court considers the applicable limitations period, *Amici* ask the Court to apply Virginia's twenty-year statute of limitations period for sexual assault against a minor.

## **ARGUMENT**

### **I.    FEDERAL RULE OF CIVIL PROCEDURE 10 IS NOT JURISDICTIONAL AND DOES NOT STRIP SURVIVORS OF ACCESS TO THE COURTS.**

The Supreme Court recognizes that Title IX contains a directive—prohibiting sex discrimination in federally funded schools—and this directive should be accorded a sweep as broad as its language. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982). Defendants instead ask the Court to undermine Title IX's broad intent in two ways: first, by characterizing an unwritten procedural technicality relating to the use of pseudonyms as a jurisdictional flaw; and, second, by imposing a two-year statute of limitations rather than Virginia's applicable twenty-year

limitations period.  Punishing sexual assault survivors who often need the full limitations period before filing a Title IX lawsuit, or unnecessarily cutting that period short, would fly in the face of this statute's broad protections.

### A.   Rule 10's requirement to "name all the parties" does not include a jurisdictional component, and the Court should not read one into the Rule.

Defendants' interpretation of Rule 10 is inconsistent with the language of the Rule, and also sets a trap for student survivors and other civil rights plaintiffs who are more likely to proceed anonymously and file closer to the expiration of the limitations period.  Rule 10(a) requires pleadings to be captioned with a title, and "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Rule 10(a) says nothing about this requirement being jurisdictional.  Nor does it characterize a failure to caption a pleading with a party's legal name as a jurisdictional flaw or discuss whether a failure to properly caption a proceeding precludes an amended complaint from relating back to the initial complaint.  To the contrary, the Rules specify that they "do not extend or limit the jurisdiction of the district courts…." Fed. R. Civ. P. 82.  Courts do not infer a requirement is jurisdictional in nature absent some express

instruction, *see Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161–62 (2010); here, the Rules make clear that they are not jurisdictional in nature. Fed. R. Civ. P. 82. Indeed, the Supreme Court agrees that "[c]ourt-prescribed rules of practice and procedure for cases in federal district courts . . . do not create or withdraw federal jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004).

Moreover, the Rules themselves reinforce that express identification of the party in interest is *not required* to commence a case. For example, Rule 5.2(a) requires parties to identify minors by their initials in all papers filed with a court. Fed. R. Civ. P. 5.2(a). In this way, the Rules recognize that pseudonyms play a critical role in protecting the privacy of vulnerable plaintiffs while offering an avenue for those plaintiffs to come forward and vindicate their rights.

Similarly, courts have long recognized that certain circumstances warrant pseudonym protection for non-minors. Courts in this Circuit assess a variety of factors, including:

> whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting

11

party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Even a cursory review of the *Jacobson* factors makes clear that Plaintiff's privacy interest is of the type pseudonyms are designed to protect. The nature of Title IX claims and the facts that would be necessary to support those claims distinguish victims of sexual harassment and abuse from other civil rights plaintiffs who might seek to use pseudonyms.

Although courts permit parties to proceed anonymously in the circumstances described above, the mechanics of that approval process are not detailed in the Federal Rules. Rule 10(a) is silent on whether a court's permission to proceed under a pseudonym is required, let alone when such permission must be granted. And there are no clear rules on when a court must decide this question or how a party might appeal such a decision.

This lack of procedural clarity around the naming requirement renders Defendants' interpretation of Rule 10(a) a trap for less

12

sophisticated civil rights plaintiffs.  It is also dangerous.  It would allow Defendants to hide from serious allegations of sexual assault behind a technicality.  Future survivors who file close to the expiration of the limitations period could find themselves unwittingly deprived of the chance to seek relief because of Defendants' arguments concerning *unwritten* procedural technicalities.  Sexual assault survivors may suffer disproportionately in this regard, as trauma and other barriers can lead to delayed reporting.[3]  Survivors may wrestle with the decision to file suit, only to do so and then be told they cannot proceed at all due to unwritten procedural technicalities associated with using a pseudonym.  Indeed, that is the message Defendants convey to Plaintiff and others.

### B.     Plaintiff's legal name has no bearing on jurisdiction.

Jurisdiction in this case does not turn on Plaintiff's legal identity.  Nor is it even a close question.  Defendants do not contend otherwise.  Jurisdiction is assessed by facts in existence at the time the complaint is filed.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992).  Here, Plaintiff's original complaint provided more than sufficient information

---

[3] *See infra* Section III.

13

to substantiate jurisdiction over both her and her claims.  Her complaint alleged, among other claims, violations of Title IX of the Education Amendments of 1972, 86 Stat. 373, 20 U.S.C. §§ 1681–1688.  J.A. 18 ¶ 31. She also pleaded sufficient facts to demonstrate her right to invoke Title IX, including that she was a seventh-grade student at a public middle school in F.C.S.B.'s district during the 2011–2012 school year.  J.A. 14– 18 ¶¶ 1, 14, 31.  The recitation of facts in support of Plaintiff's Title IX claim allowed the district court to readily assess federal-question subject-matter jurisdiction over the case and personal jurisdiction over Plaintiff.[4] As the district court concluded, "Plaintiff's failure to include her name in her Original Complaint does not divest this Court of subject matter jurisdiction in a case premised on a question of federal law."  J.A. 197.

Defendants' contention that a plaintiff's decision to file with a pseudonym at the outset disrupts a court's essential gatekeeping functions is false.  Every complaint must plead sufficient facts to

---

[4] Additionally, for all the ink Defendants spill on the need to assess personal jurisdiction over a given, named plaintiff, personal jurisdiction can be waived, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005), such as when a plaintiff elects to file a lawsuit in a particular court.

14

establish jurisdiction—a pseudonymous complaint is no exception. And as Plaintiff's complaint demonstrates here, a plaintiff can plead sufficient facts to establish subject-matter and personal jurisdiction without including her legal name.

## C. Defendants' attempt to write a jurisdictional requirement into Rule 10 where none exists is an evasion of their Title IX obligations.

Title IX obligates schools that receive federal assistance to take steps to prevent and address sexual harassment, or be liable for their own misconduct. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999). In *Davis,* the Court held that the school district defendant failed to address sexual harassment when school officials ignored multiple reports over many months by a fifth-grade student that her classmate was repeatedly sexually harassing and assaulting her. *Id.* at 633–34.

Likewise, Plaintiff has credibly alleged that Defendants did nothing to assist her the numerous times she sought help. Instead, they "brushed off her complaint as a 'boy-girl thing'"; advised her "not to 'ruin a young man's life'"; dismissed threats against Plaintiff as "just something kids say"; and overall ignored their obligation to conduct a thorough

15

investigation.   J.A. 15–18 ¶¶ 13–29.   Defendants "did nothing to safeguard" Plaintiff from the "horrific environment and the discrimination she suffered" that adversely affected her educational experience.  J.A. 14–33 ¶¶ 2, 14, 164.

Defendants seek to evade Title IX liability through dismissal of Plaintiff's case on the basis of an unwritten procedural technicality.  This sets a grave precedent that would allow such technicalities to block meritorious claims.  Defendants unsuccessfully attempt to frame the "harshness" of their desired outcome as a "necessary byproduct of any 'jurisdictional prerequisite.'"  Appellants' Br. at 39.  But anyone who reviews Rule 10 knows that is not the case. Defendants appeal to "administrative simplicity," "bright line rules," and the specter of "John Doe" lawsuits filed on behalf of "non-existent person[s]," *id.* at 37–41, because Defendants cannot win on the facts of *this* case.  Plaintiff's complaint demonstrates—without question—that she is entitled to present a claim under Title IX in a federal district court.  Dismissal here is emphatically not a "necessary byproduct of any 'jurisdictional prerequisite,'" because the federal district court *has* jurisdiction over Plaintiff's suit regardless of the caption on her case.

Therefore, Rule 10 should not be interpreted to require dismissal, especially in light of Title IX's broad civil rights protections.

## II. DEFENDANTS' PREFERRED STATUTE OF LIMITATIONS IS UNDULY NARROW AND WOULD CURTAIL THE BROAD PROTECTIONS OF TITLE IX.

Defendants would further unnecessarily and severely undermine the availability of Title IX relief by applying Virginia's generic two-year statute of limitations for personal injury claims, Va. Code Ann. § 8.01-243(A) (Supp. 2020), over the more specific twenty-year limitations period for actions for personal injury "resulting from sexual abuse occurring during the infancy or incapacity of the person...."  Va. Code Ann. § 8.01-243(D) (Supp. 2020).  In so doing, Defendants primarily rely on *Owens v. Okure*, 488 U.S. 235 (1989), which only considered the statute of limitations for *Section 1983* claims that are not at issue here. Appellants' Br. at 41–42.  But the Fourth Circuit has not definitively extended *Owens* to Title IX claims.  As Plaintiff's brief explains, the Fourth Circuit has not reflexively applied the residual personal injury statute of limitations in other Title IX cases.  Appellee's Br. at 55–58.  In light of Title IX's civil rights purpose and broad remedial sweep, it is more appropriate in this case to apply the statute of limitations specific to

17

sexual assault experienced as a minor, rather than the more general statute of limitations for personal injury claims.

Without an express statute of limitations, courts follow "the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983). Here, "the most closely analogous [state statute of] limitations," is Virginia's twenty-year limit for claims of sexual assault experienced as a minor.[5] *See* Va. Code Ann. § 8.01-243(D) (Supp. 2020). The only Fourth Circuit decision Defendants cite in support of their two-year statute of limitations concerns a case from West Virginia, decided *before* that state expanded its statute of limitations for sexual assault experienced as a minor to eighteen years after reaching the age of majority or four years from discovery of the abuse, whichever is later. *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294 (4th Cir. 2007); W. Va. Code § 55-2-15(a) (amended 2020). Accordingly, at that time, West Virginia's two-year personal-injury statute of limitations was the closest applicable analogy. *Id.* at 296 (citing W. Va. Code § 55-2-15). Moreover, because the

---

[5] *See* Appellee's Br. at 55–58.

applicable statute of limitations was not in dispute, the Fourth Circuit treated it accordingly, making only brief reference in a footnote.[6] Virginia, by contrast, has a twenty-year statute of limitations specific to the injury alleged in Plaintiff's complaint.  Applying that period here ensures Title IX is accorded its broadest intended reach.[7]

## III. COURTS SHOULD NOT NEEDLESSLY COMPLICATE THE USE OF PSEUDONYMS FOR SURVIVORS OF SEXUAL ASSAULT, A VULNERABLE POPULATION THAT FACES

---

[6] *Wilmink*, 214 F. App'x at 296 n.3 (referencing the statute of limitations in dicta).  Should the Court consider this issue directly, *Amici* urge it to apply Virginia's twenty-year statute of limitations to Title IX claims arising out of sexual assault experienced as a minor.  *See, e.g., Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.*, No. 1:20-CV-01695, 2021 WL 1334199 (N.D. Ohio Apr. 9, 2021) (distinguishing *Owens* to apply Ohio's twelve-year statute of limitations for claims of child sexual assault for a Title IX claim over a general two-year personal injury actions period); *see also Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x 140 (4th Cir. 2006) (applying the most analogous statute of limitations in lieu of the general personal injury limitations period).  *But see Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702 (E.D. Va. 2019). While other courts have applied the general personal injury period to Title IX claims arising from child sexual assault, their findings offer little relevant guidance if a more applicable statute of limitations was not available for consideration as is the case here.

[7] *Broughman v. Carver*, 624 F.3d 670, 676 (4th Cir. 2010) (explaining that under the canon of statutory construction providing that "the specific governs the general," specific terms prevail over general terms in the same or *another* statute which otherwise control).

**MULTIPLE BARRIERS TO REPORTING THEIR CLAIMS AND OFTEN RELY ON PSEUDONYMS TO DO SO.**

**A.    Survivors of sexual assault, including those who were minors at the time of their assault, already face multiple barriers to bringing legal claims and should not be further prejudiced by unwritten procedural technicalities.**

Sexual assault survivors encounter significant barriers in holding accountable those who were complicit in their abuse.  A robust body of research has catalogued numerous factors that cause survivors to delay reporting their abuse and to file complaints using a pseudonym.  The lived experiences of Plaintiff, and others like her, reveal how Defendants' proposed, legally unsound positions could place Title IX protections out of reach for survivor-plaintiffs.

Sexual harassment and assault are disturbingly prevalent among students enrolled in K–12 schools and higher education programs.  Fifty-six percent of girls and forty percent of boys in grades 7–12,[8] and over half (fifty-eight percent) of LGBTQ youth ages 13–21 experience sexual

---

[8] Am. Ass'n of Univ. Women, *Crossing the Line: Sexual Harassment at School* 2 (2011) [hereinafter AAUW Sexual Harassment Report], https://www.aauw.org/app/uploads/2020/03/Crossing-the-Line-Sexual-Harassment-at-School.pdf.

harassment.[9]  Among girls ages 14 to 18, one in five have been kissed or touched without their consent.[10]  This includes more than one in three LGBTQ girls[11] and more than half of all pregnant or parenting girls[12] and girls with disabilities.[13]  One in sixteen girls ages 14–18 have been raped.[14]  This number increases to one in ten for Black and Native girls

---

[9] GLSEN, *The 2019 National School Climate Survey* xviii, xix, 30 (2020) [hereinafter GLSEN Climate Survey], https://www.glsen.org/research/2019-national-school-climate-survey.

[10] Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for Girls Who Have Suffered Harassment and Sexual Violence* 1 (2017) [hereinafter NWLC Sexual Harassment Report], https://nwlc.org/resources/stopping-school-pushout-for-girls-who-have-suffered-harassment-and-sexual-violence.

[11] Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for LGBTQ Girls* 3 (2017), https://nwlc.org/resources/stopping-school-pushout-for-lgbtq-girls.

[12] Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for Girls Who Are Pregnant or Parenting* 12 (2017), https://nwlc.org/resources/stopping-school-pushout-for-girls-who-are-pregnant-or-parenting.

[13] Nat'l Women's Law Ctr., *Let Her Learn: Stopping School Pushout for Girls with Disabilities* 7 (2017), https://nwlc.org/resources/stopping-school-pushout-for-girls-with-disabilities.

[14] NWLC Sexual Harassment Report, *supra* note 10, at 3.

and one in seven for LGBTQ girls.[15]

For college-age students, the numbers are even more staggering. An estimated sixty-two percent of women and sixty-one percent of men experience sexual harassment in college.[16]  And approximately one in four women, one in four transgender or gender-nonconforming students, and one in fifteen men are sexually assaulted while in college.[17] Historically marginalized groups, including women, students of color, LGBTQ students, and students with disabilities, are more likely to experience sexual harassment and assault.[18]

---

[15] *Id.*

[16] Catherine Hill & Elena Silva, *Drawing the Line: Sexual Harassment on Campus*, AAUW 17, 19 (2005), https://www.aauw.org/app/uploads/2020/02/AAUW-Drawing-the-line.pdf.

[17] Ass'n of Am. Univs., *Report on the AAU Campus Climate Survey on Sexual Assault and Misconduct*, ix (Oct. 15, 2019) [hereinafter AAU Campus Report], https://www.aau.edu/key-issues/campus-climate-and-safety/aau-campus-climate-survey-2019.

[18] *See, e.g.*, *id.* at ix–x; Alicia Sanchez Gill, A. Warren, Lucane LaFortune & Shiwali Patel, *Women and Girls of Color Need Justice Too*, Rewire.News (Jan. 14, 2019), https://rewire.news/article/2019/01/14/women-and-girls-of-color-need-justice-too; *supra* note 13, at 7.

Few students who experience sexual harassment or assault ever report it. Less than one in ten students in grades 7–12 who are sexually harassed inform a teacher, guidance counselor, or other school employee about the harassment.[19] Only two percent of girls ages 14–18 who are kissed or touched without their consent ever report the unwanted physical contact to their schools.[20] And just eleven percent of college student survivors report assault or other sexual misconduct to campus authorities.[21]

Survivors may suffer considerable trauma from the underlying event, which also contributes to low rates of reporting. Survivors are often met with overwhelming flashbacks, along with nightmares, insomnia, and pervasive feelings of terror that pose serious disruptions to daily life.[22] For Plaintiff, the numerous sexual assaults and torture

---

[19] AAUW Sexual Harassment Report, *supra* note 8, at 27.

[20] NWLC Sexual Harassment Report, *supra* note 10, at 2.

[21] AAU Campus Report, *supra* note 17, at xv.

[22] Letter from 903 Mental Health Professionals and Trauma Specialists to Ass't Sec'y Kenneth L. Marcus at 2 (Jan. 30, 2019), https://nwlc.org/wp-content/uploads/2019/01/Title-IX-Comment-from-Mental-Health-Professionals.pdf.

she experienced caused her "to suffer permanent physical, neurological, emotional, and psychological injuries for which she requires ongoing medical and psychiatric care." J.A. 17 ¶ 23. Any reminder of the event can provoke survivors' symptoms and interfere with their ability to concentrate on other aspects of life.[23] Thus, reliving an event by reporting what happened or having to face one's abuser can be particularly salient and painful reminders of the underlying trauma.

In addition to existing trauma, student survivors also fear how they will be treated if and when they come forward, further contributing to low rates of reporting. Potential negative feedback comes in multitudes: fear of retaliation; belief that their abuse was not "serious enough";[24] feeling "embarrassed, ashamed or [that reporting] would be too emotionally difficult";[25] thinking no one will help them;[26] fearing that

---

[23] *See id.*

[24] AAU Campus Report, *supra* note 17, at 30–31.

[25] *Id.*

[26] RAINN, *Campus Sexual Violence: Statistics,* https://www.rainn.org/statistics/campus-sexual-violence.

reporting the conduct will make the situation even worse;[27] and fearing discipline by their school or being afraid of public authorities like the police or immigration officials.[28]  A survey of judges who presided in sexual assault cases for the National Judicial Education Program reported similar concerns that led to delayed reporting.[29]

Survivors' fears of retaliation are credible and well-grounded. When students summon the courage to report sexual harassment to their schools, they are often ignored, disbelieved, or even punished, a sad reality that can make survivors feel even more helpless and without recourse.  For example, school administrators often dismiss reports of

---

[27] GLSEN Climate Survey, *supra* note 9, at 32.

[28] Nat'l Women's Law Ctr., *100 School Districts: A Call to Action for School Districts Across the Country to Address Sexual Harassment Through Inclusive Policies and Practices* 2 (Apr. 2021), https://nwlc.org/resources/100-school-districts-a-call-to-action-for-school-districts-across-the-country-to-address-sexual-harassment-through-inclusive-policies-and-practices.

[29] Lynn H. Schafran & Claudia Bayliff, *Judges Tell: What I Wish I Had Known Before I Presided in an Adult Victim Sexual Assault Case* 7–8, National Judicial Education Program (2011), https://www.legalmomentum.org/library/judges-tell-what-i-wish-i-had-known-i-presided-adult-victim-sexual-assault-case.

sexual harassment or assault as "consensual" sexual activity[30] or a "false" accusation.[31] Indeed, Defendants made similar excuses when Plaintiff reported her abuse. J.A. 15 ¶¶ 13–14. After Plaintiff reported her abuse to various school officials, she was dismissed and even blamed by Defendants. *See* J.A. 14–42 ¶¶ 5, 213. Even in this litigation, Plaintiff again "expects to endure the same treatment at the hands of [Defendants] that she faced when she was 12-years-old." J.A. 15 ¶¶ 6–10.

---

[30] *See, e.g.*, Alyssa Hyman, *Teen who says she was expelled after reporting sexual assault now suing district*, WSB-TV (Aug. 27, 2019), https://www.wsbtv.com/news/local/teen-sexually-assaulted-by-another-student-now-suing-district-over-expulsion/979639347; Brian Entin, *Miami Gardens 9th-grader says she was raped by 3 boys in school bathroom*, WSVN-TV (Feb. 8, 2018), https://wsvn.com/news/local/miami-gardens-9th-grader-says-she-was-raped-by-3-boys-in-school-bathroom; Nora Caplan-Bricker, *"My School Punished Me"*, SLATE (Sept. 19, 2016), https://slate.com/human-interest/2016/09/title-ix-sexual-assault-allegations-in-k-12-schools.html; Aviva Stahl, *'This Is an Epidemic': How NYC Public Schools Punish Girls for Being Raped*, VICE (June 8, 2016), https://broadly.vice.com/en_us/article/59mz3x/this-is-an-epidemic-how-nyc-public-schools-punish-girls-for-being-raped.

[31] Dave Bangert, *Lawsuit: Pursue accused of 'chilling' retaliation on women who reported sexual assaults*, J. & COURIER (Nov. 15, 2018), https://www.jconline.com/story/news/2018/11/14/purdue-accused-chilling-retaliation-sexual-assault-reports/2003101002.

Students who are sexually harassed are also often punished for physically defending themselves against their harassers; for reacting to harassment-induced trauma by acting out in age-appropriate ways;[32] for missing school to avoid their harasser; or for merely talking with other students about the harassment.[33]   Schools are also more likely to disbelieve and punish girls of color (especially Black girls) for reporting their assaults.[34]  Similarly, students of color, LGBTQ students, pregnant and parenting students, and students with disabilities are often tagged with unfounded stereotypes that condemn them as "promiscuous," less

---

[32] NAACP Legal Defense and Educ. Fund, Inc. & Nat'l Women's Law Ctr., *Unlocking Opportunity for African American Girls: A Call to Action for Educational Equity* 20, 25 (2014) [hereinafter African American Girls Report], https://nwlc.org/wp-content/uploads/2015/08/unlocking_opportunity_for_african_american_girls_report.pdf.

[33] *See, e.g.*, Tyler Kingkade, *When Colleges Threaten To Punish Students Who Report Sexual Violence*, HUFFINGTON POST (Sept. 9, 2015), https://www.huffingtonpost.com/entry/sexual-assault-victims-punishment_us_55ada33de4b0caf721b3b61c.

[34] *See, e.g.*, Tyler Kingkade, *Schools Keep Punishing Girls—Especially Students of Color—Who Report Sexual Assaults, and the Trump Administration's Title IX Reforms Won't Stop It*, THE74MILLION (Aug. 6, 2019), https://www.the74million.org/article/schools-keep-punishing-girls-especially-students-of-color-who-report-sexual-assaults-and-the-trump-administrations-title-ix-reforms-wont-stop-it/.

27

credible, and/or less deserving of protection.[35]    These patterns are particularly disturbing given that these marginalized student groups are more at greater risk for sexual harassment and assault.

Under- or delayed reporting is also widespread because sexual assault survivors fear retaliation from their abusers and/or peers.  After reporting the abuse, Plaintiff lived in fear of retaliation from her abusers and "received an increased number of death threats directed to her and her family for 'snitching.'"  J.A. 43–50 ¶¶ 218, 259.  Abusers are also increasingly using legal tools, like defamation lawsuits, to silence survivors, to retaliate against those who speak out, and to perpetuate the cycle of abuse.[36]

---

[35] *See, e.g.*, Nancy Chi Cantalupo, *And Even More of Us Are Brave: Intersectionality & Sexual Harassment of Women Students of Color*, 42 HARVARD J.L. & GENDER 16, 24–29 (May 1, 2018), https://ssrn.com/abstract=3168909; African American Girls Report, *supra* note 32, at 20; The Arc, *People with Intellectual Disabilities and Sexual Violence* 2 (Mar. 2011), https://www.thearc.org/document.doc?id=3657.

[36] Madison Pauly, *She Said, He Sued*, Mother Jones (Mar. 2020), https://www.motherjones.com/crime-justice/2020/02/metoo-me-too-defamation-libel-accuser-sexual-assault; Mark Mulholland & Elizabeth Sy, *Victim Defamation Claims in the Era of #MeToo*, 260 NYLJ 23, Aug. 2, 2018 at 1.

In other instances, an assailant's friends or allies will embark on a harassment campaign against a student survivor who comes forward. This was illustrated in *Florida Star v. B. J. F.*, where the survivor-plaintiff's mother "received several threatening phone calls from a man who stated that he would rape [her daughter] again," which "forced [plaintiff] to change her phone number and residence, to seek police protection, and to obtain mental health counseling." 491 U.S. 524, 528 (1989). In another example, after reporting a rape by a popular football player, one survivor and her family were forced to move to another town as a result of pervasive threats and harassment from the local community.[37] Tragically, both the student and her mother died by

---

[37] Margaret Stafford, *Daisy Coleman, advocate featured in Netflix documentary on sexual assault, dies at 23*, ASSOCIATED PRESS (Aug. 7, 2020), https://www.post-gazette.com/news/obituaries/2020/08/06/Daisy-Coleman-dies-suicide-23-subject-Netflix-documentary-sexual-assault-Audrie/stories/202008060179; John Eligon, *High School Sexual Assault Case Is Revisited, Haunting Missouri Town*, N.Y. TIMES (Oct. 19, 2013), https://www.nytimes.com/2013/10/20/us/high-school-sexual-assault-case-is-reopened-haunting-missouri-town.html.

29

suicide in 2020,[38] a devastating development that reflects the stress imposed on survivors and their families following public reporting of abuse. Unsurprisingly, when survivors are able to report, it is often well after the abusive events in question.

Even so, when survivors do report sexual harassment and assault, including by filing a lawsuit, the subsequent negative social or societal reactions can retraumatize the survivor—a process known as "secondary victimization."[39] For example, survivors often face negative experiences when seeking legal assistance in relation to the abuse. Rape survivors have reported that contact with legal system personnel led them to feel: bad about themselves (87%); depressed (71%); violated (89%); distrustful of others (53%); and reluctant to seek further help (80%).[40] Contacting

---

[38] Lisa Gutierrez, *Daisy Coleman's mom grieved for 4 months. Then, like her daughter, she died by suicide*, THE KANSAS CITY STAR (Dec. 7, 2020) https://www.kansascity.com/news/local/article247669465.html.

[39] Uli Orth, *Secondary Victimization of Crime Victims by Criminal Proceedings,* SOC. JUST. RES. 15(4): 313–25 (Dec. 2002), https://www.ojp.gov/library/abstracts/secondary-victimization-crime-victims-criminal-proceedings.

[40] Rebecca Campbell, *The Psychological Impact of Rape Victims' Experiences With the Legal, Medical, and Mental Health Systems*, 63 AM. PSYCHOLOGIST 702, 705 (2008).

government agencies—including the police—was more likely to result in negative reactions, which, in turn, were associated with increased PTSD symptoms.[41] Further victimization can cause sexual assault survivors to experience an array of physical and mental health problems, including anxiety, depression, weight change, sleep problems, and other traumatic reactions.[42] Together, these factors contribute to the extremely low rate of reporting, or delayed reporting, by sexual assault survivors.

Given this context, the additional procedural roadblock proposed by Defendants would disproportionately—and adversely—affect plaintiffs, like B.R., who are more likely to file lawsuits near the expiration of the statute of limitations because of the risks described herein. Consequently, Defendants' misinterpretation of Rule 10 would reinforce survivors' feelings of helplessness and the futility of coming forward by

---

[41] *Id* at 707.

[42] Chelsea Spencer, et al., *Why Sexual Assault Survivors Do Not Report to Universities: A Feminist Analysis,* FAM. REL.: INTERDISC. J. APPLIED FAM. STUD. (Feb. 2017), at 166.

31

unnecessarily punishing sexual assault survivors for an unwritten procedural technicality.[43]

### B. The privacy protection offered by pseudonyms is crucial in encouraging survivors of sexual assault to come forward.

Courts already recognize that pseudonyms offer vulnerable plaintiffs, such as survivors of sexual assault, critical privacy protection.[44] Without the use of pseudonyms, "victims are put to this Hobson's choice:  seek justice but open one's life to public scrutiny or let injustices stand while preserving one's privacy."[45] Plaintiff's situation

---

[43] *See supra* Section III.A at pp. 25–28.

[44] *See supra* Section I.A. Defendants continue to take issue with Plaintiff's use of pseudonyms without first obtaining leave from court while enjoying the privacy protections of proceeding via pseudonyms they received *sua sponte* from the court without moving for such. *See* J.A. 221 (allowing each party to use initials "given the nature of the charges and the serious implications that these allegations hold," noting privacy concerns for college students Defendants C.K. and J.O. and for Individual School Defendants "whose professional reputation may very well be soiled by the claims presented").

[45] Meg Garvin, Alison Wilkinson, & Sarah LeClair, *Protecting Victim's Privacy Rights: The Use of Pseudonyms in Civil Law Suits*, NCVLI Violence Against Women Bulletin (July 2011), https://law.lclark.edu/live/files/11778-protecting-victims-privacy-rights-the-use-of.

highlights the tangible, real-life impact of Defendants' Rule 10 interpretation when compared to their theoretical harms, all of which are readily resolved by a well-pleaded complaint. They would have survivors punitively stripped of the right to pursue their claims for failing to adhere to some unwritten procedural technicality.

For many survivors, the disclosure of information and the "public revelation of the abuse" can re-victimize the individual and "slow the victim's healing process."[46] The option to use a pseudonym is thus crucial for all sexual assault victims, regardless of the age at which the abuse occurred,[47] but can be particularly important for survivors who experienced sexual assault as minors, like Plaintiff. Experts have noted,

---

[46] *See id.* at 2–3.

[47] "Both adults and children can suffer psychological and physical harm from public disclosure of their identity in a sexual abuse case." *See* Patrick Noaker, *Using Pseudonyms in Sexual Abuse Cases*, 69 BENCH & B. MINN. 16, 18 (2012).

"there is . . . nothing as potentially devastating to a plaintiff than to have [childhood sexual] abuse publicly exposed."[48]  And courts agree.[49]

The dominance of social media and the internet increases the need for privacy.  The internet freezes time, allowing abuse to publicly follow a survivor for years, if not indefinitely.  This can have long-lasting effects on a survivor's mental well-being, reputation, and prospects for higher education or employment.  An individual survivor's trauma can also easily be spread out of the survivor's control through rapid and wide-reaching social networking platforms, going "viral" in the hands of social media users.  Without anonymity in their court filing, survivors of sexual violence may be subjected to additional and ongoing harassment,

---

[48] Andrea A. Curcio, *Rule 412 Laid Bare: A Procedural Rule That Cannot Adequately Protect Sexual Harassment Plaintiffs From Embarrassing Exposure*, 67 U. Cin. L. Rev. 125, 155–56 (1998).

[49] *See* Noaker, *supra* note 47, at 17; *see also Plaintiff B v. Francis*, 631 F.3d 1310, 1319 (11th Cir. 2011); Garvin, et al., *supra* note 46, at 2 (citing *Doe v. Firn*, No. CV065001087S, 2006 WL 2847885, at *5 (Conn. Super. Ct. Sept. 22, 2006) ("[t]o force the plaintiff to proceed without the protection of the pseudonym Jane Doe could only subject the plaintiff to additional psychological harm and emotional distress.")).

including online bullying.[50]    Online victimization[51] compounds the already lasting effects of trauma for victims.

Our justice system recognizes these unfortunate realities, and does not force survivors to choose between unnecessary public exposure and vindicating their civil rights to address sexual assault. *Amici* urge this Court not to construe a jurisdictional requirement where none exists. Holding survivor-plaintiffs to Defendants' requested unwritten procedural standards would unfairly punish survivors who seek justice.

---

[50] *See, e.g.*, *supra* note 38 (reporting on deaths by suicide of young survivor and her mother as a consequence of online bullying by community after survivor reported sexual assault).

[51] *Cf.* Kimberly J. Mitchell, Michele Ybarra & David Finkelhor, *The relative importance of online victimization in understanding depression, delinquency, and substance use*, CHILD MALTREAT. 12(4): 314–24 (Nov. 2007), https://pubmed.ncbi.nlm.nih.gov/17954938/.

## **<u>CONCLUSION</u>**

For these reasons, this Court should affirm the judgment below and

allow Plaintiff B.R.'s case to proceed.


Dated: April 22, 2020                    Respectfully submitted,

Emily Martin                             <u>/s/ Emily P. Mallen</u>
Sunu P. Chandy                           Emily P. Mallen
Neena Chaudhry                           Kimberly Leaman
Shiwali Patel                            Elizabeth T. MacGill
Elizabeth Tang                           Katy (Yin Yee) Ho
NATIONAL WOMEN'S LAW CENTER              SIDLEY AUSTIN LLP
11 Dupont Circle N.W., Suite 800         1501 K Street, N.W.
Washington, DC 20036                     Washington, D.C. 20005
Tel: (202) 588-5180                      Tel: (202) 736-8000
Fax: (202) 588-5185                      Fax: (202) 736-8711
                                         emallen@sidley.com

## **CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Appellate Procedure 29(a)(4)(g), I certify that:

This brief complies with Rule 29(a)(5)'s type-volume limitation because it contains 6,488 words, as determined by the Microsoft Word 2016 word-processing system used to prepare the brief, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with Rule 32(a)(5)'s typeface requirements and Rule 32(a)(6)'s type-style requirements because it has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Century Schoolbook font.

/s/ Emily P. Mallen
Emily P. Mallen

## CERTIFICATE OF SERVICE

I certify that I caused this document to be electronically filed with the Clerk of the Court using the appellate CM/ECF system on April 22, 2021. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Emily P. Mallen
Emily P. Mallen