No. 21-1005

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

B.R., *Plaintiff-Appellee*,

v.

F.C.S.B., S.T., A.F., P.A.H.,
T.B., B.H., M.P., M.C., F.T., J.F., C.K., J.O., *Defendants-Appellants.*

_____

On Interlocutory Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:19-cv-00917-RDA-TCB)

_____

# REPLY BRIEF

_____

Michael E. Kinney
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Suite 120
Reston, VA 20191
703-956-9377
Fax: 703-956-9634
mk@kinneyesq.com

*Counsel for Defendants-
Appellants S.T., A.F., P.A.H.,
T.B., B.H., M.P., M.C., F.T.,
and J.F.*

Stuart A. Raphael
Sona Rewari
Ryan M. Bates
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2021
Fax: 202-828-3728
sraphael@HuntonAK.com
srewari@HuntonAK.com
rbates@HuntonAK.com

*Counsel for Defendant-Appellant
F.C.S.B.*

*(Additional counsel and parties inside cover)*

May 19, 2021

Bruce M. Blanchard
James Paul Menzies Miller
ODIN, FELDMAN &
PITTLEMAN, PC
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
703-218-2100
Fax: 703-218-2160
bruce.blanchard@ofplaw.com
jim.miller@ofplaw.com

*Counsel for Defendant-Appellant
J.O.*

James F. Davis
JAMES F. DAVIS, P.C.
10513 Judicial Dr., Ste. 200
Fairfax, VA 22030
703-383-3110
Fax: 571-748-6564
jfd@jfdavislaw.com

*Counsel for Defendant-
Appellant C.K.*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ...............................................................................1

ARGUMENT .......................................................................................2

I.     The statute of limitations for Title IX claims is the personal-injury limitations period. .....................................................................2

II.    Section 1653 does not save Plaintiff's federal claims because she was not granted leave to proceed pseudonymously until after the limitations period expired. ...................................................................10

III.   The plaintiff-identification requirement is jurisdictional, not a waivable claim-processing rule. ......................................................11

      A.    The jurisdictional requirement is consistent with Rule 10 but does not depend on it. ...........................................................11

      B.    The plaintiff-identification requirement is supported by the weight of sister-circuit authority. .............................................16

      C.    Rule 5.2 does not demonstrate that the plaintiff-identification requirement is non-jurisdictional. .......................................19

      D.    Plaintiff cannot explain why, if the plaintiff-identification requirement is a claim-processing rule, the defect is not waivable.........................20

IV.   Plaintiff's parade of horribles and policy arguments are without merit........22

      A.    The jurisdictional requirement does not expose final judgments to collateral attack..........................................................22

      B.    Requiring plaintiffs to identify themselves to the district court is a simple requirement that is easily followed and is not inequitable......24

CONCLUSION ...................................................................................27

CERTIFICATE OF COMPLIANCE.......................................................................29

CERTIFICATE OF SERVICE ...........................................................................29

ii

# TABLE OF AUTHORITIES

**Page**

### Cases

*A.W. v. Tuscaloosa City Sch. Bd. of Educ.*,
  744 F. App'x 668 (11th Cir. 2018)................................................19

*Anderson v. City of Minneapolis*,
  No. 16-cv-04114 (SRN/FLN), 2018 WL 1582262 (D. Minn. Mar. 30, 2018),
  *aff'd*, 934 F.3d 876 (8th Cir. 2019),
  *cert. denied*, 141 S. Ct. 110 (2020)................................................18

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006)................................................9

*Baker v. Bd. of Regents*,
  991 F.2d 628 (10th Cir. 1993) ................................................5

*Bougher v. Univ. of Pittsburgh*,
  882 F.2d 74 (3d Cir. 1989) ................................................5

*Bowles v. Russell*,
  551 U.S. 205 (2007)................................................14

*Cannon v. Univ. of Chi.*,
  441 U.S. 677 (1979)................................................6

*Capers v. Nat'l R.R. Passenger Corp.*,
  673 F. App'x 591 (8th Cir. 2016)................................ 16, 17

*Citizens for a Strong Ohio v. Marsh*,
  123 F. App'x 630 (6th Cir. 2005)................................ 16, 17

*City of Rancho Palos Verdes v. Abrams*,
  544 U.S. 113 (2005)................................................3

*Coleman v. Miller*,
  307 U.S. 433 (1939)................................ 13, 14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  657 F.3d 936 (9th Cir. 2011) ................................................10

*Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.)*,
  147 F.3d 347 (4th Cir. 1998) ................................................23

*Curto v. Edmundson*,
    392 F.3d 502 (2d Cir. 2004) .............................................................5

*Davis v. Monroe Cty. Bd. of Educ.*,
    526 U.S. 629 (1999)...........................................................................9

*Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.*,
    No. 1:20-CV-01695, 2021 WL 1334199 (N.D. Ohio Apr. 9, 2021)..............8

*Doe v. Bd. of Educ.*,
    888 F. Supp. 2d 659 (D. Md. 2012).............................................7

*Doe v. Fairfax Cty. Sch. Bd.*,
    403 F. Supp. 3d 508 (E.D. Va. 2019) ......................................8, 26

*Doe v. Kan. State Univ.*,
    No. 2:20-cv-02258-HLT-TJJ, 2021 WL 84170 (D. Kan. Jan. 11, 2021)......17

*Doe v. Mitchell*,
    No. 2:20-cv-00459, 2020 WL 6882601 (S.D. Ohio Nov. 24, 2020).............17

*Doe v. Neverson*,
    820 F. App'x 984 (11th Cir. 2020) ................................................19

*Doe v. Pub. Citizen*,
    749 F.3d 246 (4th Cir. 2014) .......................................................20

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. Unit A Aug. 1981) ..................................19

*Doe v. Va. Polytechnic Inst. & State Univ.*,
    400 F. Supp. 3d 479 (W.D. Va. 2019)..........................................7

*Egerdahl v. Hibbing Cmty. Coll.*,
    72 F.3d 615 (8th Cir. 1995) ................................................. 4, 5, 6

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) .......................................................21

*Fort Bend Cty. v. Davis*,
    139 S. Ct. 1843 (2019)...................................................................13

*Franks v. Ross*,
    313 F.3d 184 (4th Cir. 2002) .....................................................4, 6

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
    991 F.3d 370 (2d Cir. 2021) ...........................................................................16

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998)..........................................................................................6

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012)........................................................................................14

*Goodman v. Lukens Steel Co.*,
    482 U.S. 656 (1987)..........................................................................................4

*Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*,
    799 F. App'x 205 (4th Cir. 2020)...................................................................10

*Hamer v. Neighborhood Hous. Servs. of Chic.*,
    138 S. Ct. 13 (2017)........................................................................................22

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)..........................................................................................27

*House v. Mitra QSR KNE LLC*,
    796 F. App'x 783 (4th Cir. 2019) ........................................................ 15, 25

*In re U.S. O.P.M. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019)................................................ 12, 17, 19, 27

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)........................................................................................22

*Isioye v. Coastal Carolina Univ.*,
    No. 4:17-cv-3484-RBH-TER, 2018 WL 6682795 (D.S.C. Nov. 30, 2018) ...7

*Jaffe-Spindler Co. v. Genesco, Inc.*,
    747 F.2d 253 (4th Cir. 1984) ........................................................................10

*James v. Jacobson*,
    6 F.3d 233 (4th Cir. 1993) .............................................................................25

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999) .......................................................................4, 6

*Johnson v. United States*,
    559 U.S. 133 (2010)........................................................................................22

*King-White v. Humble Indep. Sch. Dist.*,
    803 F.3d 754 (5th Cir. 2015) ....................................................5, 9

*Lillard v. Shelby Cty. Bd. of Educ.*,
    76 F.3d 716 (6th Cir. 1996) .............................................................5

*M.H.D. v. Westminster Sch.*,
    172 F.3d 797 (11th Cir. 1999) ........................................................5

*Monroe v. Columbia Coll. Chi.*,
    990 F.3d 1098 (7th Cir. 2021) ........................................................4

*Moore v. Greenwood Sch. Dist.*,
    195 F. App'x 140 (4th Cir. 2006)........................................ 6, 7, 8

*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989) ............................................ 17, 21

*Nutraceutical Corp. v. Lambert*,
    139 S. Ct. 710 (2019)....................................................................20

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978)......................................................................12

*Owens v. Okure*,
    488 U.S. 235 (1989)............................................................ 3, 8, 9

*Prynne v. Settle*,
    No. 19-1953, 2021 WL 717054 (4th Cir. Feb. 24, 2021)..............25

*Purcell v. N.Y. Inst. of Tech.–Coll. of Osteopathic Med.*,
    931 F.3d 59 (2d Cir. 2019) .............................................................5

*Reed v. United Transp. Union*,
    488 U.S. 319 (1989)........................................................................4

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
    993 F.2d 800 (11th Cir. 1993) ......................................................10

*Roe v. City of San Diego*,
    2001 WL 35936313 (S.D. Cal. Dec. 21, 2001),
    *rev'd*, 356 F.3d 1108 (9th Cir. 2004),
    *rev'd*, 543 U.S. 77 (2004) ...........................................................18

*Roe v. Wade*,
    410 U.S. 113 (1973)......................................................................22

vi

*Rouse v. Duke Univ.*,
  535 F. App'x 289 (4th Cir. 2013) ....................................................7

*Rozar v. Mullis*,
  85 F.3d 556 (11th Cir. 1996) .......................................................5

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) .......................................................19

*Sebelius v. Auburn Reg'l Med. Ctr.*,
  568 U.S. 145 (2013)..................................................................14

*Sewell v. Monroe City Sch. Bd.*,
  974 F.3d 577 (5th Cir. 2020) ...................................................4, 6

*Spragling v. Akron Pub. Sch.*,
  No. 5:18CV1969, 2019 WL 1255215 (N.D. Ohio Mar. 19, 2019) ...............8

*Stanley v. Trs. of Cal. State Univ.*,
  433 F.3d 1129 (9th Cir. 2006) .................................................5, 6

*Taylor v. Regents of Univ. of Cal.*,
  993 F.2d 710 (9th Cir. 1993) .....................................................4

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009).................................................................23

*United States ex rel. Eisenstein v. City of New York*,
  556 U.S. 928 (2009).................................................................24

*United States v. Cortez*,
  930 F.3d 350 (4th Cir. 2019) ...............................................22, 23

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021)...........................................................13, 14

*Varnell v. Dora Consol. Sch. Dist.*,
  756 F.3d 1208 (10th Cir. 2014) .................................................5

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)...........................................................13, 14

*W.N.J. v. Yocom*,
  257 F.3d 1171 (10th Cir. 2001) .............................................17, 21

*Wilmink v. Kanawha Cty. Bd. of Educ.*,
 214 F. App'x 294 (4th Cir. 2007).................................................5, 7

*Wilson v. Garcia*,
 471 U.S. 261 (1985)............................................... 2, 4, 7, 8

**Statutes**

28 U.S.C. § 1653 .................................................................. 10, 11

42 U.S.C. § 1981 ...........................................................................4

42 U.S.C. § 1982 ...........................................................................6

42 U.S.C. § 1983 .................................................................. 3, 4, 9

Labor-Management Reporting and Disclosure Act of 1959,
 § 101(a)(2), 73 Stat. 522, 29 U.S.C. § 411(a)(2)...........................4

Title VI of the Civil Rights Act of 1964,
 78 Stat. 252, 42 U.S.C. §§ 2000d–2000d-7......................... 4, 6, 9

 § 2000d ...................................................................................4

Title IX of the Education Amendments of 1972,
 86 Stat. 373, 20 U.S.C. §§ 1681–1688 ................................ passim

Va. Code Ann. § 8.01-243(A) (Supp. 2020).....................................2

Va. Code Ann. § 8.01-243(D) (Supp. 2020).....................................2

**Constitutional Provisions**

U.S. Const. art. III.............................................................. 13, 15

**Rules**

4th Cir. Local R. 32.1....................................................................7

Fed. R. Civ. P. 5.2......................................................................19

Fed. R. Civ. P. 5.2(a)(3)..............................................................19

Fed. R. Civ. P. 10......................................................................12

Fed. R. Civ. P. 17......................................................................16

Fed. R. Civ. P. 17(c)(1)...............................................................20

Fed. R. Civ. P. 17(c)(2) ...........................................................20

Fed. R. Civ. P. 23 ..................................................................21

Fed. R. Civ. P. 82 ..................................................................11

**Secondary Sources**

Gustafson, Jill, et al.,
    28 *Federal Procedure, Lawyers Ed.* § 65:48 (Sept. 2019 Update)..............17

Sachs, Stephen E.,
    *Constitutional Backdrops*, 80 Geo. Wash. L. Rev. 1813 (2012)..................12

**INTRODUCTION**

Plaintiff shrugs off that accepting her position would put the Fourth Circuit at odds with the Sixth, Eighth and Tenth Circuits on whether filing a pseudonymous complaint without leave of court properly invokes the district court's jurisdiction.  In minimizing that problem, Plaintiff misstates our position.

Defendants do not contend that a pseudonymous complaint filed without leave of court is a nullity, but that the district court's jurisdiction does not attach unless and until a plaintiff tells the court who she is.  The plaintiff could seek leave to proceed pseudonymously when filing suit.  Or she could file the motion afterwards.  But unless and until the plaintiff reveals herself to the district court, the court cannot exercise adjudicative authority over the plaintiff.  This rule is not "wasteful" or "unjust," RB 58, but simple and easily administered.  Nor would it expose closed cases to collateral attack, RB 28, since such jurisdictional challenges are waived if not raised before final judgment.

Not satisfied with creating one circuit split, Plaintiff invites the Court to create a second one by holding that Title IX claims are not subject to the personal-injury limitations period if the forum-State has a longer period for sexual-abuse claims.  That position contradicts Supreme Court precedent and conflicts with the rule previously recognized by this Court and by eight other circuits.  The statute of limitations for a Title IX claim is plainly the personal-injury limitations period.

1

Applying those rules here, Plaintiff's Title IX claim is time-barred.

## ARGUMENT

### I. The statute of limitations for Title IX claims is the personal-injury limitations period.

Because the relation-back question for which the Court granted interlocutory review presupposes a two-year limitations period, we first address whether that presupposition is correct. The district court agreed that Title IX claims are governed by the two-year personal-injury limitations period in Virginia Code § 8.01-243(A). *See* J.A. 134:2–3. But Plaintiff argues that this Court need not reach the relation-back question at all, reasoning that her Title IX claim is governed instead by Virginia's 20-year limitations period for injuries resulting from "sexual abuse" during infancy. RB 56 (citing Va. Code Ann. § 8.01-243(D)). She argues that a sexual-abuse claim is a "closer state analog" to a Title IX claim than a personal-injury claim. *Id*.

Plaintiff ignores that the Supreme Court has consistently held that various civil rights statutes are governed by the forum-State's general personal-injury limitations period. The Court held in *Wilson v. Garcia*, 471 U.S. 261 (1985), "that § 1983 claims are best characterized as personal injury actions." *Id*. at 280. The Court explained that if the applicable limitations period "depend[ed] upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations

2

should apply to each § 1983 claim." *Id*. at 274.  To avoid that confusion, the Court

chose the State's personal-injury limitations period to further the "federal interests

in uniformity, certainty, and the minimization of unnecessary litigation." *Id*. at

275.

But what if a forum State has *multiple* personal-injury limitations periods to

choose from?  In a case involving an intentional tort, for example, should the court

borrow the most analogous limitations period for intentional torts?  The Supreme

Court resoundingly answered "no" to that question in *Owens v. Okure*, 488 U.S.

235 (1989), holding instead that "the residual or general personal injury statute of

limitations applies." *Id*. at 236.  "Were we to call upon courts to apply the state

statute of limitations governing intentional torts, we would succeed only in

transferring the present confusion over the choice among multiple personal injury

provisions to a choice among multiple intentional tort provisions." *Id*. at 244.

*Owens* foreshadowed the issue presented here, since the potentially confounding

choices noted there included claims for "childhood sexual abuse." *Id*. at 244 n.8.

*Owens* settled on the general or residual personal-injury limitations period to avoid

having to choose among possible analogs.  *Id*. at 249–50.[1]

---

[1] The Supreme Court emphasized the importance of uniformity again in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), holding that, even when an underlying federal statute has its *own* limitations period, courts must apply the

3

The Supreme Court has extended that approach to other civil rights statutes. Discrimination claims under § 1981 are subject to the State's general personal-injury limitations period, "in compliance with *Wilson*." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62 (1987). So are free-speech claims under § 101(a)(2) of the Labor-Management Reporting and Disclosure Act. *Reed v. United Transp. Union*, 488 U.S. 319, 326–27 (1989).

Following *Wilson* and its progeny, *every federal circuit* to consider the question has held that the general personal-injury limitations period applies to the implied right of action recognized under *both* Title VI, which prohibits federal-program recipients from discriminating on the basis of race, 42 U.S.C. § 2000d, *as well as* Title IX, which prohibits such recipients from discriminating on the basis of sex. Seven circuits, including this one, have applied the personal-injury limitations period to Title VI claims. *See Franks v. Ross*, 313 F.3d 184, 194 (**4th Cir.** 2002) (following *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (**4th Cir.** 1999)); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (**5th Cir.** 2020); *Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1099–1100 (**7th Cir.** 2021); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (**8th Cir.** 1995); *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 712 (**9th Cir.** 1993); *Baker v. Bd. of*

---

general personal-injury limitations period when enforcing those statutory rights through § 1983. *Id.* at 124–25.

*Regents*, 991 F.2d 628, 631 (**10th Cir.** 1993); *Rozar v. Mullis*, 85 F.3d 556, 561 (**11th Cir.** 1996).

*Nine* circuits, including this one, apply the forum-State's personal-injury limitations period to Title IX claims. *See Purcell v. N.Y. Inst. of Tech.–Coll. of Osteopathic Med.*, 931 F.3d 59, 63 (**2d Cir.** 2019) (following *Curto v. Edmundson*, 392 F.3d 502, 503–04 (2d Cir. 2004)); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (**3d Cir.** 1989); *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 & n.3 (**4th Cir.** 2007); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (**5th Cir.** 2015); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (**6th Cir.** 1996); *Egerdahl*, 72 F.3d at 618 (**8th Cir.** 1995); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134–36 (**9th Cir.** 2006); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (**10th Cir.** 2014); *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (**11th Cir.** 1999).

Plaintiff belittles this Court's decision in *Wilmink* by arguing that the plaintiff there "never argued" for a different limitations period. RB 57 (quoting *Wilmink*, 214 F. App'x at 296 n.3). That ignores what the Court actually said: "*every* circuit to consider the issue has held that Title IX also borrows the relevant state's statute of limitations for personal injury." 214 F. App'x at 296 n.3 (quoting *Stanley*, 433 F.3d at 1134) (emphasis added). That was true when *Wilmink* was decided in 2007 and remains true today. No federal circuit has gone the other way.

5

It is no coincidence that so many circuits have reached the same conclusion for both Title VI and Title IX.  As the Supreme Court reasoned when recognizing an implied right of action under Title IX, that statute was "patterned after Title VI," so "[t]he drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been."  *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694–96 (1979); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (same).  Thus, appellate courts have repeatedly held that it would be inconsistent to apply a different limitations period to claims under Title IX and Title VI.  *E.g.*, *Sewell*, 974 F.3d at 583; *Stanley*, 433 F.3d at 1135; *Egerdahl*, 72 F.3d at 618.

When this Court applied the personal-injury limitations period to Title VI claims in *Jersey Heights*, it explained that "the personal nature of the right against discrimination justifies applying the state personal injury limitations period."  174 F.3d at 187.  That same reasoning led the Court to apply the personal-injury limitations period to race-discrimination claims under § 1982.  *Franks*, 313 F.3d at 194.  Applying a different limitations period to sex-discrimination claims under Title IX would be anomalous.

Plaintiff does not mention that applying the sexual-abuse limitations period to Title IX claims would create a circuit split.  Accusing defendants of "ignor[ing] precedent," she relies on this Court's non-precedential opinion in *Moore v. Greenwood School District No. 52*, 195 F. App'x 140 (4th Cir. 2006) (per curiam),

6

despite that citation to unpublished opinions "issued prior to January 1, 2007" is "disfavored."  4th Cir. Local R. 32.1.

*Moore* is unhelpful even on its own terms.  The Court there held that a Title IX retaliation claim filed in South Carolina federal court was governed by the limitations period for retaliation claims under South Carolina's State Human Affairs Law.  *Id.* at 143.  Perhaps because the panel's opinion overlooked the *Wilson* line of cases, this Court has never seen fit to cite *Moore*.  On the other hand, this Court has followed *Wilmink*, applying North Carolina's personal-injury limitations period to the Title IX claim at issue in *Rouse v. Duke University*, 535 F. App'x 289, 294 (4th Cir. 2013).  District courts in this Circuit have likewise followed *Wilmink*, not *Moore*.  *See Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 494–95 (W.D. Va. 2019); *Isioye v. Coastal Carolina Univ.*, No. 4:17-cv-3484-RBH-TER, 2018 WL 6682795, at \*3–4 (D.S.C. Nov. 30, 2018); *Doe v. Bd. of Educ.*, 888 F. Supp. 2d 659, 664–65 (D. Md. 2012).  *Moore* carries no persuasive weight and its citation should remain "disfavored."

At least Plaintiff's *amici* grudgingly acknowledge that "other courts" apply the personal-injury limitations period to Title IX claims.  NWLC Br. 19 n.6.  But even they cannot bring themselves to admit that *every* court-of-appeals case goes against them.  They urge this Court instead to follow the recent district court opinion in *Doe 1*.  *Id.* (citing *Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.*,

7

No. 1:20-CV-01695, 2021 WL 1334199 (N.D. Ohio Apr. 9, 2021)).  But *Doe 1* plainly misapprehended *Wilson* and *Owens*, reading those cases to hold that "the most analogous State statute of limitation applies."  2021 WL 1334199 at *5.  *Owens* instead holds that the State's most analogous limitations period is "the residual or general *personal injury* statute of limitations."  *Owens*, 488 U.S. at 236 (emphasis added).   Even the district court in *Doe 1* recognized that its conclusion was at odds with another case in the same district.  2021 WL 1334199, at *4 (citing *Spragling v. Akron Pub. Sch.*, No. 5:18CV1969, 2019 WL 1255215 (N.D. Ohio Mar. 19, 2019)).  *Doe 1* is a self-evident outlier and, like *Moore*, does not justify creating a circuit split.

Plaintiff and her *amici* also ignore that their approach would result in multiple, different limitations periods for different types of Title IX claims, depending on whether the claim alleges retaliation (as in *Moore*), sexual harassment (as in this case), or sex discrimination in claims-handling procedures.[2] Their approach would restore the evils that *Wilson* tried to root out, leading to "different statutes of limitations [being] applied to the [same statutory] claims arising in the same State, and multiple periods of limitations would often apply to

---

[2] *E.g.*, *Doe v. Fairfax Cty. Sch. Bd.*, 403 F. Supp. 3d 508, 515–17 (E.D. Va. 2019) (rejecting "selective enforcement" and "erroneous outcome" claims brought by male student who claimed that FCSB unfairly disciplined him for sexually harassing his classmate).

the same case." *Wilson*, 471 U.S. at 274. In this case, for instance, Plaintiff alleged a § 1983 claim based on the same facts as her Title IX claim. J.A. 97. Applying a two-year limitations period to the § 1983 claim but a 20-year period to the Title IX claim would make no sense. Doing so is "foreclosed by *Wilson* and *Owens*." *King-White*, 803 F.3d at 761.

Nor can the irrationality of Plaintiff's position be explained by claiming that Title IX should be interpreted "broadly." RB 58; NWLC Br. 19 ("broadest intended reach"). Interpreting Title IX *that* broadly could not be squared with the fact Title IX is a "Spending Clause" statute. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Program recipients that elect to accept federal funding must be on "clear notice" of their potential liabilities. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (finding no clear notice under Spending Clause statute that school boards could be liable for expert fees). The "conditions must be set out 'unambiguously.'" *Id.* (citation omitted). Funding recipients have not been on "clear notice" that accepting federal funds would expose them to liability for conduct occurring 20 years earlier, or that their liabilities under Title VI and Title IX would differ so widely.

In short, the two-year limitations period applies to the Title IX claim in this case. Whether that claim survives or is time-barred turns on the relation-back question that this Court accepted for interlocutory review.

II.    **Section 1653 does not save Plaintiff's federal claims because she was not granted leave to proceed pseudonymously until after the limitations period expired.**

Plaintiff claims that, even assuming "arguendo" that her original complaint was jurisdictionally defective for failure to obtain leave of court to proceed under a pseudonym, that failure can be cured under 28 U.S.C. § 1653.  RB 15.  Under § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."  Plaintiff cites numerous cases where various courts, including this one, permitted amendments to avoid dismissing the complaint as jurisdictionally defective.  That typically occurs in diversity-jurisdiction cases where plaintiffs (not infrequently) overlook that the citizenship of a limited-liability company or limited partnership is based on the citizenship of each member, rather than the state of incorporation and principal place of business.  Courts frequently permit amendments to cure jurisdiction under § 1653 once assured that complete diversity, in fact, exists.[3]  Similarly, where a complaint's allegations of standing are deficient, some courts have permitted the factual allegations to be supplemented by evidence showing the party's standing.[4]

---

[3] Most of plaintiff's authorities involve this scenario.  *See, e.g.*, *Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, 799 F. App'x 205, 205 (4th Cir. 2020) (per curiam).

[4] *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 n.6 (11th Cir. 1993).

10

But that use of § 1653 does not help Plaintiff in this case.  The question here is not whether Plaintiff could amend the complaint or move for leave to proceed under a pseudonym.  She did both.  Rather, the problem is one of relation-back.  Because Plaintiff did not seek leave to proceed pseudonymously until *after* the limitations period ran on her federal claims, the filing of her jurisdictionally defective original complaint did not toll the limitations period.  Section 1653 itself does not provide for relation-back in this situation.  And *none* of Plaintiff's § 1653 cases holds that it does.

Because § 1653 is irrelevant, Plaintiff unfairly chides defendants for "never even mention[ing]" it in the opening brief.  RB 18.  She forgets that, when this issue was briefed in the district court, the defendants were the only ones to explain why § 1653 is inapplicable.  ECF No. 55 at PageID 499–500.  Plaintiff never claimed otherwise, and the district court itself did not cite § 1653 in its opinion.

Plaintiff's belated discovery of § 1653 is not the trump card she imagines.  This curative statute is simply not available to save an otherwise untimely action.

## III.    The plaintiff-identification requirement is jurisdictional, not a waivable claim-processing rule.

### A.    The jurisdictional requirement is consistent with Rule 10 but does not depend on it.

No one disputes that the Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts."  Fed. R. Civ. P. 82.  "[I]t is axiomatic

11

that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978).

But Plaintiff is wrong to characterize Federal Rule 10 as "the only arguable source" for the jurisdictional requirement that a plaintiff identify herself to the court.  RB 12.  "Because our Constitution was enacted as part of a common law legal system, rather than as a comprehensive code, it left most existing law in place."  Stephen E. Sachs, *Constitutional Backdrops*, 80 Geo. Wash. L. Rev. 1813, 1818 (2012).

The plaintiff-identification requirement is just such a common-law "backdrop" rule that has been recognized since time immemorial as fundamental to the judicial process.  *See* FCSB et al. Opening Br. ("OB") 19–20.  As Judge Williams recently noted, anonymous filings are "an extraordinary break from precedent."  *In re U.S. O.P.M. Data Sec. Breach Litig.*, 928 F.3d 42, 83 (D.C. Cir. 2019) (Williams, J., concurring in part and dissenting in part) (*In re Data Sec. Breach*).  Plaintiff derides that "history lesson," RB 22, but does not dispute that, until the 1970s, courts treated the plaintiff-identification requirement as fundamental and essential.

That history carries great weight in the jurisdictional analysis because the scope of Article III is informed by the common law.  "Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean

'cases and controversies *of the sort traditionally* amenable to, and resolved by, the judicial process.'" *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798 (2021) (emphasis added) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000)). The framers of Article III "gave merely the outlines of what were to them the familiar operations of the English judicial system and its manifestations on this side of the ocean before the Union." *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.). That is why, for instance, the common law informs whether a claim for nominal damages is enough to allege an Article III injury, *Uzuegbunam*, 141 S. Ct. at 798; and whether a relator who alleges an injury to the federal government has Article III standing to bring a *qui tam* action against a State, *Vt. Agency of Nat. Res.*, 529 U.S. at 774. As in those cases, the common-law tradition is "well nigh conclusive" in this case as well. *Id*. at 777.

Plaintiff is wrong that the Supreme Court has rigidly limited jurisdictional rules to (1) rules clearly identified by Congress as jurisdictional, and (2) rules identified by the Supreme Court as jurisdictional and not altered by Congress. RB 21 (discussing *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019)). *Fort Bend* offered those two scenarios as examples of jurisdictional rules but did not hold them to be exclusive. That case held that the statutory charge-filing requirement under Title VII was a claim-processing rule, not a jurisdictional requirement,

13

because Congress did not "rank" that prescription as "jurisdictional." *Id*. at 1850.

*Fort Bend* did not involve rules that, though not codified by Congress, have "been treated as jurisdictional *in American law* for well over a century." *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) (emphasis added) (quoting *Bowles v. Russell*, 551 U.S. 205, 209 n.2 (2007)).

The plaintiff-identification requirement has been recognized for *longer* than a century of "American law." *Id*. For literally hundreds of years before the 1970s, the plaintiff-identification requirement was considered essential to a court's adjudicative authority. Anonymous complaints were plainly not "the sort traditionally amenable to, and resolved by, the judicial process" at common law. *Uzuegbunam*, 141 S. Ct. at 798 (quoting *Vt. Agency of Nat. Res.*, 529 U.S. at 774). Anonymous complaints would not have been understood as valid "Cases" or "Controversies" to the "expert feel of lawyers" in the common law "courts at Westminster." *Vt. Agency of Nat. Res.*, 529 U.S. at 774 (quoting *Coleman*, 307 U.S. at 460 (opinion of Frankfurter, J.)). This is, therefore, one of those "exceptional" cases "in which a 'century's worth of precedent and practice in American courts' ranks [the procedural requirement] as jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 155 (2013) (quoting *Bowles*, 551 U.S. at 209 n.2).

14

There may not be many other examples, but the plaintiff-identification requirement is not the only jurisdictional rule that Congress has not codified. Congress has not enacted a law prohibiting courts from hearing a case brought in the name of a decedent, either. Yet this Court recognized in *House* that Article III disallows "a suit filed on behalf of a deceased person." *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 788 (4th Cir. 2019). That rule too is firmly rooted in legal history; federal courts since 1903 have declined to exercise jurisdiction over suits filed on behalf of deceased persons. *Id*.

Under Plaintiff's theory, however, *House* must have been wrongly decided. After all, since Congress has not prohibited suing in a decedent's name, the prohibition against that must be a waivable claims-processing rule, not a jurisdictional impediment. Plaintiff sidesteps that problem, distinguishing *House* on the ground that Plaintiff "is alive." RB 32. But that fails to explain why suing in a deceased person's name is jurisdictional, despite that Congress has not prohibited it.

In both *House* and this case, the correct answer is found by examining history and the common law, which never recognized the standing of a dead person to sue. It has likewise not recognized suits brought by anonymous plaintiffs.

Plaintiff only confuses the question by claiming that *House* was "persuasively criticized" by the Second Circuit. RB 31 (discussing *Fund*

15

*Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370 (2d Cir. 2021)).

*Fund Liquidation* did not involve a suit filed in the name of a deceased person.

The named plaintiff corporations there were dissolved at the time the suit was

filed, so without legal existence, but they had previously assigned their interests to

a successor corporation in good standing.  The court held that Rule 17 permitted

the real party interest to be substituted for the original plaintiffs.  *Id*. at 392.

But unlike *Fund Liquidation*, this case does not involve *different* potential

plaintiffs, such as a nominal plaintiff and the real party in interest.  As the Eighth

Circuit recognized in *Capers*, Rule 17, by its own terms, does not apply in a

pseudonymous-plaintiff case because the pseudonymous plaintiff and the real party

in interest are *one in the same.  Capers v. Nat'l R.R. Passenger Corp.*, 673 F.

App'x 591, 595–96 (8th Cir. 2016) (per curiam).  A "Jane Doe" plaintiff "is not a

separate person from [the real plaintiff] and thus cannot be deemed a nominal

party . . . .  Thus, substitution cannot operate to save her claim any more than

relation-back doctrine." *Id.*

## B.    The plaintiff-identification requirement is supported by the weight of sister-circuit authority.

Plaintiff does not persuasively contest that the Sixth, Eighth and Tenth

Circuits treat the plaintiff-identification requirement as jurisdictional.  *See Capers*,

673 F. App'x at 594–95 (8th Cir. 2016); *Citizens for a Strong Ohio v. Marsh*, 123

F. App'x 630, 637 (6th Cir. 2005); *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th

16

Cir. 2001); *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (per curiam); *see also In re Data Sec. Breach*, 928 F.3d at 81 (Williams, J., concurring in part and dissenting in part) (citing 6th and 10th Circuit as taking that view).

Plaintiff nitpicks those cases to try to distinguish them. She claims that *Gibbs* is "Defendants' sole published decision," RB 36, not remembering that *W.N.J.* is also published. She adds that *Gibbs* is "very weak precedent" because it was "decided in 1989" and is supposedly "no longer good law." RB 37-38. But courts in the Tenth Circuit have continued to follow *Gibbs* and its progeny as recently as a few months ago. *See Doe v. Kan. State Univ.*, No. 2:20-cv-02258-HLT-TJJ, 2021 WL 84170, at *2 (D. Kan. Jan. 11, 2021) (following *W.N.J.*). So do legal treatises. *See* 28 Jill Gustafson, et al., *Federal Procedure, Lawyers Ed.* § 65:48 (Sept. 2019 Update) ("Where no permission is granted, the federal courts lack jurisdiction over the unnamed parties as a case has not been commenced with respect to them.") (citing *W.N.J.*). And even though *Marsh* and *Capers* are unpublished, district courts in the Sixth and Eighth Circuits, respectively, continue to follow those rulings too. *See Doe v. Mitchell*, No. 2:20-cv-00459, 2020 WL 6882601, *4 (S.D. Ohio Nov. 24, 2020) (following *Marsh*); *Anderson v. City of Minneapolis*, No. 16-cv-04114 (SRN/FLN), 2018 WL 1582262, *12–13 (D. Minn.

Mar. 30, 2018) (following *Capers*), *aff'd on other grounds*, 934 F.3d 876 (8th Cir. 2019), *cert. denied*, 141 S. Ct. 110 (2020).

Plaintiff is wrong that decisions from "five other circuits . . . reject Defendants' argument." RB 32. To make that statement, Plaintiff builds a strawman, mischaracterizing Defendants' position as an extreme caricature of the "nullity" doctrine: that "any time a plaintiff does not disclose her identity at the time she sues, the case must always be dismissed for lack of subject matter jurisdiction because the original complaint is a nullity." RB 52. Plaintiff's amici paint the same distorted picture. NWLC Br. 3. That is not Defendants' position. We instead maintain that "a plaintiff has not properly invoked the jurisdiction of a federal court *unless and until* she discloses her identity to the court, whether in the complaint itself, or in a motion, filed under seal, disclosing the plaintiff's identity but seeking leave of court to proceed under a pseudonym." OB 39.

*That* position, fairly stated, is fully consistent with the cases from the five circuits Plaintiff cites. Those cases allowed the plaintiff to move for leave to proceed pseudonymously, either with the complaint or "just after the complaint is filed," *Roe v. City of San Diego*, 2001 WL 35936313, at *4 (S.D. Cal. Dec. 21, 2001), *rev'd*, 356 F.3d 1108 (9th Cir. 2004), *rev'd*, 543 U.S. 77 (2004);[5] or held

---

[5] Plaintiff's string-cited district court cases are distinguishable for the same reason. *See* RB 44–45 nn.16–17.

that the district court erred in refusing to allow pseudonymity, *Doe v. Neverson*,
820 F. App'x 984, 984–85 (11th Cir. 2020); *Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185, 186–87 (2d Cir. 2008); *Doe v. Stegall*, 653 F.2d 180, 181 (5th Cir.
Unit A Aug. 1981).  Notably, *Stegall* credited the plaintiff's claim that "this
procedure gives both the court and the defendants every opportunity to scrutinize
their standing." *Id*. at 182 n.5.  The Eleventh Circuit in *A.W.* specifically said that
"[w]e need not and do not decide whether the Tenth Circuit's general approach is
correct." *A.W. v. Tuscaloosa City Sch. Bd. of Educ*., 744 F. App'x 668, 671 (11th
Cir. 2018).  And in *In re Data Security Breach*, Judge Williams raised the
jurisdictional question sua sponte and said that the district court should consider it
"[o]n remand."  928 F.3d at 83–84 (Williams, J., concurring).

*None* of those "five other circuits," RB 32, held that proceeding
anonymously without leave of court poses no jurisdictional problem at all, as
Plaintiff suggests.

### C. Rule 5.2 does not demonstrate that the plaintiff-identification requirement is non-jurisdictional.

Plaintiff is also mistaken to claim that Federal Rule of Civil Procedure 5.2
proves that the plaintiff-identification requirement is non-jurisdictional.  RB 48.
True, Rule 5.2(a)(3) provides that "a party or nonparty" filing a court document
"may include only . . . the minor's initials."  Fed. R. Civ. P. 5.2(a)(3).  But Plaintiff

misconceives Rule 5.2 to allow "minor children" to sue under a pseudonym as "plaintiffs."  RB 48.

Instead, when lawsuits are filed on behalf of minors, the proper plaintiff is the minor's "representative," such as her "guardian," Fed. R. Civ. P. 17(c)(1), or her "next friend or guardian ad litem," Fed. R. Civ. P. 17(c)(2).  The identity of the *adult* plaintiff bringing the case is therefore known to the district court.  The fact that the rule does not authorize the minor's representative to proceed pseudonymously undercuts Plaintiff's reliance on it.

### D.    Plaintiff cannot explain why, if the plaintiff-identification requirement is a claim-processing rule, the defect is not waivable.

The law is clear that "a nonjurisdictional claim-processing rule . . . can be waived or forfeited by an opposing party."  *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019).  But this Circuit has squarely held that a party's failure to obtain leave of court to proceed under a pseudonym is not waivable.  Rather, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party."  *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014).  Thus, obtaining permission to sue anonymously cannot be dismissed as a "meaningless technicality," RB 2, 14, no matter how often Plaintiff repeats that phrase.

20

If, as Plaintiff insists, the plaintiff-identification requirement is a claim-processing rule, then why isn't it waivable?  Why have appellate courts acted "sua sponte" on appeal to dismiss those pseudonymous plaintiffs who proceeded without leave of court?  *W.N.J.*, 257 F.3d at 1172; *Gibbs*, 886 F.2d at 1245 n.3.  Plaintiff offers no answer.

Plaintiff sidesteps those questions by citing other instances when courts have an "independent obligation" to do certain things, arguing that the independent obligation does not make the underlying thing "jurisdictional."  RB at 29–30.  But none of Plaintiff's examples involves determining whether the rule itself is a waivable claim-processing rule or a nonwaivable jurisdictional requirement.  Plaintiff's best example is unpersuasive: a party seeking class-certification has the "burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied."  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citation omitted).  To be sure, no one suggests that a district court's failure to conduct a rigorous class-certification analysis deprives the district court of subject-matter jurisdiction.  But the fact that not all independent obligations are jurisdictional does not answer whether the plaintiff-identification requirement is.  Comparing class certification to filing an anonymous lawsuit unrecognized at common law is not an apples-to-apples comparison.  It is "rather like saying a

21

provision which includes (i) apples and (ii) overripe oranges must exclude overripe apples.  It does not follow." *Johnson v. United States*, 559 U.S. 133, 142 n.2 (2010).

## IV.   Plaintiff's parade of horribles and policy arguments are without merit.

### A.   The jurisdictional requirement does not expose final judgments to collateral attack.

Plaintiff is wrong that a jurisdictional requirement would subject final judgments to "collateral attack" if the plaintiffs had not previously obtained leave of court to litigate anonymously.  RB 28.  Plaintiff lists numerous cases decided by the Supreme Court or this Court that she implies would be in jeopardy of being nullified, RB 24–27 nn.3 & 5, including *Roe v. Wade*, 410 U.S. 113 (1973), decided "almost 50 years ago."  RB 24.  Conspicuously absent from Plaintiff's brief is even a single citation to authority to support that concern.

In fact, "[i]t has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). "Subject-matter jurisdiction cannot be attacked collaterally."  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.2 (2017); *United States v. Cortez*, 930 F.3d 350, 357 (4th Cir. 2019) (same).  Nor may personal jurisdiction be challenged by collateral attack if the party participated in the challenged proceeding and could have raised the objection.  *Ins. Corp.*, 456 U.S. at 703–04.

"On direct appeal, . . . anyone who objected [is] free to argue" the jurisdictional defect, "and the District Court or Court of Appeals [may] raise[] such concerns *sua sponte*." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009). "But once the [judgments] [become] final on direct review (whether or not proper exercises of . . . jurisdiction and power), they [become] res judicata . . . ." *Id.* "[T]he need for finality forbids a court called upon to enforce a final order to 'tunnel back . . . for the purpose of reassessing prior jurisdiction de novo.'" *Id.* at 154 (citation omitted). This rule "applies with equal force to suits in which jurisdiction has been expressly determined and those in which resolution of the jurisdictional question is merely implicit." *Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.)*, 147 F.3d 347, 352 (4th Cir. 1998). This "rule of finality" has only "narrow" and "rare" exceptions not applicable here, such as when a district court has engaged in a "clear usurpation of power." *Id.* at 352; *see also Travelers Indem.*, 557 U.S. at 153 n.6 ("rare" exceptions); *Cortez*, 930 F.3d at 357 ("exceptional circumstances").

Thus, final judgments in cases where anonymous plaintiffs got away without identifying themselves would not be subject to collateral attack. Such suits are instead governed by the general rule that "[m]ere error in the exercise of jurisdiction will not render a prior judgment invalid." *Cooper*, 147 F.3d at 352.

23

**B.** **Requiring plaintiffs to identify themselves to the district court is a simple requirement that is easily followed and is not inequitable.**

Plaintiff and her amici berate Defendants for contending that her failure to timely identify herself to the district court within the limitations period caused her Title IX claim to become time-barred. Her amici go even further. They claim— without authority—that even raising this defense constitutes a standalone Title IX violation, an "evasion of [the school defendants'] Title IX obligations." NWLC Br. 15.

Plaintiff and her amici ignore the Supreme Court's teaching that "the Court must nonetheless decide the jurisdictional question before it irrespective of the possibility of harsh consequences." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 937 n.4 (2009). Nonetheless, they overstate the harshness of the plaintiff-identification requirement in this case.

Even accepting Plaintiff's allegations of wrongdoing as true for purposes of a Rule 12 motion—though they are entirely disputed[6]—this is not a case where the complainant was "hesitant to make [her] claims known." NWLC Br. 8. Nor was this plaintiff "pro se." RB 60. To the contrary, she was represented in 2012 by

---

[6] Plaintiff and her amici ignore that all twelve defendants denied Plaintiff's misconduct allegations in their respective answers. ECF Nos. 87, 93–103. Plaintiff's own lawyers at amicus NWLC also told the Office of Civil Rights in 2012 that Plaintiff's serial-rape allegations were "not reported" to either the police or the school system. J.A. 247.

24

lawyers from the National Women's Law Center—her lead amicus here—who filed a formal complaint on her behalf with the Office of Civil Rights.  J.A. 230, 243.   Plaintiff then engaged her current trial counsel by no later than January 2018, JA 122, eighteen months before the two-year limitations period expired on her twentieth birthday.  She and her attorneys had ample time to file suit.  This Court's decision in *James v. Jacobson*, 6 F.3d 233, 235 (4th Cir. 1993) modeled the correct procedure.[7]  Her lawyers admitted below that they evaluated the requirement to seek leave of court but believed it "was not required at the initial pleading stage.  There are some cases that require it before you file.  They're not in the Fourth Circuit," they reasoned.  J.A. 128:19–23.

These attorneys faced none of the time pressure confronted by the plaintiff's lawyer in *House*, who found out on the last day of the 90-day limitations period that his client had just died, yet decided to file the employment-discrimination claim in the decedent's name anyway.  796 F. App'x 784.  Though this Court was "sympathetic to [his] unfortunate and hurried circumstances," it did not excuse the jurisdictional defect.  *Id*. at 791.  Plaintiff's attorneys in this case had years' more time to get it right than in *House*.  They actually calculated the risk of not

---

[7] *See also Prynne v. Settle*, No. 19-1953, 2021 WL 717054, at *1 n.1 (4th Cir. Feb. 24, 2021) (same procedure).

identifying their client to the court.  They protest too much to claim that applying a

jurisdictional bar would be "admittedly harsh" or "shockingly unjust."  RB 10, 13.

Citing *Doe v. Fairfax County School Board*, No. 19-cv-65 (E.D. Va.),

Plaintiff censures the School Board for supposedly "believ[ing] that perpetrators of

harassment deserve greater solicitude than victims."  RB 61 n.19.  But *Doe* upheld

the discipline that the School Board imposed on a male student for sexually

harassing his female classmate, dismissing the offender's Title IX discrimination

claim.  *Doe*, 403 F. Supp. 3d at 511.  To protect the privacy of the female victim

and the student witnesses there, the School Board agreed that all students could be

identified by pseudonyms.  It took exactly the same position here, except that by

the time Plaintiff moved to proceed pseudonymously in this case, the limitations

period had run on her federal claims.  *Doe*'s suit, by contrast, was timely.  The

School Board applied no double standard.[8]

"[C]ourts benefit from straightforward rules under which they can readily

assure themselves of their power to hear a case."  *Hertz Corp. v. Friend*, 559 U.S.

---

[8] Plaintiff, by contrast—from behind her shield of anonymity—publicly
named her middle-school classmates and nine school-system employees as
defendants, accusing them of serious crimes and professional misconduct,
disclosing their home or work addresses, and exposing them to public scorn.  J.A.
19–21.  The district court considered *that* double standard untenable, finding "it
fundamentally unfair that Plaintiff be permitted to use a pseudonym while the
Defendants lie vulnerable to publicly litigating such a sensitive matter."  J.A. 221;
*see* OB 12.

26

77, 94 (2010). For hundreds of years, a plaintiff had to identify herself as a condition of the trial court's acquiring adjudicative authority over the case. That rule is simple and easy to apply, and it comports with every federal circuit case to address the question. Treating the identification requirement cavalierly, by contrast, would simply encourage more anonymous filings without leave of court, nudging the judiciary "further down the slope of anonymity." *In re Data Sec. Breach*, 928 F.3d at 84 (Williams, J., concurring).

## CONCLUSION

The Court should hold that (1) implied-right-of-action claims under Title IX are subject to the forum-State's limitations period for personal-injury claims; (2) a federal court does not acquire jurisdiction over the plaintiff unless and until the plaintiff identifies herself to the court; and (3) Plaintiff's failure to identify herself to the district court until after the limitations period expired rendered her Title IX claim untimely.

The judgment of the district court should be reversed and the case remanded with instructions to dismiss the Plaintiff's Title IX claim as time-barred.

27

Respectfully submitted,

**Defendants-Appellants**
**S.T., A.F., P.A.H., T.B., B.H.,**
**M.P., M.C., F.T., and J.F.**

By: *Michael E. Kinney*
Michael E. Kinney
MICHAEL E. KINNEY, PLC
1801 Robert Fulton Drive
Suite 120
Reston, VA 20191
703-956-9377
Fax: 703-956-9634
mk@kinneyesq.com

**Defendant-Appellant J.O.**

By: *Jim Miller*
Bruce M. Blanchard
James Paul Menzies Miller
ODIN, FELDMAN & PITTLEMAN, PC
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
703-218-2100
Fax: 703-218-2160
bruce.blanchard@ofplaw.com
jim.miller@ofplaw.com

**Defendant-Appellant F.C.S.B.**
**(Fairfax County School Board)**

By: *Stuart A. Raphael*
Stuart A. Raphael
Sona Rewari
Ryan M. Bates
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2021
Fax: 202-828-3728
sraphael@HuntonAK.com
srewari@HuntonAK.com
rbates@HuntonAK.com

**Defendant-Appellant C.K.**

By: *James F. Davis*
JAMES F. DAVIS, P.C.
10513 Judicial Dr., Ste. 200
Fairfax, VA 22030
703-383-3110
Fax: 571-748-6564
jfd@jfdavislaw.com

28

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Federal Rule of

Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in 14-point

Times New Roman, a proportionally spaced font, and that it complies with the

type-volume limitation of Rule 32(a)(7)(B)(ii), because it contains 6,495 words,

excluding the items exempted by Rule 32(f), according to the count of Microsoft

Word.


/s/
Stuart A. Raphael

## CERTIFICATE OF SERVICE

I certify that on May 19, 2021, I electronically filed this document with the

Clerk of this Court by using the appellate CM/ECF system, which caused a copy to

be served electronically on all counsel of record.

_____
/s/
Stuart A. Raphael